TDOC ID No. 121445
1045 Horsehead Lane
Pikeville, TN 37367
February 18, 2019

RECEIVED
in Clerk's Office

FEB 22 2019

U.S. District Court
Middle District of TN

Mr. Keith Thorockmorton
Clerk of Court
US District Court Clerk
801 Broadway, Room 800
US Courthouse
Nashville, TN 37203

Dear Mr. Throckmorton:

    Enclosed, please find a Class Action Complaint Under 42 U.S.C. § 1983 for Injuctive and Declaratory Relief, Motion for Class Certification, Motion for Appointment of Counsel, and supporting documentation. Please file this complaint and send me the docketing number.

    We have served a copy of the complaint on all of the defendants and I will send you a copy of the certified return receipt as soon as we get them back.

    Thank you so very much for your attention and assistance in this matter.

                                        Sincerely,

                                        Ricky Harris

                                        Ricky Harris

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## AT NASHVILLE

RECEIVED
in Clerk's Office

FEB 22 2019

U.S. District Court
Middle District of TN

RICKY HARRIS,                              )
RANDY JONES,                               )
RONNIE ARMSTRONG,                          )
JACK NUNLEY,                               )
RAYMOND TEAGUE,                            )
MICHAEL STEWART,                           )
JOHN BOATFIELD,                            )
STACY RAMSEY,                              )
CHARLES MOSLEY,                            )
WILLIAM LEDFORD,                           )
BRUCE SMILEY,                              )
LAMONT JOHNSON,                            )
ANDREW MANN,                               )
EDDIE MURPHEY,  et al.,                    )
ON BEHALF OF THEMSELVES                    )
AND ALL OTHER PRISONERS                    )
UNDER THE JURISDICTION OF                  )
THE TENNESSEE DEPARTMENT                   )
OF CORRECTION,                             )
STATE OF TENNESSEE,                        )
SIMILARLY SITUATED,                        )
      PLAINTIFFS,                    )
                                           )
VS.                                        )   CASE # _____
                                           )   HONORABLE _____
STATE OF TENNESSEE,                        )
TENNESSEE BOARD OF PAROLE,                 )   JURY TRIAL DEMAND
TENNESSEE DEPARTMENT                       )
OF CORRECTION,                             )
CANDICE WHISMAN, DIRECTOR                  )
OF SENTENCE MANAGEMENT                     )
INFORMATION SERVICES,  et al.,             )
      RESPONDENTS.                   )


## CLASS ACTION COMPLAINT UNDER 42 U.S.C. § 1983
## FOR INJUNCTIVE AND DECLARATORY RELIEF

Comes Now, Plaintiffs, Tennessee State Prisoners, pro se, and files this civil rights action

for injunctive and declaratory relief under 42 U.S.C. § 1983 alleging denial of equal protection in

1

violation of the Fifth, Eighth and Fourteenth Amendment, Section 1 of the United States Constitution and denial of the Due Process Clause in violation of the Fifth, Eighth and Fourteenth Amendment Section 1 of the United States Constitution.

## JURISDICITON AND VENUE

1. Jurisdiction of this court is invoked pursuant to 28 U.S.C. § 1331 in that this civil action is arising under the Constitution of the United States. Furthermore, jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1343(a).

2. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred and the central offices and residence for the Defendants are located in Nashville, Tennessee.

## PARTIES

3. Plaintiff Ricky Harris at all times relevant is confined by the Tennessee Department of Correction at Bledsoe County Correctional Complex (BCCX).

4. Plaintiff Ronnie Armstrong at all times relevant is confined by the Tennessee Department of Correction at Bledsoe County Correctional Complex (BCCX).

5. Plaintiff Jack Nunley at all times relevant is confined by the Tennessee Department of Correction at Bledsoe County Correctional Complex (BCCX).

6. Plaintiff Randy Jones at all times relevant is confined by the Tennessee Department of Correction at Bledsoe County Correctional Complex (BCCX).

7. Plaintiff Raymond Teague at all times relevant is confined by the Tennessee Department of Correction at Bledsoe County Correctional Complex (BCCX).

8. Plaintiff Michael Stewart at all times relevant is confined by the Tennessee Department of Correction at Bledsoe County Correctional Complex (BCCX).

2

9. Plaintiff John Boatfield at all times relevant is confined by the Tennessee Department of Correction at Bledsoe County Correctional Complex (BCCX).

10. Plaintiff Stacy Ramsey at all times relevant is confined by the Tennessee Department of Correction at Bledsoe County Correctional Complex (BCCX).

11. Plaintiff Charles Mosley at all times relevant is confined by the Tennessee Department of Correction at Bledsoe County Correctional Complex (BCCX).

12. Plaintiff William Ledford at all times relevant is confined by the Tennessee Department of Correction at Bledsoe County Correctional Complex (BCCX).

13. Plaintiff Bruce Smiley at all times relevant is confined by the Tennessee Department of Correction at Bledsoe County Correctional Complex (BCCX).

14. Plaintiff Lamont Johnson at all times relevant is confined by the Tennessee Department of Correction at Bledsoe County Correctional Complex (BCCX).

15. Plaintiff Andrew Mann at all times relevant is confined by the Tennessee Department of Correction at Bledsoe County Correctional Complex (BCCX).

16. Plaintiff Eddie Murphey at all times relevant is confined by the Tennessee Department of Correction at Bledsoe County Correctional Complex (BCCX).

17. Plaintiffs et al. are all inmates in T.D.O.C. custody including local county jails throughout Tennessee.

18. Defendants State of Tennessee encompasses the State Legislators and House of Representatives, Tennessee courts including but not limited to criminal and circuit courts, Court of Criminal Appeals and Tennessee Supreme Court.

19. Defendant Tennessee Department of Correction responsible for sentence calculations.

20. Defendant Tennessee Board of Parole includes all parole board members.

3

21. Defendant Candice Wiseman, Director of Sentence Management Information Services.

22. Defendants et al., are all persons involved in sentencing decisions and parole who are unknown at this time.

## EXHAUSTION OF AVAILABLE REMEDIES

There are not any administrative remedies available prior to filing this complaint.

## CLASS ACTION STATUS

23. Plaintiffs bring this action on their own behalf, and on behalf of all persons similarly situated. The Class plaintiffs represent consists of all prisoners in the State of Tennessee Department of Correction and are affected by Tennessee sentencing statutes and Tennessee Board of Parole as set forth in the Statement of Facts.

24. The members of the Class Plaintiffs represent have no plain, speedy, or adequate remedy at law against the defendants, other than by maintenance of the class action, because Plaintiffs are informed and believe, and on the basis allege, that the damage to each member of the class is relatively small, and that it would be economically infeasible to seek recovery against defendants other than by class action.

25. There is a well defined community of interest in the questions of law and fact affecting the Class Plaintiffs represent. The Class members' claims against defendants involve questions of common or general interest, in that convolution of State sentencing statutes, deliberate indifference in sentencing as well as sentence calculations, and disparity in the operation of the Tennessee Board of Parole including parole hearings. These questions are such that proof of a state of facts common to the members of the class entitle each member of the class to the relief requested in this complaint.

4

26. All persons currently incarcerated in any facility under the supervision or control of the Tennessee Department of Correction or persons incarcerated in a public or privately owned facility for whom the Tennessee Department of Correction has ultimate responsibility for their sentence calculations.

27. All persons currently incarcerated under the jurisdiction and control of the Tennessee Board of Parole who have met the Board or will meet the Board in the future for parole consideration.

28. This class of persons shall hereinafter be referred to as the "Inmate Class." Excluded from the Inmate Class are Defendants and any members of their family, as well as immediate family members of the judges.

29. Plaintiffs seek relief from the wrongdoing of Defendants for themselves and for all members of the inmate class through Rule 23 of the Federal Rules of Civil Procedure. The putative classes meet the statutory prerequisites of Fed. R. Civ. P. 23(a), as set forth herein.

30. The number and identity of putative Class members is easily ascertainable through discovery. Any notice of class members could be given through the already-established channels Defendants use to communicate with individuals in their custody.

31. Plaintiffs' claims are typical of the claims of the Class, as Defendants' policies, procedures, and practices apply to all sentenced prisoners in Department facilities. Plaintiffs' will fairly and adequately represent the interests of all Class members and do not have any interests antagonistic to those of the class. Plaintiffs move for appointed counsel with competence an experience in class action and Constitutional litigation.

32. Inmate Class members' claims involve common questions of both law and fact. The facts relevant to this action are limited simply to the evidence of Defendants' written statutes,

5

policies, practices, case law, and customs regarding sentence calculations, sentencing, and release of prisoners. The injuries sustained by Plaintiffs and all putative class members flow from a common nucleus of operative facts Defendant's willful failure to maintain laws and statutes, sentencing and sentence calculation procedures, and release procedures. Similarly, this action raises common questions of law regarding the rights of Plaintiffs, and Class members to receive adequate and equal sentence obligations under the Fifth, Eighth and Fourteenth Amendments of the U.S. Constitution.

