IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RICKY HARRIS, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | NO. 3:19-cv-00174 |
| v. ) | |
| ) | JUDGE RICHARDSON |
| STATE OF TENNESSEE, et al., ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM OPINION**

The following fourteen inmates at the Bledsoe County Correctional Complex ("BCCX") in Pikeville, Tennessee, filed this *pro se* civil rights action under 42 U.S.C. § 1983: Ricky Harris, Randy Jones, Ronnie Armstrong, Jack Nunley, Raymond Teague, Michael Stewart, John Boatfield, Stacy Ramsey, Charles Mosley, William Ledford, Bruce Smiley, Lamont Johnson, Andrew Mann,[1] and Eddie Murphy. Each Plaintiff has either paid his share of the filing fee or been authorized to proceed in this Court without prepaying fees or costs. The Complaint is now before the Court for an initial review, as required by the Prison Litigation Reform Act ("PLRA").

**I.** **Initial Review**

Under the PLRA, the Court must review and dismiss the Complaint if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A. The Court must construe a *pro se* complaint liberally, *United States v. Smotherman*, 838 F.3d 736, 739 (6th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and accept factual allegations as true unless they are

---

[1] Plaintiff Mann is now confined at the Morgan County Correctional Complex in Wartburg, Tennessee. (Doc. No. 30.)

entirely without credibility. *Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)).

### A. Factual Allegations

Plaintiffs are fourteen convicted state prisoners. (Doc. No. 1 ¶¶ 3–16.) They seek to certify a class—referred to by Plaintiffs as the "Inmate Class" (*id.* ¶ 28)—consisting of "all prisoners in the State of Tennessee Department of Correction [that] are affected by Tennessee sentencing statutes and [the] Tennessee Board of Parole" (*id.* ¶ 23). The matter of class certification, however, is not before the Court at this time.[2]

Plaintiffs name four defendants: the State of Tennessee ("State"), which in Plaintiff's description "encompasses the State Legislature and House of Representatives, Tennessee courts including but not limited to criminal and circuit courts, Court of Criminal Appeals and Tennessee Supreme Court" (*id.* ¶ 18); the Tennessee Board of Parole ("Parole Board"), which "includes all parole board members" (*id.* ¶ 20); the Tennessee Department of Correction ("TDOC"), which is "responsible for sentence calculations" (*id.* ¶ 19); and Candace Whisman,[3] the TDOC Director of Sentence Management Services (*id.* ¶ 21).

The factual allegations in the Complaint are divided into three sections. The first section pertains to the State's statutory sentencing scheme. (*Id.* ¶¶ 37–74.) The second addresses the Parole Board's policies and practices. (*Id.* ¶¶ 75–93.) And the third challenges sentence calculations by Whisman and the TDOC. (*Id.* ¶¶ 94–119.) Interspersed within these sections are a few allegations

---

[2] The Complaint includes argument in support of Plaintiffs' request for class certification (*id.* at ¶¶ 23–34) and Plaintiffs have separately filed a Motion for Class Certification incorporating this argument (Doc. No. 17). That motion has been denied without prejudice. (Doc. No. 29 at 2.)

[3] Plaintiffs spell this Defendant's name as "Candice Whisman" (Doc. No. 1 at 1, 24, ¶ 73) and "Candice Wiseman" (*id.* ¶¶ 21, 43), but the Court takes judicial notice of an affidavit filed in an unrelated case in this Court reflecting that the proper spelling is "Candace Whisman." *See King v. Hall*, No. 2:18-cv-00096, Doc. No. 26-1 (M.D. Tenn. July 17, 2019).

regarding individual plaintiffs.[4] (*Id.* ¶¶ 43, 72, 80, 117–19.) Plaintiffs assert due process claims, equal protection claims, and claims for alleged violation of their right to be free from cruel and unusual punishment under the Eighth Amendment. (*Id.* ¶¶ 36, 121.)