33. This action is maintainable as a class action pursuant to Fed. R. Civ. P. 23(b)(1) because the number of Class members is over 25,000 and the prosecution of separate actions by individuals would create a risk of inconsistent and varying adjudications, which in turn would establish incompatible standards of conduct for Defendants. Additionally, the prosecution of separate actions by individual members could result in adjudications with respect to individual members that, as a practical matter, would substantially impair the ability of other members to protect their interests.

34. This action is also maintainable as a class action pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants' statutes, policies, and practices that form the basis of this complaint are common to and apply generally to all members of the inmate class, regardless of what entity runs the particular facility where an inmate is housed or what entity issues the sentencing statutes, sentence calculations, or release determinations pertaining to the Inmate Class. All class-wide injunctive and declaratory relief sought.

## FACTUAL STATEMENT

35. From 1970 through 2019, the Tennessee Senate and House of Representatives have implemented various sentence reform acts and amendments to sentencing statutes to a point that

6

the statutes have become so convoluted that they violate the U.S. Constitution. The Tennessee Supreme Court addressed such frustration by holding that understanding the statutes are classified as "a highly specialized area of law, and one which 'few practicing attorneys, otherwise knowledgeable in criminal law, or judges at any level' have complete understanding."

36. As set forth herein it has become impossible to decipher the dictates of a particular statute and the disparity in the sentencing statutes denies all inmates sentenced to the T.D.O.C. due process in violation of the Fifth, Eighth and Fourteenth Amendment, Section 1 and violates equal protection under the Fifth, Eighth and Fourteenth Amendment, Section 1.

## COMPLAINT

### ISSSUES AND FACTS IN SUPPORT

37. The sentencing statutes in expostulation commence with the year 1970 through 2018, and has either been repealed, replaced, or amended numerous times since. The convulsion of the statutes has placed the entire correctional and judicial system in a state of crisis to the point that T.D.O.C. has released sex offenders that have not served their sentence in accordance to state law.

38. In Sentencing Act of 1970, *T.C.A. § 40-3613 (1970)* sentences were calculated based on one cumulative sentence with a parole eligibility date of **30 years**. (Later remunerated as *T.C.A. § 40-28-116(b)(2)* and then repealed in 1982). "[A]ny person who shall have been convicted and sentenced to a term of fifty (50) years or more, may become eligible for parole provided such person shall have been confined or served a term in the penitentiary of not less than thirty (30) full calendar years." The act was amended in 1974 to increase the 50 year sentence to a sentence of 65 years or more, or to a life sentence.

39.   Tennessee enacted the Sentencing Act of 1975, *T.C.A. § 41-332 (1975 )(Repealed 1985)* prisoners were entitled to receive credits for good behavior.   One month the first year, two month's the second year, three month's the third year, and four month's for every subsequent year. (Repealed in 1980)

40. Then in *T.C.A. § 41-334 (1975) (Repealed 1985)* prisoners received additional credits for honor time. (Replaced in 1980).

> "Both the trial judge and defense counsel were dealing with what the majority opinion of this court in *Farris v. State*, 535 S.W.2d 608 (Tenn. 1976), classified as a "**highly specialized area of the law**, and one in which "few practicing attorneys, otherwise knowledgeable in criminal law, or judges at **ANY level**" have a complete understanding." *Howell v. State* 569 S.W.2d 428 (Tenn.1978) (Emphasis added).

41. Tennessee's own Supreme Court by majority opinion defines the confusion of the numerous sentencing statues and amendments for the past forty years.   Therefore, a layperson employed by the Tennessee Department of Correction Sentence Management would be incompetent in such a highly specialized area of law, when trying to calculate prisoner sentences. It is even more difficult for a plaintiff to know what the legislature enacted by law and entitled that person to receive.   If a plaintiff does not file requesting relief, then the Plaintiff remains in prison unconstitutionally.   This fact is supported by the repeated litigation.

42. In 1981, *T.C.A. § 41-359 (Effective 7-1-81)*(Later designated *as T.C.A. § 41-21-229),* established "good conduct sentence credits" earned by proper behavior.

43. In *T.C.A. § 41-361 (Effective 7-1-81)* (Later designated as *T.C.A. § 41-21-231)* converting *T.C.A. § 41-332 & § 41-334* credits earned prior to July 1, 1981 to "good conduct sentence credits." The General Assembly envisioned that the new good conduct sentence credit program

8

would apply across-the-board to **ALL** prisoners and thus did not provide a waiver or opt-in system to prisoners who committed crimes prior to July 1, 1981. *Jones v. Reynolds*, 1997 WL 36761 (Tenn. Crim. App. July 2, 1997) (Emphases added). No person should be deprived of life, liberty, or limb without due process and equal protection of law. There are plaintiffs such as Jack Nunley, incarcerated since 1979 has yet to have his sentence properly calculated according to this Act. See Exhibit **A**. (See facts within complaint against Candice Wiseman, Director of Sentence Management).

44. The General Assembly enacted T.C.A. § 41-360 (Supp. 181)(Repealed 1985) which allowed for the "prisoner performance sentence credits" (PPSC). Prisoners could earn between one and fifteen days of incentive credit per month depending on the program to which they were assigned. (repealed by T.C.A. § 41-21-236) (1985). This permitted prisoners who committed their offenses prior to December 11, 1985 to opt into the program.

45. Tennessee next enacted the Sentencing Reform Act of 1982 "Judge Sentencing Act" *T.C.A. § 39-1-703(2) (1982)* which held that Class X felonies were not subject to reduction "for good honor or incentive or other sentence credit of any sort." (Repealed 1989).

46. The Act amended *T.C.A. § 40-35-211(1) (1982),* Sentences for all felonies and misdemeanors shall be determinate in nature.

47. The Act also amended *T.C.A. § 41-21-221 (1982)* (Good conduct sentence credits did not apply to sentences imposed upon Class X offenders. (Repealed in 1985).

48. Finally the Act amended *T.C.A. § 41-21-230 (1982) (Repealed 1985)* which allowed Class X felons to receive prisoner performance sentence credits to reduce their expiration date, but not their parole eligibility dates.

9

49. Tennessee later amended T.C.A. §40-28-301(i) (Supp.1983), addressing T.D.O.C. policy 505.1, providing that "[i]nmates serving Class X and Judge Sentencing sentences with offense date prior to December 11, 1985, may earn PPSC to reduce only their expiration dates and may not reduce their expiration date in excess of their (release eligibility date). PPSC does not reduce the (release eligibility date).

50. In 1983 *T.C.A. § 41-21-230(i) (Supp. 1983)* was amended to include *a* person convicted of a Class X felony to be eligible to receive prisoner performance sentence credits. T.D.O.C. policy 505.01 provided that "[i]nmates sentenced under Class X, Judge Sentencing, or The Sentencing Reform Act of 1989 are not eligible for good conduct sentence credits."

51. 1986 brought an amendment to *T.C.A. § 41-21-236(c) (1986)*, which held that inmates who did not sign a waiver as provided in subsection (c) could continue to receive credits under the previous credit systems.

52. *T.C.A. § 40-35-501(f) (Supp.1987)* amendment changed first degree murder which resulted in a life sentence with release eligibility after service of thirty years. T.C.A. § 39-2-202(c) (Supp.1987) First degree murder was classified as a Class X felony.

53. An example of statutory confusion in the courts is an opinion from the Tennessee Court of Criminal Appeals. The Court states: "In addition, the judgment shows that Appellant's conviction offense was a class (A) felony, when in fact first degree murder was a Class X felony at the time of the offense in this case. *See T.C.A.* § 39-2-202(c) (Supp.1987). Finally, we note that the Appellant's conviction for first degree murder should have resulted in a life sentence with release eligibility on that life sentence after service of thirty years pursuant to Tennessee Code Annotated section 40-35-501(f) (Supp.1987), rather than a sentence of sixty years with a release eligibility of sixty percent, or thirty six years, under Tennessee Code Annotated section

40-35-501(g) (Supp.1989), which also did not become effective until November 1, 1989. The Appellant's judgment of conviction shows only that he received a life sentence but does not provide any details as to the length of time he would have to serve prior to becoming eligible for parole." *Taylor v. State*, No. M2012-01549-CCA-R3-PC, 2013 WL 2145776, p. 5 (Tenn. Crim. App. May 15, 2013). Tennessee judgment orders **have never** listed a set number of years for a life sentence.

54. Tennessee enacted the Tennessee Criminal Sentencing Reform Act of 1989 changing *T.C.A. § 40-35-501(g) (Supp.1989)* First degree murder is a sentence of sixty years with a release eligibility of sixty percent, or thirty years. (Effective November 1, 1989).