### 1. The State's Sentencing Scheme

Plaintiffs first provide a scattershot summary of the development of state statutes dealing with parole or release eligibility (*id.* ¶¶ 38, 52, 54, 57–60, 65–66), sentence credits (*id.* ¶¶ 39–40, 42–45, 47–51, 55–56), and determinate sentences (*id.* ¶ 46). Plaintiffs' primary assertion seems to be that Tennessee's entire sentencing scheme is "so convoluted" that it violates their constitutional right to due process. (*Id.* ¶¶ 35–36.) According to Plaintiffs, sentencing statutes have "become so arbitrary that defendants have been denied the right to understand the charges against them, denied due process, [and] denied the opportunity to plea due to inaccurate information." (*Id.* ¶ 73.) Plaintiffs also specifically assert that Tennessee Code Annotated § 40-35-501(i)(2)(A)—the sentencing statute that applies to defendants convicted of committing first-degree murder on or after July 1, 1995—is void and unconstitutional. (*Id.* ¶ 69.)

Plaintiffs also assert that there is a "disparity in the sentencing statutes" that violates their constitutional equal protection rights (*id.* ¶ 36), particularly as it relates to Tennessee's sentencing statutes for murder (*id.* ¶ 70).

### 2. The Parole Board's Policies and Practices

Next, Plaintiffs allege that the Parole Board denies "release to a majority of parole-eligibl[e] offenders who have met all the required guidelines established by T.D.O.C. and the Board of Parole." (*Id.* ¶ 75.) They also allege that Parole Board members "make hasty and uninformed parole decisions" because their case loads are too large. (*Id.* ¶ 76.) Plaintiffs assert

---

[4] Plaintiff Smiley also attached a supporting affidavit to the Complaint. (Doc. No. 1-1 at 78–79.)

that, by failing to consider all of the parole criteria, and instead relying exclusively on the "seriousness of the offense" to deny parole, the Parole Board denies prisoners' due process rights. (*Id.* ¶¶ 82–83.)

Plaintiffs also seem to assert an equal protection claim against the Parole Board, alleging that the Parole Board improperly distinguishes between certain categories of inmates. Namely, they allege that the complete Parole Board attends hearings in person only in "high-profile" cases, while so-called "regular prisoners" receive some kind of remote hearing. (*Id.* ¶ 91.) Even then, Plaintiffs allege, prisoners who committed a "violent offense" meet with one or two Parole Board members by video conference, while "non-violent" offenders meet a hearing officer by video conference who "makes a non-binding recommendation to the Board." (*Id.* ¶¶ 89–90.) And finally, Plaintiffs allege that prisoners with "protesters[5] are 95% more likely to be denied parole . . . as long as the protesters attend the hearing," as compared to prisoners without protesters. (*Id.* ¶ 92.) Plaintiffs also take issue with the Parole Board's appeal process, calling it a "travesty of justice" because it provides "no accountability." (*Id.* ¶¶ 86–87.)

### 3. Sentence Calculation by Whisman and the TDOC

Finally, Plaintiffs excerpt parts of the TDOC's "Sentence Management Service Procedures Manual" that provide a history of some of Tennessee's sentencing statutes. (*Id.* ¶¶ 94–107.) They complain that the TDOC does not comply with certain provisions of the Manual in its sentence calculations. (*Id.* ¶¶ 103–05, 107.) They also allege that the Manual contains "ambiguities, [and] inaccurate[] and arbitrary procedures which fail[] to adhere to [] statutes and case law." (*Id.* ¶ 114.) In reading the Manual, Plaintiffs allege, "it is obvious that Sentence Management is in a [s]tate of

---

[5] The Court assumes that in referring to "protesters," Plaintiffs are referring persons (who presumably are aligned with the victim(s) at issue) who oppose parole for the prisoner at issue.

crisis." (*Id.* ¶ 107.) Plaintiffs also assert that the procedures for challenging sentence calculations are so inadequate that they violate Plaintiffs' right to due process. (*Id.* ¶ 108–09.)

As part of this section, Plaintiffs assert that they have been denied access to the courts for two reasons: they cannot adequately access old sentencing statutes (*id.* ¶¶ 110–11), and the BCCX law library has a limited number of outdated state and federal court forms (*id.* ¶ 112).

### 4. Requested Relief

Plaintiffs seek declaratory and injunctive relief. Specifically, Plaintiffs request a declaration that "Defendants' written statutes, written policies, customs and practices are unconstitutional." (*Id.* ¶ 124.) They seek an order enjoining Defendants from subjecting "Plaintiffs and the Inmate Class to the unconstitutional policies and practices described" in the Complaint, as well as an order instructing "Defendants and their agents, employees, officials, and all persons acting in concert with them under color of state law to develop and implement . . . a plan to eliminate the substantial risk of serious harm that prisoner Plaintiffs and members of the plaintiff Class suffer due to Defendants' violations of their Constitutional rights." (*Id.* at 30.) Plaintiffs also request a declaration that Tennessee Code Annotated § 40-35-501(i)(2)(A) is unconstitutional, and an order prohibiting the General Assembly from amending this and another subdivision of the same statute. (*Id.* at 31.)