55. In 1990 Tennessee amended *T.C.A. § 41-21-236(c)(3), 236(9) (1990)*, concerning sentence credits.

56. In 1985 The General Assembly established the "prisoner sentence reduction credit" program. Prisoners who committed felonies prior to December 11, 1985 could not participate in this program unless they signed a written waiver.

57. Tennessee enacted the Criminal Sentencing Reform Act of 1995 that amended *T.C.A. § 40-35-501(a)(2)* which states: "Except for inmates who receive sentences of imprisonment for life without possibility of parole only inmates with felony sentences of more than two (2) years or consecutive felony sentences equaling a term greater than (2) years shall be eligible for parole consideration.

58. Subsection (h)(1) holds release eligibility for each defendant receiving a sentence of imprisonment for life for first degree murder shall occur after service of sixty percent (60%) of sixty years less sentence credits earned and retained by the defendant, but in no event shall a defendant sentenced to imprisonment for life be eligible for parole until the defendant has served

a minimum of twenty-five (25) full calendar years of the sentence, notwithstanding the governor's power to reduce prison overcrowding pursuant to title 41, chapter 1, part 5, any sentence reduction credits authorized by § 41-21-236 or any other provision of law relating to sentence credits..."

"(2) There shall be **no release eligibility** for a defendant receiving a sentence of imprisonment for **life without** possibility of parole for first degree murder."

"(i)(1) There shall be **no release eligibility** for a person committing an offense, on or after July 1, 1995, that is enumerated in subdivision (i)(2)..."

"(2)  The offenses to which subdivision (i)(1) applies are:"

"(A) murder in the first degree..."

59. Since the enactment of this statute the same wording has been incorporated in all the prior amendments to 2019.

60. Subsection (h)(2) states: [t]here shall be no release eligibility for a defendant receiving a sentence of imprisonment for life without the possibility of parole for first degree murder." Subsection (i)(1) states the exact same language for first degree murder except adding an additional sentence stating, "[t]he person shall serve one hundred percent (100%) of the sentence imposed...." However, this sentence can be reduce by fifteen percent (15%) with sentence credits. Therefore, a sentence of life as well as life without parole are the exact same sentence.

61. Since the Sentencing Act of 1995, some twenty three (23) years later the Tennessee Supreme court is continually trying to rectify the problems created in the sentencing statutes which are so convoluted and confusing the court could not agree with the State Attorney General's opinion. See *Brown v. Jordan*, 2018 WL6381171, No. M2018-01415-SC-R23-CO (Tenn. December 6, 2018) the Supreme Court held, "Words used in a statue must be given their

12

natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose:" The statute clearly states that both life sentences are not eligible for release. The court further held that a life sentence is for a term of sixty (60) years, (at 4.)

62. Prisoners with life sentences can therefore expire their sentence in fifty-one years, with sentence credits, but without the credit it is sixty (60) years. While a life without parole can expire their sentence in sixty (60) years. The legislature's intent is clear when compared to subsection (j) where the legislature states that sentences under T.C.A. § 39-17-1324(a) and (b) "cannot be released '**UNTIL**' service of one hundred percent of the sentence imposed." (Emphasis added).

63. Tennessee courts have relentlessly addressed the issue that life sentences have no parole consideration. For example:

> "Regarding the state's contention that this issue is a matter of release eligibility determination, we note that a defendant whose life sentence is imposed pursuant to section 40-35-501(h)(1) attaines release eligibility, that is, eligibility for parole after a date determined by the Department of Correction. T.C.A. § 40-35-501 (q) (Supp.2009) (amended 2010, 2012, 2013, 2014) (now codified at subsection (r)). In contrast, "[t]here shall be no release eligibility for a person committing an offense, on or after July 1, 1995, that is enumerated in subdivision (i)(2)." Id. 40-35-501(i)(1). **In the later situation, subsection (i)(1) provides the means for determining the sentence expiration date**, and **release is not contingent upon a grant of parole**. See also; *State v. Self*, Ne. E2014-02466-CCA-R3-CD, 2016 WL 4542412, p. 62 (Tenn. Crim. App., November 1, 2016). Also, see, *Taylor v. State*, M2012-01549-CCA-R3-PC, 2013 WL 2145776, p. 5 (Tenn. Crim. App., May 15, 2013); *Penly v. State*, E2004-00129-CCA-R3-PC, 2004 WL 2439287, p. 2 (Tenn. Crim. App., November 1, 2004; *Davis v. Tennessee Department of Correction*, et al., No. M2017-0231-CCA-R3-CV, 2018 WL 5618116, (Tenn. Ct. App.) October 30, 2018.); *Thompson v. Morrow*, No. 3: 10-CV-00388, 2010 WL 4628240 (M.D. Tenn., November 3, 2010) (Emphasis added).

13

64. It is obvious that life is in essence life without parole. A sentence of life and life without are exactly the same as the legislature intended.

65. To further complicate the sentencing scheme, T.C.A. § 40-35-501(a)(2) states: "Except for inmates who receive sentences of imprisonment for life without possibility of parole only inmates with felony sentences of more than two (2) years or consecutive felony sentences equaling a term greater than (2) years shall be eligible for parole consideration. This statute is in direct conflict with subsection (i)(1).

66. As enumerated above, subsection (h)(1) states: "a defendant sentenced to imprisonment for life be eligible for parole until the defendant has served a minimum of twenty-five (25) full calendar years of the sentence…"

67. The Tennessee Attorney General held that "pursuant to (h)(1), the determinate number is currently sixty years. Since the 1995 amendment provides that there shall be no release eligibility for a person sentence to life imprisonment, the two provisions clearly conflict….", *Tenn. Op. Atty. Gen*. No. 97-098 1997 WL 449672 (Tenn. A.G., July 1, 1997). However, in Brown, supra, the Supreme Court disagreed and held there was not a conflict. The court held that (h)(1) was for pre-1995 sentences. This analogy is not correct. Under the Sentencing Reform Act of 1989 to 1995, life sentences where calculated at thirty-six (36) years. The Sentencing Reform Act of 1982 to November 1, 1989 calculated at thirty (30) years. Subsection (h)(1) has to apply to post-1995 life sentences.

68. Tenn. Op. Atty. Gen No.97-098 (Tenn. A. G.), 1997 WL 449672 **\*2** "The House Judiciary Committee specifically stated that the intent of the act, so far as a life sentence for first degree murder in concerned, was to raise the ALREADY-EXISTING floor of time to be served

as **provided in 40-35-501(h)(1)**, from 60% to 100% of the sixty years. Special Report to the House Judiciary Committee, Tape #1, May 3, 1995 at 672."

69. The Attorney General's analogy may have been true if the legislature had amended (h)(1), however, the legislator not only amended (2)(A) murder in the first degree, but added several other crimes. When such amendments are made it makes the amendment to the statue wholly and utterly void. Therefore, T.C.A § 40-35-501 (i)(2)(A) was made void in 1995 and violated the U.S. Constitution.

70. Murder is murder no matter how its labeled or what classification (Class X) is placed upon it, the facts are the same. Murder for over six decades was set at thirty years and in the federal prison system it remains that today because the United States Government understands this fact. Throughout the past forty (40) or fifty (50) years the statue for murder has changed multiple times to the extent that the disparity it has created violates the U.S. Constitution.

71. Due to the controversy and confusion between the Tennessee Courts and the Sixth Circuit concerning (h)(1) and (i)(2)(A) from 1995 through 2019, the Tennessee House and Senate are trying to "clarify" the statute. They are trying to go back over twenty-five years ago and change the meaning of the statute for offenders from November 1, 1989 to July 1, 1995. The two sponsors Mr. Garrett of the House and Mr. Bell of the Senate were not in office in 1989 to know the intention of the Legislature for 1989 to present day. There is a possibility that such a clarification could create further ex post facto problems. See Exhibit No. **1**.

72. A prime example of the courts not understanding the sentencing statutes is in Plaintiff Murphey's case within his plea agreement and the hearing transcripts it is clearly stated that the Plaintiff was pleading to a life sentence with the possibility of parole after fifty-one (51) years. See Exhibit No. **2**.

73. The Tennessee courts, the Tennessee Attorney General, Legislature, and the Tennessee Department of Correction still do not fully understand the statues and sentence calculation. This is explained in the Candice Whisman complaint. The statues have become so arbitrary that defendants have been denied the right to understand the charges against them, denied due process, denied the opportunity to plea due to inaccurate information in violation of the U.S. Constitution. See *Penley v. State*, 2004 WL 2439287, No. E2004-00129-CCA-R3-PC (Tenn. Crim. App., November 1, 2004).