Plaintiffs also seek release from custody for prisoners "who have a life sentence imposed under the sentencing acts of 1970 through 1989, and have served the statutory 30 years," not including those prisoners subject to consecutive sentencing. (*Id.*)

### B. Standard of Review

To determine whether a prisoner's complaint "fails to state a claim on which relief may be granted" under the PLRA, the Court applies the same standard as under Rule 12(b)(6) of the

Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). The Court therefore accepts "all well-pleaded allegations in the complaint as true, [and] 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)). An assumption of truth does not extend to allegations that consist of legal conclusions or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). A *pro se* pleading must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

### C. Discussion

"To prevail on a cause of action under § 1983, a plaintiff must prove '(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law.'" *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006)).

#### 1. Immune Defendants

As an initial matter, three of the four named Defendants are immune from suit. Under the Eleventh Amendment, states and state agencies or departments have sovereign immunity from suit in federal court. *Boler v. Earley*, 865 F.3d 391, 409–10 (6th Cir. 2017) (citing *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005) (en banc) and *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). This covers the State of Tennessee, as well as the TDOC and the Parole Board. *See Wingo v. Tenn. Dep't of Corrs.*, 499 F. App'x 453, 454 (6th Cir. 2012) (citations omitted) (noting that the TDOC is an agency of the state of Tennessee); *Haynes v. Bd. of Paroles Members/Chairman*, No. 3:18-cv-00441, 2018 WL 3426179, at *2 (M.D. Tenn. July 16, 2018)

6

(Campbell, J.) (citing *Pennhurst*, 465 U.S. at 98–100) ("A suit against the Board of Paroles is actually a suit against the state of Tennessee.").

"There are three exceptions to sovereign immunity: (1) when the state has waived immunity by consenting to the suit; (2) when Congress has expressly abrogated the states' sovereign immunity, and (3) when the doctrine set forth in *Ex parte Young*, 209 U.S. 123 (1908) applies." *Boler*, 865 F.3d at 410 (citing *Puckett v. Lexington-Fayette Urban Cty. Gov't*, 833 F.3d 590, 598 (6th Cir. 2016)). The state of Tennessee has not consented to this suit, and "Section 1983 does not abrogate Eleventh Amendment immunity." *Id.* (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)). Thus, the *Ex parte Young* doctrine provides the only potential exception.

"The exception set forth in *Ex parte Young* allows plaintiffs to bring claims for prospective relief against state officials sued in their official capacity to prevent future federal constitutional or statutory violations." *Id.* at 412 (citing *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008)). Because they are not "state officials," this exception does not apply to the state of Tennessee, the TDOC, or the Parole Board. *See Puckett*, 833 F.3d at 598 (citing *S & M Brands*, 527 F.3d at 507–08) ("The *Ex parte Young* doctrine applies when the lawsuit involves an action against state officials, not against the state itself.") Accordingly, these three defendants will be dismissed without prejudice. *See Carmichael v. City of Cleveland*, 571 F. App'x 426, 435 (6th Cir. 2014) (citing *Ernst*, 427 F.3d at 367) ("Dismissals for lack of jurisdiction based on Eleventh Amendment immunity should be made without prejudice.").

### 2. Defendant Whisman

The remaining Defendant is Candace Whisman, the Director of Sentence Management Services for the TDOC. This position qualifies her as a "state official" under *Ex parte Young*. And because Plaintiffs do not specify the capacity in which they are suing Whisman, the Court assumes

that Whisman is being sued in her official capacity. *Moore v. City of Harriman*, 272 F.3d 769, 771 (6th Cir. 2001) (citing *Whittington v. Milby*, 928 F.2d 188, 193 (6th Cir. 1991)). Moreover, Plaintiffs' allegations against Whisman bear several hallmarks of an official-capacity claim: her official title is listed in the caption of the Complaint (Doc. No. 1 at 2), Plaintiffs do not seek damages from her individually (*id.* ¶124, pp. 30–31), and their allegations are related to Whisman's official role in performing sentence calculations. *Cf. Moore*, 272 F.3d at 773 (finding that a complaint provided sufficient notice of individual-capacity claims based on these same considerations). The Court must therefore determine the extent to which *Ex parte Young* applies to Whisman in this case.