74. Tennessee Code Annotated § 39-13-202(c) provides for three possible sentences for first degree murder conviction: death, life imprisonment without the possibility of parole, or life with parole. The state must file a notice of intent to seek the death penalty or life without the possibility of parole. Tennessee Code Annotated § 39-13-208(c) provides that when the State does not seek the death penalty or life without the possibility of parole and the defendant is subsequently convicted of first degree murder, "the defendant shall be sentenced to imprisonment for life with parole by the court." This was the intent of the statute. The life sentence pursuant to § 40-35-501(i)(2)(a) is "life without parole and the State has not filed the notice of intent to seek life without parole thereby all life sentences at that point have become void and unconstitutional.

## TENNESSEE BOARD OF PAROLE

75. Tennessee Board of Parole's policies, practices and political dynamics have led the board to deny release to a majority of parole-eligibility offenders who have met all the required guidelines established by T.D.O.C. and the Board of Parole.

76. Tennessee currently has over 25,000 prisoners serving determinate sentences in the Department of Correction and unknown thousands housed in county jails. Of those, over 10,000 appear before the Board of Parole each year for their eligibility determinations. The Board of Parole operates with only seven board members, each appointed by the governor to a six-year term. Overworked board members with large caseloads make hasty and uninformed parole decisions with devastating consequences for people in prison and their loved ones.

77. For example, prisoners with violent felony convictions are required to have the votes of four board members. Tennessee Code Annotated § 40-28-103 states that the prisoner shall meet the full board. Instead, the prisoner will see one or sometimes two board members by video conference. At the end of the hearing the one or two board members make their decision usually with less than thirty minutes of hearing. The other two or three board members make their decision within three days. It is unfathomable to believe that all the board members can view all parole hearing testimony and give an informed decision so quickly while adhering to due process requirements and a full and fair hearing.

78. The following excerpts from: *1100-01-01.07.* BOARD CRITERIA FOR GRANTING OR DENYING PAROLE:

(1) Before granting or denying parole, the Board may apply the following factors to each eligible inmate to assist in determining whether such inmate will live and remain at liberty without violating the law or the conditions of his or her parole.

(a) The nature of the crime and its severity;

(c) The inmate's institutional record;

(J) The inmate's past use of narcotics, or past habitual and excessive use of alcohol;

17

(l) An objective advisory parole prediction guideline system to adequately assess the risk an inmate poses to society and his or her potential for parole.

(2) In applying the above factors to a particular inmate, the Board may consider the following sources of information:

(b) All relevant Department of Correction or other prison, jail, or workhouse reports;

(4) After applying the various factors for consideration to the individual inmate, the Board SHALL deny the inmate's release on parole if it determines that:

(a) There is a substantial indication that the inmate will not conform to the conditions of his or her parole;

(c) Release at this time would have a substantially adverse effect on institutional discipline; or

(d) The persons continued correctional treatment, medical care, or vocational or other training in the institution, will substantially enhance the present capacity to lead a law-abiding life when given release at a later time.

79. George Hardin and Douglas Harville, just two of many inmates, convicted of a serious crime (murder), who were granted a parole review, and had multiple disciplinary infractions, including drugs (Exhibit No. **3**) and they were granted parole. This was arbitrary and totally against the boards own policies, procedures and very own guidelines. These individuals violated the conditions of their parole within sixty (60) days of being released. This does not include non-violent crimes.

80. Plaintiff William Ledford has an exceptional institutional and disciplinary record (Exhibit No. **4**), he had **victim** support for parole and even had the Board Chairman's vote stating: "To keep you incarcerated any longer would be a waste", and there were no other program

recommendations. Yet, the rest of the Board denied parole stating solely "**SERIOUSNESS OF THE OFFENS**E' and scheduled his next hearing four (4) years into the future.

81. Tennessee has enacted the following, but are not utilized: § 41-21-236 *Time Reduction Credits*: (a)(2)(B)(ii) It is the legislature intent this credit be implemented by the department in a manner that maximizes the potential of prisoners who will return to the community to become working and productive members of society through the benefit of their educational diploma or certificate. Administrative Policies and Procedures 704.12 Global Positioning System Offenders Monitoring: IV I. *Serious Violent Offender*. For the purpose of this policy, a person without a sex offense conviction having attributes of a violent nature which have been reviewed and determined to be in need of Supervision under the Community Impact Program Initiative for GPS Monitoring. *II. Purpose*: To enhance public safety and reduce recidivism by assisting offenders … and to effectively use Community and Department resources. (B) Departmental Resources: Any program or service the T.D.O.C. offers offenders to help them develop the skills necessary for success within the community. (L). *Vocational Program:* A program designed to equip offenders with technical training and/or hands-on training in a marketable skill or trade.

82. The Board of Parole systematically fails to properly consider the age, rehabilitation, institutional record, programs completed, the inmate's past use of narcotics, or past habitual and excessive use of alcohol, prediction guideline assessment system of prisoner's eligible for parole and in some instances the board members solely focuses exclusively on the nature of the prisoner's crime in making parole decisions. The Board retires the case and allows testimony outside the record and denies the prisoner due process. The Board then refuses to give all the reasons for being denied parole and simply states "**SERIOUSNESS OF THE OFFENS**E".

83. This has been proven to be unconstitutional since 1975. The court held that the board of parole cannot rely solely on the "depreciating the seriousness of the offense" reason for denying parole and continuing the prisoners confinement. *DeVyver v. Warden*, 338 F.Supp. 1213, 1220 (M.D.Pa. 1974) "Both *Candarinin v. Attorney General of the United States*, 369 F.Supp. 1132 (E.D.N.Y. 1974) and *Craft v. Attorney General of the United states*, 379 F.Supp 538 (M.D.Pa. 1974), relied upon due process for requiring reasons. The sole reason given by the federal parole board in each of these cases was depreciation of the seriousness of the crime. In response to this, the court said in Candarini that (m)ere pro forma language… will not suffice' (p. 1137) and in *Craft* that the reason given was tantamount to no reason and afforded the petitioner none of the safeguards…'(p. 540)". The Board disregards the many accomplishments of the applicant and their often categorically low risk for recidivism according to the board's risk assessment summary, and instead denying their freedom based on a single, unchanging moment that occurred decades ago.

84. The following are excerpts form *1100-01-01.08. THE PAROLE HEARING PROCESS:* (2)(b) If the Board determines that it does not have necessary reports or sufficient information, upon which to base an objective decision in a particular case, it may continue such hearing to a later date…. Such continued hearing will subsequently be processed as scheduled, unless new commitments or the loss of good and honor time credits, alters the inmates parole eligibility dates. (2)(c) Any relevant information submitted by the inmate, his or her attorney, representatives on his or behalf, or other interested parties.

85. Inmate, J Y Sepulveda, one of many inmates, that has complained that the Board considers false or inaccurate information (December, 2016) is denied parole. At the initial hearing Board Chairman, Richard Montgomery, informed Sepulveda that he had done everything

he could possibly do and that the prison could not offer him anything else and recommended him parole. The other Board members, who were not present, voted using this inaccurate information. Inmate Sepulveda appealed the decision and was granted a new hearing. At the new hearing, Sepulveda presented the offense facts, which diminished the facts of the prior hearing, and the Board again denied parole. He and counsel have attempted to resolve this matter but to no avail. He has had to address this matter in the courts (*J Y Sepulveda v. Tennessee Board of Parole*, Chancery Court of Davidson County No. 17-11574-111). The Plaintiff, because he challenged this information, was denied parole.

86. 1100-01-01.08. (4) allows for inmates to appeal the Board's denial. (4)(a) states "An inmate whose parole has been revoked, rescinded, or denied may request an appellate review by the Board." The appeal process is entirely under the Board's own volition. The Board is responsible for policing themselves. There is absolutely no accountability of the Board's actions. If an appeal is taken to the state courts, the courts only consider the Board's violation of state law.

87. The Board of Parole is the only government agency who can operate without oversight. In essence, the appellate process has become a travesty of justice.

88. Furthermore, the board is violating state law by not being present at the hearing. T.C.A. § 40-28-105(b) states: "All votes taken by the board shall be by public ballot or public roll call. No secret ballots or secret roll calls shall be permitted."

89. When an inmate has a parole hearing on a violent offense he/she meets one or sometimes two Board members by video conference. At the end of the hearing, the Board Member will give his/her decision, several days later the institutional parole officer will contact the inmate of the Board's final decision.

90. Inmates with a non-violent offense meet a "hearing officer" by video conference. This person makes a non-binding recommendation to the Board. Several days later the institutional parole officer contacts the inmate with the Board's final decision.

91. The Board is in violation of State law and the open Public Hearings Act in that they are not having a public ballot or public roll call. If an inmate request a list of how each Board member voted the Institutional Parole Officer or TDOC staff have been instructed to deny the prisoner's request on how each board member voted. They state: "The institution is strictly prohibited to give you this information." (Exhibit No. **5**). The complete board is only present for in-person parole hearings in high-profile cases. This shows deliberate indifference between regular prisoners and high profile prisoner's. The Board of Parole is deliberately violating Tennessee prisoner's constitutional rights to due process and liberty interest and denial of the Equal Protection Clause.