"The test for determining whether the *Ex parte Young* exception applies is a 'straightforward' one." *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 474 (6th Cir. 2008) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). "The court considers 'whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Id.* (quoting *Verizon*, 535 U.S. at 645). Here, the Complaint alleges, among other things, that Tennessee's scheme for calculating sentences presents an ongoing violation of Plaintiffs' rights to due process, equal protection, and to be free from cruel and unusual punishment. Plaintiffs also seek prospective relief in the form of declarations and injunctions. Accordingly, Defendant Whisman is not immune from this suit. *See S & M Brands*, 527 F.3d at 509 (citing *Will*, 491 U.S. at 71 n.10) ("Under the *Ex parte Young* exception, a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law . . . .").

The Court notes, however, that part of Plaintiffs' requested relief is release from incarceration for certain convicted state prisoners. (Doc. No. 1 at 31.) That relief is not available

8

under Section 1983, as a prisoner seeking "immediate release or a speedier release" must do so "through a writ of habeas corpus, not through § 1983." *Wershe v. Combs*, 763 F.3d 500, 504 (6th Cir. 2014) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973)). Accordingly, Plaintiffs cannot receive that requested relief in this action.

Additionally, although *Ex parte Young* allows Plaintiffs to pursue this action against Defendant Whisman, some of Plaintiffs' allegations cannot support a claim against her, because they are not related to Whisman's official duties. "*Young* does not reach state officials who lack a 'special relation to [a] particular statute' and '[are] not expressly directed to see to its enforcement.'" *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1047 (6th Cir. 2015) (quoting *Young*, 209 U.S. at 157). Put another way, "'*Young* does not apply when a defendant state official has neither enforced nor threatened to enforce the allegedly unconstitutional state statute.'" *Id.* (quoting *Children's Healthcare is a Legal Duty v. Deters*, 92 F.3d 1412, 1415 (6th Cir. 1996)).

Here, at this early stage in the proceedings, the Court assumes that Defendant Whisman is broadly responsible for calculating sentences as the Director of Sentence Management Services for TDOC. Even construing the Complaint liberally, however, the Court cannot conclude that Whisman has any role in administering or enforcing the Parole Board's policies and procedures. Thus, Plaintiffs cannot pursue any claims based on the Parole Board's considerations and determinations against Defendant Whisman. These claims will be dismissed without prejudice.

The same rationale also precludes claims based on Plaintiffs' stray allegations that they have been denied access to the courts. Plaintiffs do not allege, and the Court cannot reasonably infer, that Defendant Whisman has anything to do with BCCX inmates' ability to access old sentencing statutes or forms for use in state and federal court. Moreover, to plead a cause of action for denial of access to the courts, Plaintiffs must allege "the law and facts sufficient to establish

both the interference with [their] access to the courts, and the non-frivolous nature of [their] claim[s] that [were] lost" due to their inability to access the courts. *Brown v. Matauszak*, 415 F. App'x 608, 612 (6th Cir. 2011) (explaining the "unique pleading requirements" of access-to-courts claims). They have not done so here. Accordingly, to the extent that Plaintiffs attempt to assert any access-to-court claims, they will be dismissed.

3. **Sentencing Claims**

Turning to Plaintiffs' sentencing claims, Plaintiffs assert that they have been denied due process, equal protection, and the right to be free from cruel and unusual punishment by Tennessee's sentencing scheme and the sentence calculations for which Defendant Whisman is allegedly responsible. (Doc. No. 1 ¶ 121, p. 30.) The Court will address each category of claims in turn.

a. **Due Process**

As to violations of their due process rights, Plaintiffs essentially advance three arguments: (1) Tennessee's sentencing scheme is too complicated to apply consistently (Doc. No. 1 ¶¶ 35–36); (2) Tennessee Code Annotated § 40-35-501(i)(2)(A) is unconstitutional (*id.* ¶ 69); and (3) the procedure for challenging sentence calculations is inadequate (*id.* ¶¶ 108–09).