92. This approach thwarts the very purpose of parole; to release people who have served their minimum sentences, demonstrate a readiness for release, and pose little to no risk of recidivism. Furthermore, prisoners with protesters are 95% more likely to be denied parole on the first and second hearings and thereafter as long as the protesters attend the hearings as opposed to prisoners being released the first or second time meeting the board. Politics plays a large part in the board's decision to grant parole, thereby, creating deliberate indifference in prisoners with protesters verses prisoners without protesters.

93. The actions and inactions of the Board of Parole violates State law T.C.A. §§ 40-28-103 and 40-28-105(b) and denies the inmate due process, renders the rules and regulations of the Board of Parole unconstitutional with the deliberate indifference treatment of inmates. These

actions or inactions only serve to bolster the recidivism rate and justify the Board's existence. The United States Federal prison system abolished its Board of Paroles over 30 years ago.

## TENNESSEE DEPARTMENT OF CORRECTION AND
## CANDICE WHISMAN, DIRECTOR OF SENTENCEING MANAGEMENT

94. The following is the sentencing statues history from Sentence Management Service Procedures Manual. (Exhibit **6**).

95. From day one to July 1, 1982, the sentence type was indeterminate, or Class X after September 1, 1979.

96. Prior to July 31, 1978 all consecutive sentences pursuant to Howell v. State, 569 S.W. 2d 428 (Tenn. 1978) were to be added together for a total sentence.

97. In 1982, the indeterminate sentence law was repealed and all sentences were now determinate in nature. However, the Manual states: "the sentence type will be either Indeterminate or Determinate, or Class X after 9-1-79."

98. The manual states: "If the dates of offense are from day one to 9-1-79, (Class X effective date), the sentence type will be Determinate." This included murder one and two.

99. "If the dates of offense are from 9-1-79 to 7-1-82, the sentence will be Class X, with a mandatory 40%."

100. Prior to December 11, 1985, the sentences were Class (X) and Judge Sentences (J).

101. "Effective 3-30-86, all J and X sentences imposed at 40% prior to that date were reduced to 35%. Similarly, all J and X sentences imposed at 50% were reduced to 40%."

102. "If the dates of offense are from 7-1-82 to 11-1-89, the Sentence will be Judge Sentencing with exception of the designated Class X offenses. All Class X and Judge Sentenced

23

offenses will be computed at 30% for RED unless otherwise specified on the judgment order."
This is in contradiction to the above listed percentage.

103. The Manual states: "If the dates of offense are from 11-1-89 to present the sentence will be Reform Act of 1989 - 1194. A Reform Act – 1194 Sentence may be applied for an offense committed between 7-1-82 and 11-1-89 if it would be more beneficial to an offender." TDOC has never applied this rule to pre-1989 convictions.

104. "A life sentence conviction with a date of offense after 5-6-73 to 11-1-89 is computed at 30 years TTS (can reduce with credits) and no expiration." A life sentence was calculated at 30 years time to serve. TDOC has never reflected the expiration of thirty years on the TOMIS sentence summary.

105. "A life sentence conviction with a date of offense on or about November 1, 1989, is computed at 36 years TTS (can reduce with credits earned) and no expiration if imposed under 1194." Once again, TDOC has failed to calculate the life sentence at 36 years time to serve. Tennessee law is clear that from 1982 – 1995 life sentences are determinate as well as sentence credits to be taken from the RED and expiration date. TDOC awards sentence credits to the RED dates until a prisoner meets the Board of Parole then the sentence credits are no longer applied to the sentence. The prisoner is denied benefit of the earned credit from that point forward in violation of state law. TDOC refuses to calculate expiration dates for any life sentences from 1975 – 1995. See Exhibit No. 7.

106. "Offenses committed on or after 7-1-93, punishment for First Degree Murder is: Life (36 year RED can't be reduced below 25 calendar years by credits earned before eligible for parole)." This is in conflict with the 1995 amendment which enacted the 25 year minimum time to serve.

107. "Effective 7-1-95, offenders convicted of violent offenses (committed on or after 7-1-95) and receive Life Sentences (not life w/o Parole) must serve 60 years before parole eligibility. (See manual p. 17) The sentence can reduce to no less than 51 years with credit earned." This is not true because T.C.A. § 40-35-501(i)(2) states: "There shall be no release eligibility for a person committing an offense, on or after July 1, 1995, that is enumerated in subdivision (i)(2). The person shall serve one hundred percent (100%) of the sentence imposed by the court less sentence credits earned and retained. As discussed in the Facts of the Case earlier, Tennessee courts have ruled that these sentences expire as opposed to parole. In reading TDOC's sentence Management Services Procedure Manual, it is obvious that Sentence Management is in a State of crisis. Presently, Sentence Management is going back and recalculating sex offenders sentences because they have awarded sentence credits not authorized by statute. Several sex offenders have lost as much as five and one-half years of credits which accumulated over the past ten plus years. It is unknown how many have been released without serving their full sentence requirement by law to return to society. See Exhibit No. **8**.

108. When an inmate has a problem with his sentence calculation that person must submit an "Inmate Request Form" to the counselor. If the counselor cannot resolve the issue it is forwarded to the Institutional Records Office. If they cannot resolve the issue it is forwarded to Sentence Management. Often to get to this stage it takes months. When Sentence Management receives the request they may respond. Majority of the time they do not respond or gives the inmate the runaround until the person gets so frustrated he/she gives up and accepts the error. Thus the procedures are inadequate and the result s violate the U.S. Constitution.

109. The Tennessee Department of Correction is deliberately violating the Plaintiff's and Class members' U.S. Constitutional rights to due process.

110. Tennessee Department of Correction and Office of General Counsel are denying Plaintiffs access to the courts. TDOC provides one computer with Westlaw installed for BCCX-Site 2. Westlaw does not go back to the sentencing statutes and laws from 1970 to 1995. The limited statutes for this time period is listed as "Out of Plan" or in PDF format where access is denied. The Plaintiffs are unaware if this is true at all TDOC institutions.

111. Various Plaintiffs have written the office of General Counsel requesting copies of the old sentencing statutes and sentencing acts. The Office denies the request and refers them to the library Supervisor of the law library. The supervisor then has to email General Counsel requesting the documents. Counsel notified the library supervisor that they do not have copies of the requested documentation because the acts and statutes are so old and was taking up space. If the inmate is lucky enough to receive the requested documentation it takes months. When working on a court timeline or deadline it is impossible for the inmate to meet such court deadlines. See Exhibit No. **9**.

112. Furthermore, the required forms to use in state and federal courts are not printable from Westlaw. Majority of the limited number of forms available in the institutional law library are out dated which in turn causes the inmate to have to write the court to request the needed form. Most of the state court clerks never respond to inmate requests. This in turn denies the inmate meaningful access to the courts.

113. The Tennessee criminal justice system is denied to prevent inmates from exercising to prevent inmates from exercising their U.S. Constitutional rights to due process.

114. The entire Manual is riddled with ambiguities, inaccurate, and arbitrary procedures which fails to adhere to legislature statutes and case law.

115. Through discovery Plaintiffs' will move to have Ms. Whisman prove if she is a specialist in this area of law to fully understand the complexities of the statutes and case law.

116. Ms. Whisman has failed to properly calculate life sentence credits to reduce the expiration dates of such sentences. Furthermore, she is failing to list the expiration dates on the TOMIS Sentence Summary sheet. See Exhibit **10**.

117. Plaintiff Jones TOMIS sentence summary listed his life sentence as life without parole for over twenty (20) years before being corrected. See Exhibit **11**.

118. Plaintiff Bruce Smiley experience Ms. Whisman's miscalculation of his 2004 sentences. He received sentence credits, but in October, 2018 Plaintiff Smiley received his TOMIS Offender Sentence Letter. This sentence letter reflected that TDOC, without prior notice or explanation, had taken 64 pretrial behavioral credits, 586 TDOC behavioral credits, and 544 TDOC program credits, cumulatively from his fifteen (15) and eight (8) year sentences leaving only 244 pretrial jail credits toward the 15 year sentence. This action removed Plaintiff from the eight (8) year sentence in which he had been certified by TDOC as being parole eligible. Plaintiff was placed back into the fifteen (15) year sentence that had expired. See Exhibit No. **12**.

119. Inmate Armstrong is another example of sentence miscalculation. TDOC took 792 days from his sentence without explanation. See Exhibit No.**13**.