On its face, Plaintiffs' first argument seems to be a broad assertion that Tennessee's entire sentencing scheme is void for vagueness under the Due Process Clause. But this argument, itself, is too vague and unfocused to state a claim. That is, Plaintiffs do not allege sufficient facts to support a potential vagueness challenge to Tennessee's *entire* sentencing scheme. In substance, however, Plaintiffs' allegations generally focus on Tennessee's statutes regarding life sentences (*see id.* ¶¶ 58–69) and calculating various sentence credits (*see id.* ¶¶ 39–51). The United States Supreme Court has acknowledged that "vague sentencing provisions may pose constitutional

questions if they do not state with sufficient clarity the consequences of violating a given criminal statute." *United States v. Batchelder*, 442 U.S. 114, 123 (1979) (collecting cases). Given this guidance, and liberally construing the Complaint in a light most favorable to Plaintiffs, the Court construes Plaintiffs' first argument as a claim that Tennessee's statutes regarding life sentences and the calculation of sentence credits are unconstitutionally vague. The Court will not dismiss this claim at this time. While it is unclear whether every Plaintiff has standing to pursue this claim, the issue of standing will be resolved as the case develops further.

Plaintiffs' second argument is a specific challenge to Tennessee Code Annotated § 40-35-501(i)(2)(A). This statute addresses release eligibility for a person convicted of committing "[m]urder in the first degree" "on or after July 1, 1995." *Id.* To the extent that Plaintiffs are asserting that this statute is void for vagueness in the context of Tennessee's sentencing scheme for life sentences and sentencing credits, it is subsumed within Plaintiffs' first argument. But to the extent that Plaintiffs are attempting to bring some other challenge to Tennessee Code Annotated § 40-35-501(i)(2)(A), Plaintiffs' challenge is not sufficiently clear to state a colorable claim for relief.

Third, Plaintiffs challenge Tennessee's procedures for challenging sentence calculations. "[A]s a general proposition, . . . the Eighth and Fourteenth Amendment may be implicated when a prisoner is detained beyond his jail sentence." *Beil v. Lake Erie Corr. Records Dep't*, 282 F. App'x 363, 368 (6th Cir. 2008) (collecting cases). Thus, a prisoner may state "a viable due process claim" by "challeng[ing his] state's procedures for addressing requests for sentence recalculations." *See Russell v. Lazar*, 300 F. Supp. 2d 716, 722 (E.D. Wis. 2004). From the face of the Complaint, the Court cannot determine whether TDOC has an adequate process for

addressing a prisoner's request to recalculate his sentence, so this claim will not be dismissed at this time.

### b. Equal Protection

Next, Plaintiffs seem to assert an equal protection claim based on the disparity in punishment for Tennessee prisoners convicted of a murder committed during different time periods. (Doc. No. 1 at ¶ 70 ("Throughout the past forty (40) or fifty (50) years the statu[t]e for murder has changed multiple times to the extent that the disparity it has created violates the U.S. Constitution.").) This claim will not be permitted to proceed.

Under the Equal Protection Clause, "'statutes that do not interfere with fundamental rights or single out suspect classifications must bear only a rational relationship to a legitimate state interest.'" *Jackson v. Jamrog*, 411 F.3d 615, 618 (6th Cir. 2005) (quoting *Richland Bookmart, Inc. v. Nichols*, 278 F.3d 570, 571 (6th Cir. 2002)). Here, "'prisoners are not considered a suspect class for purposes of equal protection litigation,'" *Michael v. Ghee*. 498 F3d 372, 379 (6th Cir. 2007) (quoting *Jamrog*, 411 F.3d at 619), and Plaintiffs do not allege that there is a fundamental right to a particular sentence for a prisoner convicted of murder. This claim is therefore subject to rational basis review.

"'A State has wide latitude in fixing the punishment for state crimes.'" *Hartman v. Berghuis*, No. 1:12-cv-1015, 2015 WL 5714517, at *13 (W.D. Mich. Sept. 29, 2015) (quoting *Williams v. Illinois*, 399 U.S. 235, 241 (1973)). The Sixth Circuit has specifically rejected an equal protection claim premised on the alleged "disparity between the sentence [imposed] under [a state's] old sentencing regime and the sentence an offender would receive under the new regime." *Rashad v. Lafler*, 675 F.3d 564, 570 (6th Cir. 2012). That is because "the federal Constitution does not require 'that two persons convicted of the same offense receive identical sentences.'" *Id.*