## CAUSE OF ACTION 42 U.S.C. § 1983
## VIOLATION OF THE FIFTH, EIGHTH AND FOURTEENTH AMENDMENTS

120. Plaintiffs hereby re-allege and incorporate each and every allegation set forth above as if fully set forth herein.

121.  The Fifth, Eighth and Fourteenth Amendments to the United States Constitution, made applicable to states by the Fourteenth Amendment, guarantees all citizens, including Plaintiffs and the inmate Class, the right to be free from denial of equal protection, due process, and to be free from cruel and unusual punishments.

122.  By their statutes, policies, and practices described herein, Defendants subject Plaintiffs and members of the putative class to substantial risk of serious harm and ultimately death from such actions and inactions.  These statutes, policies, and practices have been and continue to be implemented by Defendants and their agents, officials, employees, and all persons acting in concert with them under color of state law, in their official capacities, and are the proximate cause of the Plaintiffs' and Class members' ongoing deprivations of rights secured by the United States Constitution under the Fifth, Eighth and Fourteenth Amendments.

123.  Defendants have been and are aware of all the deprivations complained of herein, have enacted statutes, given court opinions, have adopted policies and procedures that institutionalize those deprivations, and have been and are deliberately indifferent to deprivations.

124.  Under 42 U.S.C. § 1983, Plaintiffs and the Class are entitled to a declaration that the Defendants' written statutes, written policies, customs and practices are unconstitutional and an injunction and declaratory order requiring Defendants to enact one set of statutes and to adopt policies and practices consistent to protect the Plaintiffs' and Class members' constitutional rights and public interest.

125.  Plaintiffs and Inmate Class members have no adequate remedy at law to redress the wrongs suffered and set forth in this complaint.  Plaintiffs has suffered and will continue to suffer irreparable injury, both in the form of physical and mental harm and deprivation of

Constitutional rights, as a result of the unlawful statutes, policies, and practices of Defendants as alleged herein, unless Plaintiffs Inmate Class members are granted the relief they request.

WHEREFORE, Plaintiffs and the Class pray for the following relief:

1. Declaration that the suit is maintainable as a class action pursuant to Federal Rule of Civil Procedures 23 (a) and 23 (b)(1) and 2;

2. Appointment of a competent class action attorney to represent the Plaintiffs Inmate Class;

3. Declaration that the statutes, policies and practices of Defendants, and their agents, employees, officials, and all persons acting in concert with them, as described herein, are in violation of the rights of Plaintiffs and members of the Inmate Class under the Fifth, Eighth and Fourteenth Amendments of the U.S. Constitution, which prohibits Defendants form inflicting cruel and unusual punishment, due process violations, and equal protection under color of state law;

4. Preliminarily and permanently enjoin Defendants, their agents, employees, officials, and all persons acting in concert with them under color of state law, from subjecting Plaintiffs and the Inmate Class to the unconstitutional policies and practices described herein;

5. Order Defendants and their agents, employees, officials, and all persons acting in concert with them under color of state law, to develop and implement, as soon as practical, a plan to eliminate the substantial risk of serious harm that prisoner Plaintiffs and members of the plaintiff Class suffer due to Defendants' violations of their Constitutional rights;

6. Issue an order directing the Defendants to release Plaintiffs and members of the Inmate Class who have a life sentence imposed under the sentencing acts of 1970 through 1989, and have served the statutory 30 years. This does not include consecutive sentencing.

7. Issue an injunction to that prohibits the Legislature from amending *§ 40-35-501(h)(1)or* (i)(1)(2)(A) until this complaint is resolved.

8. Order *T.C.A. § 40-35-501* (i)(1)(2)(A)(1995) be unconstitutional.

9. Award Plaintiffs the costs of this suit, and reasonable attorney's fees and litigation expense pursuant to 42 U.S.C. § 1983, and other applicable law;

10. Retain jurisdiction of this case until Defendants have fully complied with the orders of this court, and there is a reasonable assurance Defendants will continue to comply in the future absent continuing jurisdiction; and

11. All other relief, legal or equitable, that the court deems just and proper.

Respectfully submitted on this the ___14th___ day of February, 2019.

Respectfully submitted by:

Ricky Harris, 121445
BCCX Site 2
1045 Horsehead Rd
Pikeville, TN 37367

Randy Jones, 120234
BCCX Site 2
1045 Horsehead Rd
Pikeville, TN 37367

30

Ronnie Armstrong, 506853
BCCX Site 2
1045 Horsehead R
Pikeville, TN 37367

Raymond Teague, 96338
BCCX Site 2
1045 Horsehead RD
Pikeville, TN 37367

John Boatfield, 619189
BCCX Site 2
1045 Horsehead Rd
Pikeville, TN 37367

Charles Mosley, 96777
BCCX Site 2
1045 Horsehead Rd
Pikeville, TN 37367

Eddie Murphey, 164710
BCCX Site 2
1045 Horsehead Rd
Pikeville, TN 37367

Lamont Johnson, 498866
BCCX Site 2
1045 Horsehead Rd
Pikeville, TN 37367

Jack Nunley, 81182
BCCX Site 2
1045 Horsehead Rd
Pikeville, TN 37367

Michael Stewart, 268006
BCCX Site 2
1045 Horsehead Rd
Pikeville, TN 37367

Stacy Ramsey, 224681
BCCX Site 2
1045 Horsehead Rd
Pikeville, TN 37367

William Ledford, 126283
BCCX Site 2
1045 Horsehead Rd
Pikeville, TN 37367

Bruce Smiley, 378381
BCCX Site 2
1045 Horsehead Rd
Pikeville, TN 37367

Andrew Mann, 432143
BCCX Site 2
1045 Horsehead Rd
Pikeville, TN 37367

31

# AFFIDAVIT OF VERIFICATION

Pursuant to 28 U.S.C. §1746, I declare that the facts stated within this class Action Complaint Under 42 U.S.C. §1983 for Injunctive and Declaratory Relief under the penalty of perjury are true and correct to the best of my knowledge, information and belief.

Signed this the ___15<u>th</u>___ day of February, 2019.

_____

Ricky Harris

STATE OF TENNESSEE )
                      ) ss
COUNTY OF BLEDSOE )

The above signed individual appeared before me and personally affixed his signature on this the ___15th___ day of February, 2019.

_____
Notary Public

My Commission Expires: ___4/29/21___

## AFFIDAVIT OF VERIFICATION

Pursuant to 28 U.S.C. §1746, I declare that the facts stated within this class Action Complaint Under 42 U.S.C. §1983 for Injunctive and Declaratory Relief under the penalty of perjury are true and correct to the best of my knowledge, information and belief.

Signed this the __13th__ day of February, 2019.

_Randy Jones_
Randy Jones

STATE OF TENNESSEE )
                   ) ss
COUNTY OF BLEDSOE )

The above signed individual appeared before me and personally affixed his signature on this the __13th__ day of February, 2019.

_____
Notary Public

My Commission Expires: ___3-9-22___

## AFFIDAVIT OF VERIFICATION

Pursuant to 28 U.S.C. §1746, I declare that the facts stated within this class Action Complaint Under 42 U.S.C. §1983 for Injunctive and Declaratory Relief under the penalty of perjury are true and correct to the best of my knowledge, information and belief.

Signed this the ___*17*___ day of February, 2019.

_Ronnie Armstrong_
Ronnie Armstrong

STATE OF TENNESSEE )
                          ) ss
COUNTY OF BLEDSOE )

The above signed individual appeared before me and personally affixed his signature on this the ___*17th*___ day of February, 2019.

_____
Notary Public

My Commission Expires: ___*3-9-22*___

41

## AFFIDAVIT OF VERIFICATION

Pursuant to 28 U.S.C. §1746, I declare that the facts stated within this class Action Complaint Under 42 U.S.C. §1983 for Injunctive and Declaratory Relief under the penalty of perjury are true and correct to the best of my knowledge, information and belief.

Signed this the _____ day of February, 2019.

_____
Jack Nunley

STATE OF TENNESSEE )
                    ) ss
COUNTY OF BLEDSOE )

The above signed individual appeared before me and personally affixed his signature on this the _____ day of February, 2019.

_____
Notary Public

My Commission Expires: 6/29/21

## AFFIDAVIT OF VERIFICATION

Pursuant to 28 U.S.C. §1746, I declare that the facts stated within this class Action Complaint Under 42 U.S.C. §1983 for Injunctive and Declaratory Relief under the penalty of perjury are true and correct to the best of my knowledge, information and belief.

Signed this the ___13___ day of February, 2019.

_Raymond E Teague_
Raymond Teague

STATE OF TENNESSEE )
                                    ) ss
COUNTY OF BLEDSOE )

The above signed individual appeared before me and personally affixed his signature on this the ___13th___ day of February, 2019.

_Avis A. Cagle_
Notary Public

My Commission Expires: ___6/29/21___

## AFFIDAVIT OF VERIFICATION

Pursuant to 28 U.S.C. §1746, I declare that the facts stated within this class Action Complaint Under 42 U.S.C. §1983 for Injunctive and Declaratory Relief under the penalty of perjury are true and correct to the best of my knowledge, information and belief.

Signed this the _____13th_____ day of February, 2019.

_____
Michael Stewart

STATE OF TENNESSEE )
                                        ) ss
COUNTY OF BLEDSOE )

The above signed individual appeared before me and personally affixed his signature on this the 13th day of February, 2019.

_____
Notary Public

My Commission Expires: _____6/29/21_____

## AFFIDAVIT OF VERIFICATION

Pursuant to 28 U.S.C. §1746, I declare that the facts stated within this class Action Complaint Under 42 U.S.C. §1983 for Injunctive and Declaratory Relief under the penalty of perjury are true and correct to the best of my knowledge, information and belief.

Signed this the _13th_ day of February, 2019.

_John Boatfield_
John Boatfield

STATE OF TENNESSEE )
) ss
COUNTY OF BLEDSOE )

The above signed individual appeared before me and personally affixed his signature on this the _13th_ day of February, 2019.

_Avis A. Cagle_
Notary Public

My Commission Expires: ___6/29/21___

## AFFIDAVIT OF VERIFICATION

Pursuant to 28 U.S.C. §1746, I declare that the facts stated within this class Action Complaint Under 42 U.S.C. §1983 for Injunctive and Declaratory Relief under the penalty of perjury are true and correct to the best of my knowledge, information and belief.

Signed this the _13th_ day of February, 2019.

_Stacy Ramsey_
Stacy Ramsey

STATE OF TENNESSEE )
                     ) ss
COUNTY OF BLEDSOE )

The above signed individual appeared before me and personally affixed his signature on this the _13th_ day of February, 2019.

_Notary Public_

My Commission Expires: _3-9-22_

## AFFIDAVIT OF VERIFICATION

Pursuant to 28 U.S.C. §1746, I declare that the facts stated within this class Action Complaint Under 42 U.S.C. §1983 for Injunctive and Declaratory Relief under the penalty of perjury are true and correct to the best of my knowledge, information and belief.

Signed this the _____13_____ day of February, 2019.

_____
Charles Mosley

STATE OF TENNESSEE )
                                       ) ss
COUNTY OF BLEDSOE )

The above signed individual appeared before me and personally affixed his signature on this the 13th day of February, 2019.

_____
Notary Public

My Commission Expires: _____6/29/21_____

## AFFIDAVIT OF VERIFICATION

Pursuant to 28 U.S.C. §1746, I declare that the facts stated within this class Action Complaint Under 42 U.S.C. §1983 for Injunctive and Declaratory Relief under the penalty of perjury are true and correct to the best of my knowledge, information and belief.

Signed this the ___ 13th ___ day of February, 2019.

_William Ledford_
William Ledford

STATE OF TENNESSEE )
                         ) ss
COUNTY OF BLEDSOE )

The above signed individual appeared before me and personally affixed his signature on this the __13th__ day of February, 2019.

_Avis A. Cagle_
Notary Public

My Commission Expires: ___ 6/29/21 ___



## AFFIDAVIT OF VERIFICATION

Pursuant to 28 U.S.C. §1746, I declare that the facts stated within this class Action Complaint Under 42 U.S.C. §1983 for Injunctive and Declaratory Relief under the penalty of perjury are true and correct to the best of my knowledge, information and belief.

Signed this the ___13TH___ day of February, 2019.



_____
Bruce Smiley

STATE OF TENNESSEE )
                    ) ss
COUNTY OF BLEDSOE )

The above signed individual appeared before me and personally affixed his signature on this the __13th__ day of February, 2019.

_____
Notary Public

My Commission Expires: ___6/29/21_____

## AFFIDAVIT OF VERIFICATION

Pursuant to 28 U.S.C. §1746, I declare that the facts stated within this class Action Complaint Under 42 U.S.C. §1983 for Injunctive and Declaratory Relief under the penalty of perjury are true and correct to the best of my knowledge, information and belief.

Signed this the _13^th_ day of February, 2019.

_Lamont Johnson_
Lamont Johnson

STATE OF TENNESSEE )
                    ) ss
COUNTY OF BLEDSOE )

The above signed individual appeared before me and personally affixed his signature on this the _13^th_ day of February, 2019.

_Notary Public_

My Commission Expires: _3-9-22_

## AFFIDAVIT OF VERIFICATION

Pursuant to 28 U.S.C. §1746, I declare that the facts stated within this class Action Complaint Under 42 U.S.C. §1983 for Injunctive and Declaratory Relief under the penalty of perjury are true and correct to the best of my knowledge, information and belief.

Signed this the _14th_ day of February, 2019.

_____
Andrew Mann

STATE OF TENNESSEE )
                            ) ss
COUNTY OF BLEDSOE )

The above signed individual appeared before me and personally affixed his signature on this the _14th_ day of February, 2019.

_____
Notary Public

My Commission Expires: _6/29/21_



# AFFIDAVIT OF VERIFICATION

Pursuant to 28 U.S.C. §1746, I declare that the facts stated within this class Action Complaint Under 42 U.S.C. §1983 for Injunctive and Declaratory Relief under the penalty of perjury are true and correct to the best of my knowledge, information and belief.

Signed this the _13th_ day of February, 2019.

_Eddie Murphy_
Eddie Murphey

STATE OF TENNESSEE )
                     ) ss
COUNTY OF BLEDSOE )

The above signed individual appeared before me and personally affixed his signature on this the _13th_ day of February, 2019.

_Avis A. Cagle_
Notary Public

My Commission Expires: _6/29/21_

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### AT NASHVILLE

RICKY HARRIS, )
RANDY JONES, )
RONNIE ARMSTRONG, )
JACK NUNLEY, )
RAYMOND TEAGUE, )
MICHAEL STEWART, )
JOHN BOATFIELD, )
STACY RAMSEY, )
CHARLES MOSLEY, )
WILLIAM LEDFORD, )
BRUCE SMILEY, )
LAMONT JOHNSON, )
ANDREW MANN, )
EDDIE MURPHEY, et al., )
ON BEHALF OF THEMSELVES )
AND ALL OTHER PRISONERS )
UNDER THE JURISDICTION OF )
THE TENNESSEE DEPARTMENT )
OF CORRECTION, )
STATE OF TENNESSEE, )
SIMILARLY SITUATED, )
      PLAINTIFFS, )
 )
VS. )  CASE # _____
 )  HONORABLE _____
STATE OF TENNESSEE, )
TENNESSEE BOARD OF PAROLE, )  JURY TRIAL DEMAND
TENNESSEE DEPARTMENT )
OF CORRECTION, )
CANDICE WISEMAN, DIRECTOR )
OF SENTENCE MANAGEMENT )
INFORMATION SERVICES, et al., )
      RESPONDENTS. )


### SUMMONS IN A CIVIL ACTION


1

**TO:**

Tennessee Board of Parole
404 James Robertson, Parkway
Parkway Towers, Suite 1310
Nashville, TN 37243-085

A lawsuit has been filed against you,

Within 21 days after service of this summons on you (not counting the day you received it) – or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12(a)(2) or (3) – you must serve on the Plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the Plaintiff or Plaintiff's attorney, whose name and address are:

Ricky Harris, 121445
Representative of Plaintiffs
1045 Horsehead Lane
Pikeville, TN 37367

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Date: 2/19/19

Ricky Harris
Ricky Harris

2

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

Certified Mail Fee
$

Extra Services & Fees *(check box, add fee as appropriate)*
☑ Return Receipt (hardcopy)      $
☐ Return Receipt (electronic)    $
☐ Certified Mail Restricted Delivery  $
☐ Adult Signature Required       $
☐ Adult Signature Restricted Delivery $

Postmark
Here

Postage
$

Total Postage and Fees
$

Sent To  Tenn. Board of Parole
Street and Apt. No., or PO Box No. 404 James Robertson Pky Ste 1310
City, State, ZIP+4  Nashville TN  37243

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

7016 1370 0001 2044 3612

**CERTIFIED MAIL®**

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Tennessee Board of Parole
404 James Robertson Pky.
Parkway Towers, Ste 1310
Nashville, TN 37243

9590 9402 1955 6123 3735 84

2. Article Number *(Transfer from service label)*
7016 1370 0001 2044 3612

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X
☐ Agent
☐ Addressee

B. Received by *(Printed Name)*      C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:          ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053    Domestic Return Receipt

RICKY HARRIS,                                   )
RANDY JONES,                                    )
RONNIE ARMSTRONG,                               )
JACK NUNLEY,                                    )
RAYMOND TEAGUE,                                 )
MICHAEL STEWART,                                )
JOHN BOATFIELD,                                 )
STACY RAMSEY,                                   )
CHARLES MOSLEY,                                 )
WILLIAM LEDFORD,                                )
BRUCE SMILEY,                                   )
LAMONT JOHNSON,                                 )
ANDREW MANN,                                    )
EDDIE MURPHEY,  et al.,                         )
ON BEHALF OF THEMSELVES                         )
AND ALL OTHER PRISONERS                         )
UNDER THE JURISDICTION OF                       )
THE TENNESSEE DEPARTMENT                        )
OF CORRECTION,                                  )
STATE OF TENNESSEE,                             )
SIMILARLY SITUATED,                             )
        PLAINTIFFS,                             )
                                                )
VS.                                             )   CASE # _____
                                                )   HONORABLE _____
STATE OF TENNESSEE,                             )
TENNESSEE BOARD OF PAROLE,                      )   JURY TRIAL DEMAND
TENNESSEE DEPARTMENT                            )
OF CORRECTION,                                  )
CANDICE WISEMAN, DIRECTOR                       )
OF SENTENCE MANAGEMENT                          )
INFORMATION SERVICES,  et al.,                  )
        RESPONDENTS.                            )


## SUMMONS IN A CIVIL ACTION

1

**TO:**

Mr. Tony Parker, Commissioner
Rachel Jackson Building, 6th Floor
320 Sixth Avenue, North
Nashville, TN 37243-1465

A lawsuit has been filed against you,

  Within 21 days after service of this summons on you (not counting the day you received it) – or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12(a)(2) or (3) – you must serve on the Plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the Plaintiff or Plaintiff's attorney, whose name and address are:

Ricky Harris, 121445
Representative of Plaintiffs
1045 Horsehead Lane
Pikeville, TN 37367

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Date: 2/19/19

              *Ricky Harris*
              Ricky Harris

2



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Certified Mail Fee $

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy) $
☐ Return Receipt (electronic) $
☐ Certified Mail Restricted Delivery $
☐ Adult Signature Required $
☐ Adult Signature Restricted Delivery $

Postage $

Total Postage and Fees $

Sent To *Tony Parker Commissioner*
Street and Apt. No., or PO Box No. *320 Sixth Ave N 6th Fl*
City, State, ZIP+4® *Nashville, TN 37243*

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

7016 1370 0001 2044 3537
7016 1370 0001 2044 3537
7016 1370 0001 2044 3537

**CERTIFIED MAIL**

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

---

**SENDER: COMPLETE THIS SECTION**

- ■ Complete items 1, 2, and 3.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Mr. Tony Parker
Commissioner
Rachael Jackson Bldg 6th F
320 Sixth Ave N
Nashville, TN 37243-1465

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
9590 9402 1955 6123 3735 77

2. Article Number (Transfer from service label)

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☐ Agent
  ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from Item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053    Domestic Return Receipt

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## AT NASHVILLE

RICKY HARRIS, )
RANDY JONES, )
RONNIE ARMSTRONG, )
JACK NUNLEY, )
RAYMOND TEAGUE, )
MICHAEL STEWART, )
JOHN BOATFIELD, )
STACY RAMSEY, )
CHARLES MOSLEY, )
WILLIAM LEDFORD, )
BRUCE SMILEY, )
LAMONT JOHNSON, )
ANDREW MANN, )
EDDIE MURPHEY, et al., )
ON BEHALF OF THEMSELVES )
AND ALL OTHER PRISONERS )
UNDER THE JURISDICTION OF )
THE TENNESSEE DEPARTMENT )
OF CORRECTION, )
STATE OF TENNESSEE, )
SIMILARLY SITUATED, )
      PLAINTIFFS, )
   )
VS. ) CASE # _____
 ) HONORABLE _____
STATE OF TENNESSEE, )
TENNESSEE BOARD OF PAROLE, ) JURY TRIAL DEMAND
TENNESSEE DEPARTMENT )
OF CORRECTION, )
CANDICE WISEMAN, DIRECTOR )
OF SENTENCE MANAGEMENT )
INFORMATION SERVICES, et al., )
      RESPONDENTS. )


## SUMMONS IN A CIVIL ACTION


1

**TO:**

Ms. Candice Wiseman
Directory of Sentence Management Services
Rachel Jackson Building, 6th Floor
320 Sixth Avenue, North
Nashville, TN 37243-1465

A lawsuit has been filed against you,

Within 21 days after service of this summons on you (not counting the day you received it) – or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12(a)(2) or (3) – you must serve on the Plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the Plaintiff or Plaintiff's attorney, whose name and address are:

Ricky Harris, 121445
Representative of Plaintiffs
1045 Horsehead Lane
Pikeville, TN 37367

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Date: 2/19/19

_Ricky Harris_
Ricky Harris

2

**CERTIFIED MAIL**

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

7016 1370 0001 2044 3605

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

OFFICIAL USE

Certified Mail Fee
$

Extra Services & Fees (check box, add fee as appropriate)
☒ Return Receipt (hardcopy)          $ _____
☐ Return Receipt (electronic)        $ _____
☐ Certified Mail Restricted Delivery $ _____
☐ Adult Signature Required           $ _____
☐ Adult Signature Restricted Delivery $ _____

Postmark
Here

Postage
$

Total Postage and Fees
$

Sent To
Candice Whisman, Director
Street and Apt. No., or PO Box No.
320 Sixth Ave N
City, State, ZIP+4®
Nashville, TN 37243

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____          ☐ Agent
                            ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

1. Article Addressed to:

Ms. Candice Whisman
Director of Sentence Mgt.
Rachael Jackson Bldg. 6th F
320 Sixth Ave N
Nashville, TN 37243-1465

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☒ No

9590 9402 1955 6123 3735 91

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
   (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

2. Article Number (Transfer from service label)
7016 1370 0001 2044 3605

PS Form 3811, July 2015 PSN 7530-02-000-9053          Domestic Return Receipt

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## AT NASHVILLE

| | |
|---|---|
| RICKY HARRIS,<br>RANDY JONES,<br>RONNIE ARMSTRONG,<br>JACK NUNLEY,<br>RAYMOND TEAGUE,<br>MICHAEL STEWART,<br>JOHN BOATFIELD,<br>STACY RAMSEY,<br>CHARLES MOSLEY,<br>WILLIAM LEDFORD,<br>BRUCE SMILEY,<br>LAMONT JOHNSON,<br>ANDREW MANN,<br>EDDIE MURPHEY,  et al.,<br>ON BEHALF OF THEMSELVES<br>AND ALL OTHER PRISONERS<br>UNDER THE JURISDICTION OF<br>THE TENNESSEE DEPARTMENT<br>OF CORRECTION,<br>STATE OF TENNESSEE,<br>SIMILARLY SITUATED,<br>            PLAINTIFFS, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| VS. | )  CASE # _____<br>)  HONORABLE _____ |
| STATE OF TENNESSEE,<br>TENNESSEE BOARD OF PAROLE,<br>TENNESSEE DEPARTMENT<br>OF CORRECTION,<br>CANDICE WISEMAN, DIRECTOR<br>OF SENTENCE MANAGEMENT<br>INFORMATION SERVICES,  et al.,<br>            RESPONDENTS. | )<br>)  JURY TRIAL DEMAND<br>)<br>)<br>)<br>)<br>)<br>) |

## SUMMONS IN A CIVIL ACTION

1

**TO:**

Mr. Herbert Harrison Slatery III
Attorney General for the State of Tennessee
301 6th Avenue North
P.O. Box 20207
Nashville, TN 37243-0465

A lawsuit has been filed against you,

      Within 21 days after service of this summons on you (not counting the day you received it) – or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12(a)(2) or (3) – you must serve on the Plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the Plaintiff or Plaintiff's attorney, whose name and address are:

Ricky Harris, 121445
Representative of Plaintiffs
1045 Horsehead Lane
Pikeville, TN 37367

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Date: 2|19|19

Ricky Harris

2

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

Certified Mail Fee
$

Extra Services & Fees *(check box, add fee as appropriate)*
☒ Return Receipt (hardcopy)          $ _____
☐ Return Receipt (electronic)        $ _____
☐ Certified Mail Restricted Delivery $ _____
☐ Adult Signature Required           $ _____
☐ Adult Signature Restricted Delivery $ _____

Postage
$

Total Postage and Fees
$

Postmark
Here

Sent To
Herbert Slatery III, Atty. General
Street and Apt. No., or PO Box No.
PO Box 20207
City, State, ZIP+4®
Nashville, TN 37243

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

7016 1370 0001 2044 3599

CERTIFIED MAIL

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Mr. Herbert Slatery III
Attorney General
301 6th Ave. N
PO Box 20207
Nashville, TN 37243

9590 9402 1955 6123 3736 07

2. Article Number *(Transfer from service label)*

7016 1370 0001 2044 3599

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                    ☐ Agent
                                     ☐ Addressee

B. Received by *(Printed Name)*      C. Date of Delivery

D. Is delivery address different from Item 1?  ☐ Yes
   If YES, enter delivery address below:        ☒ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053          Domestic Return Receipt