(quoting *Williams*, 399 U.S. at 243). Additionally, the United States "Supreme Court has explained the widely-accepted rule that 'the 14th Amendment does not forbid statutes and statutory changes to have a beginning, and thus to discriminate between the rights of an earlier and later time.'" *Sonnier v. Quarterman*, 476 F.3d 349, 369 (5th Cir. 2007) (quoting *Sperry & Hutchinson Co. v. Rhodes*, 220 U.S. 502, 505 (1911)); *see also Foster v. Washington State Bd. of Prison Terms and Parole*, 878 F.2d 1233, 1235 (9th Cir. 1989) (citing *Frazier v. Manson*, 703 F.2d 30, 36 (2d Cir. 1983)) ("There is no denial of equal protection in having persons sentenced under one system for crimes committed before July 1, 1984 and another class of prisoners sentenced under a different system.").

Here, Plaintiffs seemingly argue that the disparity in sentencing among Tennessee prisoners convicted of murder committed at different times is unconstitutional. But as the Sixth Circuit has clearly explained, the Equal Protection Clause does not require a state to impose uniform punishments for the same criminal act committed at different times. *See Rashad*, 675 F.3d at 571 (citing *Doe v. Mich. Dep't of State Police*, 490 F.3d 491, 504 (6th Cir. 2007)) (holding that it does not "violate the Federal Constitution" for "an earlier offender" to "receive[] a higher sentence than later offenders"). A state legislature may enact statutes with "'many classifications which do not deny equal protection; it is only invidious discrimination which offends the Constitution.'" *Doe*, 490 F.3d at 505 (quoting *New Orleans v. Dukes*, 427 U.S. 297, 304 n.5 (1976)). Accordingly, Plaintiffs fail to state an equal protection claim, and this claim will be dismissed with prejudice.

### c. Cruel and Unusual Punishment

Finally, without specifically explaining what aspects of the Complaint pertain to this claim, Plaintiffs assert that they have been denied their right to be free from cruel and unusual punishment

under the Eighth Amendment. (Doc. No. 1 ¶ 121.) As stated above, *supra* Section I.C.3.a., the Sixth Circuit has noted that "the Eighth and Fourteenth Amendment may be implicated when a prisoner is detained beyond his jail sentence." *Beil*, 282 F. App'x at 368 (collecting cases). Thus, liberally construing the Complaint, the Court concludes that Plaintiffs have stated a colorable Eighth Amendment claim that corresponds with their Due Process challenge to TDOC's process for addressing prisoners' requests to recalculate their sentences.

To the extent that Plaintiffs are attempting to assert some other Eighth Amendment claim, however, they fail to do so. Plaintiffs may generally argue that their sentences are excessive, and "[s]entences that are 'excessive' violate" the Eighth Amendment's prohibition of cruel and unusual punishments. *United States v. Marshall*, 736 F.3d 492, 504 (6th Cir. 2013) (Lawson, J., concurring) (citing *Atkins v. Virginia*, 536 U.S. 304, 311 (2002)). But this "constitutional guarantee 'forbids only extreme sentences that are "grossly disproportionate" to the crime.'" *Smith v. Morgan*, 371 F. App'x 575, 580–81 (6th Cir. 2010) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991)). "'Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare.'" *Marshall*, 736 F.3d at 504 (quoting *Rummel v. Estelle*, 445 U.S. 263, 272 (1980)). Here, Plaintiffs do not allege that they were sentenced to the death penalty. Plaintiffs also do not allege that "they were juveniles when their crimes were committed," so the Complaint does not implicate the Supreme Court's recent line of cases holding that the Eighth Amendment may provide certain protections at sentencing for juvenile offenders. *See Montgomery v. Louisiana*, 136 S. Ct. 718, 725 (2016). In short, because Plaintiffs have not alleged sufficient facts to state an Eighth Amendment excessive-sentence claim, any such claim will be dismissed with prejudice.

## II. Conclusion

For these reasons, the Court concludes that Plaintiffs have stated two colorable claims against Defendant Candace Whisman in her official capacity: a claim that Tennessee's statutes regarding life sentences and calculating sentence credits are unconstitutionally vague under the Due Process Clause; and a claim that TDOC's process for addressing a prisoner's request to recalculate his sentence violates the Due Process Clause and the Eighth Amendment. These two claims will be referred to the Magistrate Judge for further proceedings consistent with the accompanying Order. All other claims and defendants will be dismissed.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE