# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| RICKY HARRIS, RANDY JONES, RONNIE ARMSTRONG, JACK NUNLEY, RAYMOND TEAGUE, MICHAEL STEWART, JOHN BOATFIELD, STACY RAMSEY, CHARLES MOSLEY, WILLIAM LEDFORD, BRUCE SMILEY, LAMONT JOHNSON, ANDREW MANN, AND EDDIE MURPHY | ) ) ) ) ) ) ) ) ) ) | No. 3:19-cv-00174 <br><br> JUDGE RICHARDSON <br><br> **CLASS ACTION** |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | |
| CANDACE WHISMAN, in her official capacity as Director of Sentence Management Services for the TENNESSEE DEPARTMENT OF CORRECTION | ) ) ) ) ) | |
| Defendant | ) ) | |

## FIRST AMENDED COMPLAINT

### INTRODUCTION

1.    Plaintiffs Ricky Harris, Randy Jones, Ronnie Armstrong, Jack Nunley, Raymond Teague, Michael Stewart, John Boatfield, Stacy Ramsey, Charles Mosley, William Ledford, Bruce Smiley, Lamont Johnson, Andrew Mann, and Eddie Murphy ("Plaintiffs") bring this lawsuit under the Eighth Amendment of the United States Constitution and the Due Process Clause of the Fourteenth Amendment of the United States Constitution, via 42 U.S.C. § 1983 *et seq.,* against Defendant Candace Whisman, in her official capacity as Tennessee Department of Correction ("TDOC") Director of Sentence Management Services ("Defendant").

2. Specifically, Plaintiffs allege that Tennessee's statutes regarding life sentences and calculating sentence credits are unconstitutionally vague under the Due Process Clause of the Fourteenth Amendment of the United States Constitution, and that TDOC's process for addressing a prisoner's request to recalculate his sentence violates the Due Process Clause of the Fourteenth Amendment and the Eighth Amendment of the United States Constitution.

3. Plaintiffs initially filed this action pro se, prior to the Court's appointment of counsel. Pursuant to the Prison Litigation Reform Act, 28 U.S.C. § 1915A, the Court conducted a preliminary review of Plaintiffs' complaint to determine whether it was "frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." (Doc. No. 35 at 1).

4. In its Order of January 9, 2020, this Court held that Plaintiffs' Complaint stated two colorable claims against Defendant Candace Whisman in her official capacity.

5. First, the Court construed Plaintiff's Complaint to include "a claim that Tennessee's statutes regarding life sentences and calculating sentence credits are unconstitutionally vague under the Due Process Clause." (Doc. No. 36 at 1). The Court declined to dismiss this claim.

6. Second, the Court construed Plaintiffs Complaint to include a claim that "TDOC's process for addressing a prisoner's request to recalculate his sentence" violates the U.S. Constitution (Doc. No. 36 at 1). The Court declined to dismiss this claim.

7. More specifically, the Court noted that Plaintiffs' claim regarding requests for sentence recalculation implicated two separate provisions of the Constitution: the Due Process Clause of the Fourteenth Amendment, and the Eighth Amendment prohibition against cruel and unusual punishment.

8.      Plaintiffs, now represented by court-appointed counsel, accordingly file this First Amended Complaint in conformance with the Court's January 9, 2020 Order.

9.      A significant portion of the First Amended Complaint contains the allegations and factual details contained in the original Complaint filed by Plaintiffs on February 22, 2019 and a proposed Amended Complaint filed on April 20, 2020.  Plaintiffs have omitted the allegations and facts previously submitted in their original Complaint that have been disallowed by the Court in its January 9, 2020 Order.   Additionally, Plaintiffs have dropped the Defendants the Court determined were not properly added and have made other structural changes to the original Complaint in order to conform this First Amended Complaint with the Court's January 9, 2020 Order.

## JURISDICTION AND VENUE

10.      This Court has jurisdiction over Plaintiffs' constitutional, civil rights claims pursuant to 42 U.S.C. § 1983 as well as 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a).

11.      Venue is proper in this federal judicial district pursuant to 28 U.S.C. § 1391 because a substantial portion of the events or omissions giving rise to these claims occurred in Davidson County, Tennessee, within this judicial district, and because Defendant, in her official capacity resides in and/or regularly conduct business within this judicial district, and, thus, is subject to personal jurisdiction within this judicial district.

## PARTIES

12.      Defendant Candace Whisman is the Director of Sentence Management Services for the Tennessee Department of Correction, and has broad responsibility for calculating sentences for TDOC prisoners and setting and overseeing those sentence calculation procedures.  Defendant Whisman is sued in her official capacity only.  Plaintiffs understand that Ms. Whisman may

3

recently have retired from that position, and that there will soon be a new Director of Sentence Management Services. To the extent that is the case, Plaintiffs reserve the right to substitute as Defendant whomever takes over as the Director of Sentence Management Services for the Tennessee Department of Correction.

13. Plaintiff Ricky Harris is an adult resident of the State of Tennessee and is currently incarcerated at the Bledsoe County Correctional Complex, (TDOC ID 00121445), serving a life sentence.

14. Plaintiff Randy Jones is an adult resident of the State of Tennessee and is currently incarcerated at the Bledsoe County Correctional Complex, (TDOC ID 00120234), serving a life sentence.

15. Plaintiff Ronnie Armstrong is an adult resident of the State of Tennessee and is currently incarcerated at the Bledsoe County Correctional Complex, (TDOC ID 00506853), serving a 15-year sentence.

16. Plaintiff Jack Nunley is an adult resident of the State of Tennessee and is currently incarcerated at the Bledsoe County Correctional Complex, (TDOC ID 00081182) serving a life sentence.

17. Plaintiff Raymond Teague is an adult resident of the State of Tennessee and is currently incarcerated at the Bledsoe County Correctional Complex, (TDOC ID 00096338) serving a life sentence.

18. Plaintiff Michael Stewart is an adult resident of the State of Tennessee and is currently incarcerated at the Bledsoe County Correctional Complex, (TDOC ID 00268006) serving a life sentence.

19.     Plaintiff John Boatfield is an adult resident of the State of Tennessee and is currently incarcerated at the Bledsoe County Correctional Complex, (TDOC ID 00319189), serving a life sentence.

20.     Plaintiff Stacy Ramsey is an adult resident of the State of Tennessee and is currently incarcerated at the Bledsoe County Correctional Complex, (TDOC ID 00224681), serving a sentence of life without parole.

21.     Plaintiff Charles Mosley is an adult resident of Knoxville, Knox County, Tennessee, currently on parole.

22.     Plaintiff William Ledford is an adult resident of the State of Tennessee and is currently incarcerated at the Bledsoe County Correctional Complex, (TDOC ID 00126283), serving a life sentence.

23.     Plaintiff Bruce Smiley is an adult resident of the State of Tennessee and is currently incarcerated at the Bledsoe County Correctional Complex, (TDOC ID 00378381), serving a 23 year sentence.

24.     Plaintiff Lamont Johnson is an adult resident of the State of Tennessee and is currently incarcerated at the Bledsoe County Correctional Complex, (TDOC ID 00498866) serving a life sentence.

25.     Plaintiff Andrew Mann is an adult resident of State of Tennessee and is currently incarcerated at the Morgan County Correctional Complex, (TDOC ID 00432143), serving a life sentence.

26.     Plaintiff Eddie Murphy is an adult resident of State of Tennessee and is currently incarcerated at the Bledsoe County Correctional Complex, (TDOC ID 00164710), serving a life sentence.

## LEGAL STANDARD

27.     Pursuant to 42 U.S.C. § 1983,  every person "who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

28.     The Eighth Amendment to the United States Constitution states that "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

29.     The Due Process Clause of the Fourteenth Amendment to the United States Constitution states that no State shall "deprive any person of life, liberty, or property, without due process of law."

## CLASS ACTION ALLEGATIONS

30.     Plaintiffs seek to have this matter certified as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

31.     Plaintiffs bring this action as a class action on behalf of all inmates currently in the custody of the Tennessee Department of Correction who are serving life sentences or who are otherwise eligible to request a sentence recalculation.

32.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiffs as this time and can only be ascertained through appropriate discovery, Plaintiffs believe there are hundreds if not

thousands of members in the proposed Class. Records identifying the members of the class are in the possession of the Tennessee Department of Corrections.

33. Plaintiffs' claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law and the United States Constitution that is complained of herein.

34. Plaintiffs will fairly and adequately protect the interests of the members of the Class and have Court appointed counsel competent and experienced in class actions and civil rights litigation.

35. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are: (a) whether Tennessee's statutes regarding life sentences and calculating sentence credits are unconstitutionally vague under the Due Process Clause and (b) whether TDOC's process for recalculating a prisoner's sentence is inadequate in violation of the Eighth Amendment and the Due Process Clause.

36. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable in no small part due to their current incarceration. There will be no difficulty in the management of this action as a class action.

### STATEMENT OF FACTS

### Allegations Contained In Original Complaint

37. Paragraphs 38 through 85 are largely taken verbatim from the original Complaint as they pertain to the claims left intact per the Court's January 9, 2020 Order. Minor revisions and

edits have been made by Plaintiffs' counsel for clarity and to conform with the Court's January 9, 2020 Order.

38.     Pursuant to the Sentencing Act of 1970, T.C.A. § 40-3613 (1970), sentences were calculated based on one cumulative sentence with a parole eligibility date of **30 years.** The Sentencing Act of 1970 was later renumbered as T.C.A.§ 40-28-116(b)(2) and then repealed in 1982.

> [A]ny person who shall have been convicted and sentenced to a term of fifty (50) years or more, may become eligible for parole provided such person shall have been confined or served a term in the penitentiary of not less than thirty (30) full calendar years.

The act was amended in 1974 to increase the 50-year sentence to a sentence of 65 years or more, or to a life sentence.

39.     When Tennessee enacted the Sentencing Act of 1975, T.C.A. § 41-332 (1975) (repealed in 1985) prisoners were entitled to receive credits for good behavior—one month the first year, two months the second year, three months the third year, and four months for every subsequent year. Pursuant to T.C.A. § 41-334 (1975) prisoners received additional credits for so called honor time:

40.     This area of law—calculating prisoners' actual sentence lengths, potential maximum sentences, and potential credits—was recognized at the time as being particularly complex and difficult to understand, even for lawyers and judges:

> Both the trial judge and defense counsel were dealing with what the majority opinion of this court in *Farris v. State,* 535 S.W.2d 608 (Tenn. 1976), classified as a **'highly specialized area' of the law,** and one in which 'few practicing attorneys, otherwise knowledgeable in criminal law, or judges at **any level'** have a complete understanding.

8

*Howell v. State* 569 S.W.2d 428, 435 (Tenn. 1978) (Emphasis added).

41.     T.C.A. § 41-361 (Effective 7-1-81) (later designated as T.C.A. § 41-21-231) converted T.C.A. § 41-332 & § 41-334 credits earned prior to July 1, 1981 to "good conduct sentence credits." The General Assembly envisioned that the new good conduct sentence credit program would apply across-the-board to **all** prisoners and thus did not provide a waiver or opt-in system to prisoners who committed crimes prior to July 1, 1981. *See Jones v. Reynolds,* 1997 WL 367661, at *3 (Tenn. Crim. App. July 2, 1997).

42.     The General Assembly next enacted T.C.A. § 41-360 which created the "prisoner performance sentence credits" (PPSC). Prisoners could earn between one and fifteen days of incentive credits per month depending on the program to which they were assigned. These credits were repealed by T.C.A. § 41-21-236 (1985) which permitted prisoners who committed their offenses prior to December 11, 1985 to opt into the program.

43.     Tennessee next enacted the Sentencing Reform Act of 1982, referred to as the "Judge Sentencing Act" T.C.A. § 39-1-703(2) (1982), which held that Class X felonies were not subject to reduction "for good honor or incentive or other sentence credit of any sort." (Repealed 1989).

44.     That Act amended T.C.A. § 40-35-211(1) (1982), T.C.A.§ 41-21-221 (1982) and T.C.A. § 41-21-230 (1982).

45.     Tennessee later amended T.C.A. § 40-28-30l(i), addressing T.D.O.C. policy 505.1, providing that [i]nmates serving Class X and Judge Sentencing sentences with offense date prior to December 11, 1985, may earn PPSC to reduce only their expiration dates and may not reduce their expiration date in excess of their (release eligibility date). PPSC does not reduce the release eligibility date.

9

46.     In 1983, T.C.A. § 41-21-230(i) (Supp. 1983) was amended to make a person convicted of a Class X felony eligible to receive prisoner performance sentence credits. T.D.O.C. policy 505.01 provided that "[i]nmates sentenced under Class X, Judge Sentencing, or The Sentencing Reform Act of 1989 are not eligible for good conduct sentence credits."

47.     T.C.A. § 40-35-501 (Supp.1987) changed first degree murder from a life sentence with release eligibility after service of thirty years to a Class X felony.

48.     All of these amendments resulted in confusion in sentencing, as noted by the Tennessee Court of Criminal appeals:

> In addition, the judgment shows that Appellant's conviction offense was a class (A) felony, when in fact first degree murder was a Class X felony at the time of the offense in this case. *See T.C.A.* § 39-2-202(c) (Supp. 1987). Finally, we note that the Appellant's conviction for first degree murder should have resulted in a life sentence with release eligibility on that life sentence after service of thirty years pursuant to Tennessee Code Annotated section 40-35-501(f) (Supp.1987), rather than a sentence of sixty years with a release eligibility of sixty percent, or thirty-six years, under Tennessee Code Annotated section 40-35-50l(g) (Supp.1989), which also did not become effective until November 1, 1989. The Appellant's judgment of conviction shows only that he received a life sentence but does not provide any details as to the length of time he would have to serve prior to becoming eligible for parole.

*Taylor v. State,* No. M2012-01549-CCA-R3-PC, 2013 WL 2145776, at *5 (Tenn. Crim. App. May 15, 2013). Tennessee courts have never established any sort of set number of years constituting a life sentence.

49.     Tennessee enacted the Tennessee Criminal Sentencing Reform Act of 1989, T.C.A. § 40-35-501(g) resulting in first degree murder becoming a sentence of sixty years with a release eligibility of sixty percent, or thirty-six years.

50. In 1990 Tennessee amended T.C.A. § 41-21-236(c)(3) & 236(9) related to sentence credits.

51. In 1985 The General Assembly established the "prisoner sentence reduction credit" program. Prisoners who committed felonies prior to December 11, 1985 could not participate in this program unless they signed a written waiver.

52. Tennessee enacted the Criminal Sentencing Reform Act of 1995 that amended T.C.A. § 40-35-501(a)(2), which states:

> Except for inmates who receive sentences of imprisonment for life without possibility of parole only inmates with felony sentences of more than two (2) years or consecutive felony sentences equaling a term greater than (2) years shall be eligible for parole consideration.

53. Subsection (h)(l) holds:

> [R]elease eligibility for each defendant rece1vmg a sentence of imprisonment for life for first degree murder shall occur after service of sixty percent (60%) of sixty years less sentence credits earned and retained by the defendant, but in no event shall a defendant sentenced to imprisonment for life be eligible for parole until the defendant has served a minimum of twenty-five (25) full calendar years of the sentence, notwithstanding the governor's power to reduce prison overcrowding pursuant to title 41, chapter 1, part 5, any sentence reduction credits authorized by § 41-21-236 or any other provision of law relating to sentence credits..."

> (2) There shall be **no release eligibility** for a defendant receiving a sentence of imprisonment for **life without** possibility of parole for first degree murder.

> (i)(l) There shall be **no release eligibility** for a person committing an offense, on or after July 1, 1995, that is enumerated in subdivision (i)(2)...

> (2) The offenses to which subdivision (i)(l) applies

are: (A) murder in the first degree...

54.     Since the enactment of this statute the same wording has been incorporated in all the prior amendments to 2019.

55.     Subsection (h)(2) states that "[t]here shall be no release eligibility for a defendant receiving a sentence of imprisonment for life without the possibility of parole for first degree murder." Subsection (i)(l) states the exact same language for first degree murder except adding an additional sentence stating, "[t]he person shall serve one hundred percent (100%) of the sentence imposed ...." However, this sentence can be reduced by fifteen percent (15%) with sentence credits. Therefore, a sentence of life as well as life without parole are the exact same sentence.

56.     Since the Sentencing Act of 1995, the Tennessee Supreme court has repeatedly tried to clarify the immense confusion caused by the sentencing statutes in Tennessee. *See, e.g. Brown v. Jordan,* 563 S.W.3d 196, 199-201 (Tenn. 2018). The statute clearly states that both life sentences are not eligible for release. But the Court has held that a life sentence is for a term of sixty (60) years.

57.     Prisoners with life sentences can therefore expire their sentence in fifty-one years, with sentence credits, or sixty (60) years without credits. While inmates with a life sentence without parole can expire their sentence in sixty (60) years. The legislature's intent is clear when compared to subsection (j) where the legislature states that sentences under T.C.A. § 39-17-1324(a) and (b) "cannot be released **until** service of one hundred percent of the sentence imposed." (Emphasis added).

58.     Tennessee courts have frequently addressed the issue that life sentences have no parole consideration. For example:

>       Regarding the state's contention that this issue is a matter of
>       release eligibility determination, we note that a defendant

whose life sentence is imposed pursuant to section 40-35-50l(h)(l) attains release eligibility, that is, eligibility for parole after a date determined by the Department of Correction. T.C.A. § 40-35-501(q) (Supp.2009) (amended 2010, 2012, 2013, 2014) (now codified at subsection (r)). In contrast, "[t]here shall be no release eligibility for a person committing an offense, on or after July 1, 1995, that is enumerated in subdivision (i)(2)." Id. 40-35-50l(i)(l). **In the latter situation, subsection (i)(1) provides the means for determining the sentence expiration date, and release is not contingent upon a grant of parole.**

*State v. Self,* Ne. E2014-02466-CCA-R3-CD, 2016 WL 4542412, at *62 (Tenn. Ct. Crim. App., Aug. 29, 2016) (emphasis added); *See also Taylor v. State,* M2012-01549-CCA-R3-PC, 2013 WL 2145776, at *5 (Tenn. Ct. Crim. App., May 15, 2013); *Penly v. State,* E2004-00129-CCA-R3-PC, 2004 WL 2439287, at *2 (Tenn. Crim. App., Nov. 1, 2004; *Davis v. Tennessee Department of Correction, et al.,* No. M2017- 0231-CCA-R3-CV, 2018 WL 5618116, at *4-*6 (Tenn. Ct. App. Oct. 30, 2018.).

59.     It is obvious that a life sentence is in essence life without parole. The Tennessee legislature plainly intended that a life sentence and life sentence without parole to be identical.

60.     To further complicate the sentencing scheme, T.C.A. § 40-35-501(a)(2) states: "Except for inmates who receive sentences of imprisonment for life without possibility of parole only inmates with felony sentences of more than two (2) years or consecutive felony sentences equaling a term greater than (2) years shall be eligible for parole consideration." This statute is in direct conflict with subsection (i)(l).

61.     As enumerated above, subsection (h)(l) states: "a defendant sentenced to imprisonment for life be eligible for parole until the defendant has served a minimum of twenty-five (25) full calendar years of the sentence. . ."

62.     The Tennessee Attorney General held that "pursuant to (h)(l), the determinate number is currently sixty years. Since the 1995 amendment provides that there shall be no release eligibility for a person sentence to life imprisonment, the two

provisions clearly conflict.", *Tenn. Atty. Gen. Op.* No. 97-098 1997 WL 449672 at *1 (Tenn. A.G., July 1, 1997). However, in *Brown*, *supra*, the Supreme Court disagreed and held there was not a conflict. The court held that (h)(l) was for pre-1995 sentences. This analogy is not correct. Under the Sentencing Reform Act of 1989 to 1995, life sentences where calculated at thirty-six (36) years. The Sentencing Reform Act of 1982 to November 1, 1989 calculated life sentences at thirty (30) years. Subsection (h)(l) has to apply to post-1995 life sentences.

63.     In a 1997 opinion, the Tennessee Attorney General further stated:

> The House Judiciary Committee specifically stated that the intent of the act, so far as a life sentence for first degree murder in concerned, was to raise the already-existing floor of time to be served as provided in 40-35-S0l(h)(l), from 60% to 100% of the sixty years.

Tenn. Op. Atty. Gen No. 97-098, (Tenn. A.G.) 1997 WL 449672 at *2.

64.     The Attorney General's analogy may have been true if the legislature had amended (h)(l), however, the legislature not only amended (2)(A) murder in the first degree but added several other crimes. When such amendments are made it makes the amendment to the statue wholly and utterly void. Therefore, T.C.A § 40-35-501 (i)(2)(A) was rendered void in 1995 and violated the U.S. Constitution.

65.     Due to the controversy and confusion between the Tennessee Courts and the Sixth Circuit concerning (h)(l) and (i)(2)(A) from 1995 through 2019, the Tennessee legislature attempted to "clarify" the statute. Specifically, the legislature attempted to change the meaning of the statute for offenders between November 1, 1989 and July 1, 1995.

66.     A prime example of the courts not understanding the sentencing statutes is in Plaintiff Murphey's case. Within his plea agreement and the hearing transcripts it is clearly

stated that the Plaintiff was pleading to a life sentence with the possibility of parole after fifty-one (51) years.

67.     The Tennessee courts, the Tennessee Attorney General, Legislature, and the Tennessee Department of Correction still do not fully understand the statues and sentence calculations. The statues have become so arbitrary that defendants have been denied the right to understand the charges against them, denied due process, denied the opportunity to plea due to inaccurate information in violation of the U.S. Constitution. *See Penley v. State,* 2004 WL 2439287, No. E2004-00129-CCA-R3-PC (Tenn. Crim . App., November 1, 2004).

68.     Tennessee Code Annotated § 39-13-202(c) provides for three possible sentences for first degree murder conviction: death, life imprisonment without the possibility of parole, or life with parole. The state must file a notice of intent to seek the death penalty or life without the possibility of parole. Tennessee Code Annotated § 39-13-208(c) provides that when the State does not seek the death penalty or life without the possibility of parole and the defendant is subsequently convicted of first-degree murder, "the defendant shall be sentenced to imprisonment for life with parole by the court." This was the intent of the statute. The life sentence pursuant to § 40-35-501(i)(2)(a) is life without parole. Since the State has not filed the notice of intent to seek life without parole, all life sentences have thereby become unconstitutional.

### The Sentence Management Services Procedures Manual

69.     The following is the history of the Tennessee sentencing statues from Sentence Management Service Procedures Manual.

70.     Prior to July 31, 1978 all consecutive sentences pursuant to *Howell v. State*, 569 S.W.2d  428 (Tenn. 1978) were to be added together for a total sentence.

71. In 1982, the law was repealed and all sentences were now determinate in nature. However, the Manual states: "the sentence type will be either Indeterminate or Determinate, or Class X after 9-1-79."

72. The manual states: :If the dates of offense are from day one to 9-1-79, (Class X effective date), the sentence type will be Determinate." This included murder one and two.

73. "If the dates of offense are from 9-1-79 to 7-1-82, the sentence will be Class X, with a mandatory 40%."

74. Prior to December 11, 1985, the sentences were Class (X) and Judge Sentences (J).

75. "Effective 3-30-86, all J and X sentences imposed at 40% prior to that date were reduced to 35%. Similarly, all J and X sentences imposed at 50% were reduced to 40%."

76. "If the dates of offense are from 7-1-82 to 11-1-89, the Sentence will be Judge Sentencing with exception of the designated Class X offenses. All Class X and Judge Sentenced offenses will be computed at 30% for RED unless otherwise specified on the judgment order." This is in contradiction to the above listed percentage.

77. The Manual states: "If the dates of offense are from 11-1-89 to present the sentence will be Reform Act of 1989 - 1194. A Reform Act - 1194 Sentence may be applied for an offense committed between 7-1-82 and 11-1-89 if it would be more beneficial to an offender." TDOC has never applied this rule to pre-1989 convictions.

78. "A life sentence conviction with a date of offense after 5-6-73 to 11-1-89 is computed at 30 years TTS (can reduce with credits) and no expiration." A life sentence was calculated at 30 years' time to serve. TDOC has never reflected the expiration of thirty years on the TOMIS sentence summary.

79.    "A life sentence conviction with a date of offense on or about November **1**, 1989, is computed at 36 years TTS (can reduce with credits earned) and no expiration if imposed under 1194." Once again, TDOC has failed to calculate the life sentence at 36 years time to serve. Tennessee law is clear that from 1982 - 1995 life sentences are determinate as well as sentence credits to be taken from the RED and expiration date. TDOC awards sentence credits to the RED dates until a prisoner meets the Board of Parole then the sentence credits are no longer applied to the sentence. The prisoner is denied benefit of the earned credit from that point forward in violation of state law. TDOC refuses to calculate expiration dates for any life sentences from 1975 - 1995. "Offenses committed on or after 7-1-93, punishment for First Degree Murder is: Life (36 year RED can't be reduced below 25 calendar years by credits earned before eligible for parole)." This is in conflict with the 1993 amendment which enacted the 25-year minimum time to serve. *See also Vaughn v. State*, 202 S.W.3d 106, 117 (Tenn. 2006) ("There is no dispute over the fact that counsel in both cases were unaware of the trial court's erroneous instruction regarding release eligibility and remained unaware of the error throughout the appellate process. However, the Court of Criminal Appeals held that counsel should not be faulted for failing to object to the erroneous instruction because conflicting statutory provisions created uncertainty in the law at the time the case was tried.") *abrogated on other grounds by Brown v. Jordan*, 563 S.W.3d 196 (Tenn. 2018)

80.    "Effective 7-1-95, offenders convicted of violent offenses (committed on or after 7-1-95) and receive Life Sentences (not life w/o Parole) must serve 60 years before parole eligibility. (See manual p. 17) The sentence can reduce to no less than 51 years with credit earned." This is not true because T.C.A. § 40-35-501(i)(2) states: "There shall be no release eligibility for a person committing an offense, on or after July 1, 1995, that is

enumerated in subdivision (i)(2). The person shall serve one hundred percent (100%) of the sentence imposed by the court less sentence credits earned and retained." Tennessee courts have ruled that these sentences expire as opposed to parole. In reading TDOC's Sentence Management Information Services' Procedure Manual, it is obvious that Sentence Management Information Services is in a state of crisis. Presently, Sentence Management Information Services is going back and recalculating sex offenders sentences because they have awarded sentence credits not authorized by statute. Several sex offenders have lost as much as five and one-half years of credits which accumulated over the past ten plus years. It is unknown how many have been released without serving their full sentence requirement by law to return to society.

81.    When an inmate has a problem with his sentence calculation he must submit an "Inmate Request Form" to the counselor. If the counselor cannot resolve the issue it is outdated which in turn causes the inmate to have to write the court to request the needed form. Most of the state court clerks never respond to inmate requests. This in turn denies the inmate meaningful access to the courts.

82.    The Manual is riddled with ambiguities, inaccurate, and arbitrary procedures which fails to adhere to the statutes and relevant case law.

83.    Defendant Whisman has failed to properly calculate life sentence credits to reduce the expiration dates of such sentences. Furthermore, she has failed to list the expiration dates on the TOMIS Sentence Summary sheet.

84.    Plaintiff Jones' TOMIS sentence summary listed his life sentence as life without parole for over twenty (20) years before being corrected.

85.    Plaintiff Bruce Smiley has experienced Defendant's miscalculation of his 2004

18

sentences. He received sentence credits, but in October 2018 Plaintiff Smiley received his TOMIS Offender Sentence Letter. This sentence letter reflected that TDOC, without prior notice or explanation, had taken 64 pretrial behavioral credits, 586 TDOC behavioral credits, and 544 TDOC program credits, cumulatively from his fifteen (15) and eight (8) year sentences leaving only 244 pretrial jail credits toward the 15-year sentence. This action removed Plaintiff from the eight (8) year sentence in which he had been certified by TDOC as being parole eligible. Plaintiff was placed back into the fifteen (15) year sentence that had expired. Inmate Armstrong is another example of sentence miscalculation. TDOC took 792 days from his sentence without explanation.

**Allegations and Facts From Previously Submitted Amended Complaint**

86.     On April 20, 2020, Plaintiffs submitted an Amended Complaint. Since the Court had yet to appoint counsel, the Court denied Plaintiffs' request to amend the Complaint.

87.     Paragraphs 88 through 224 are largely taken verbatim from the previously submitted proposed Amended Complaint. Minor revisions and edits have been made by Plaintiffs' counsel for clarity and to conform with the Court's January 9, 2020 Order.

88.     Tennessee's statutes, regarding life sentences, are unconstitutionally vague and arbitrary that defendants have been denied the right to understand their sentencing and eligibility for parole, denied Due Process, and denied the opportunity to make informed plea decisions based upon accurate information.

89.     Tennessee's sentencing statutes regarding the calculation of life sentences are unconstitutionally vague.

90.     Tennessee's procedure for challenging sentence credit and calculations violate the Eighth and Fourteenth Amendments.

91.     Tennessee's Code Annotated § 40-35-501 is void for vagueness in the context of Tennessee's sentencing scheme as it inter-relates with other sentencing statutes for life sentence calculations and credits.

92.     The Fifth Amendment provides in part that no person shall be deprived of life, liberty or property without due process of law. This constitutional protection is applicable to the states through the Fourteenth Amendment.

**Amendments to First Degree Murders Statues Between 1976 through 1989**

93.     There are four Tennessee statutes controlling first degree murder sentences. Each are discussed below.

94.     T.C.A. § 49-35-101 entitled "Short Title addresses the sentence ranges and release eligibility dates states:

> "Note: First Degree Murder excluded classification for sentencing purposes and sentenced solely according to First Degree Murder Statute."

95.     The local courts, as early as 1976, began experiencing problems due to the vagueness a convoluted sentencing schemes of the sentencing statutes. *Howell* held:

> Both the trial judge and defense counsel were dealing with what the majority opinion of this court in *Farris v. State,* 535 S.W.2d 608 (1976), classified as a "highly specialized area of the law, and one in which few practicing attorneys, otherwise knowledgeable in criminal law or judges at any level have a complete understanding."

*Howell v. State* 569 S.W.2d 428, 435 (Tenn. 1978) (quoting *Farris v. State*, 535 S.W.2d 608 (1976).

96.     It is evident that with judges and attorneys unable to understand the statutes, it is impossible for a defendant in a murder trial to understand the sentencing scheme enough to make an informed decision as whether to enter a plea or go to trial.

97.     By 1979 the entire correctional system was in a state of crisis. At the request of

Governor Lamar Alexander, the legislature enacted a sweeping new law to increase the punishment for certain felonies. The new statute was called the Class X Felonies Act of 1979. Plaintiff Ricky Harris was convicted and sentenced under this act. Plaintiffs Ricky Harris, Raymond Teague, Charles Mosley, and William Ledford were convicted and sentenced under this act.

98.     The new statute imposed mandatory minimum sentences for crimes such as armed robbery, rape, murder, and certain drug offenses. Plea bargains were restricted, bail following conviction was eliminated and the early release of Class X offenders was prohibited. The statute required that prisoners convicted of a Class X felony would not become eligible for parole until they served forty percent of the sentence with no reduction for good conduct credits of any sort. Furloughs and other minimum-security programs were abolished. The Class X statute soon contributed greatly to prison overcrowding.

99.     In 1982, the General Assembly enacted the Sentence Reform Act of 1982 which required the courts to impose determinate sentences only. Section 40-35-211 states:

> In fixing a sentence for a felony or misdemeanor, the court
> shall impose a specific sentence length for each offense.

 The legislature's definition for a determinate sentence is "a sentence for a fixed length of time rather than for an unspecified duration. Also termed definite sentence; fixed sentence; flat sentence; straight sentence."

100.     The General Assembly added Section 40-35-109 (d)(l) which reads:  "For the sole and exclusive purpose of calculating the sentence ranges of offenses for which life imprisonment is possible punishment, a life sentence shall be presumed to be thirty (30) years. Provided, however, the provisions of this subsection shall not be construed to prohibit a sentence of sixty (60) years or more or life imprisonment."

101.    Under the Sentencing Reform Act of 1982, the indeterminate sentence law was repealed, and all sentences were now determinate in nature. The sentencing authority was transferred from the jury to the judge, thereby allowing consideration of the defendant's prior record before a sentence was imposed. Parole was fixed as a percentage of the sentence.

102.    By 1983, the Department of Correction was under the effective control of a Special Master appointed by the federal court. In 1985, the legislature passed the Tennessee Comprehensive Improvement Act of 1985.

103.    From 1982 until 1985, Tennessee prisoners were under the Class X Felonies Act of 1979, Tennessee Sentence Reform Act of 1982, and Judge Sentencing Act of 1982. All of these acts controlled sentencing.

104.    Problems continued arising shortly after Tennessee Criminal Sentencing Reform Act of 1982 was enacted. Instead of correcting the conflicts the State courts held that no irreconcilable conflict existed between Tennessee Criminal Sentencing Reform Act of 1982 [T.C.A. § 40-35-501 et seq.] and the Class X Felonies Act of 1979 [T.C.A. § 39-1-701 et seq.], as criminal sentencing Reform Act annuls and supersedes those provisions of Class X Felony Statues enacted in 1979 which cannot be reconciled. T.C.A. § 40-35-212 (b), § 40-35-504. *State v. Dowell,* 705 S.W.2d 138, 142-143 (Tenn. Ct. Crim. App.1985).

105.    The conflicts between these statutes continued from 1982 through 1989 because the State and Candice Whisman continued applying the Class X Felonies Act of 1979 in conjunction with the other three Acts. It is obvious that the 1982 Act did not annul the Class X Felonies Act.

106.    In 1982, Tennessee Code Annotated Section 40-35-501 Release eligibility status calculation states:

"(a) A felony sentence to the department of correction or a

local jail or local or regional workhouse shall be served according to this chapter. Until the defendant is granted release classification status, the sentence shall be served in continuous confinement…"

107. T.C.A. § 40-35-501 further states:

"(f) Where the release eligibility date for a single offense under subsections (b), (c), (d), or (e) of this section is greater than thirty

(30) years or the sentence is life, release eligibility on such sentences shall occur after service of thirty (30) years."

108. Under the Sentence Reform Act of 1982 the legislature added Section 40-35-109 - Sentencing ranges:

(d)(l) For the sole and exclusive purpose of calculating the sentence ranges of offenses for which life imprisonment is possible punishment, a life sentence shall be presumed to be thirty (30) years. Provided, however, the provisions of this subsection shall not be construed to prohibit a sentence of sixty (60) years or more or life imprisonment.

109. The Tennessee Comprehensive Improvement Act of 1985 was created to draft a new criminal code and revise the sentencing statutes. After four years of study, the commission presented several alternatives which had varying degrees of impact, both legal and fiscal. The Act was supposed to have repealed the Class X Felonies Act, however, all life sentences remained as Class X Felonies until the enactment of the 1989 Act which changed post-1989 life sentences to Class A.

110. In 1985, the General Assembly enacted legislation to restore sentencing credits which would come off both the parole eligibility date and expiration date. "These amendments permitted Class X felons to earn prisoner sentence reduction credits to reduce their sentence expiration dates and their release eligibility dates." *Taylor v.*

23

*Campbell,* et al., No. M2001- 00479-COA-R3-CV, 2003 WL 22248231 (Tenn. Ct. App. Oct. 15, 2003). The Tennessee Department of Correction applies expiration dates to all Class X sentences except life sentences. Defendant distinguishes between other Class X sentences and Class X life sentences thereby violating the Equal Protection and Due Process rights as guaranteed by the U.S. Constitution.

111.     Section 41-21-236 (1986):

> "On or after March 1, 1986, PSRC is awarded for satisfactory program participation and good institutional behavior up to a maximum of 16 days per month: 8 days for programs and 8 days for behavior. Theses credits reduce both the [release eligibility date] and [expiration] dates" (Sentence Management Manual, page 14, paragraph (e)).

112.     From 1985 through October 31, 1989, prisoners were still being sentenced under the above three sentencing acts plus the Tennessee Comprehensive Improvement Act of 1985.

113.     Defendant Whisman, as well as the sentencing statutes, specify that a life sentence has an expiration date and that date is thirty (30) years.

114.     Defendant Whisman wrote the Sentence Management Services Procedures Manual For Records Office dated September 2012 which states:

A life sentence conviction with a date of offense after 5-6-73 to 11-1-89 is computed at 30 years TTS (time to serve) and no expiration. (page 17, paragraph 2).

115.     Life sentences were classified as Class X (X) and Judge Sentencing (J). Defendant Whisman wrote:

> If the dates of offense are from 7-1-82 to 11-1-89, the sentence will be Judge Sentencing, with the exception of the designated Class X offense. All Class X and Judge Sentenced offenses will be computed at 30% for RED unless otherwise specified on the judgment order. (page 16, paragraph 7).

24

116. The Tennessee Supreme Court held:

> The same process or reasoning leads to the conclusion that consecutive life sentences entail 60 full years of actual confinement.

*Howell v. State,* 569 S.W.2d 428 (Tenn. 1978).

117. Throughout the years, Defendant Whisman has submitted affidavits in calculating prisoners' sentences. She always calculates a life sentence when another sentence is consecutive to it as 30 years. For example, a prisoner has life plus 3 years running consecutive, then Defendant Whisman calculates the life sentence at 30 years then starts the 3 year sentence at the 30-year mark. An excellent example of how Defendant Whisman calculates consecutive sentences is in the case of Alan Lawhorne.

118. Inmate Alan Lawhorne was sentenced on March 1989 to life with parole on a conviction of Second Degree Murder in Count 1. He also received a life sentence for Second Degree Murder in Count 2 which runs consecutive to Count 1.

119. On November 4, 2008, Defendant Whisman calculated Lawhorne's sentences and started his Count 2 life sentence to begin on this date thereby giving him a release eligibility date in 2033.

120. Defendant Whisman calculated Lawhorn's sentence at 30 years minus 3,423 behavior and program credits which started Lawhorn serving his second life sentence in 2008.

121. In the case of *Mandela v. Tennessee Department of Correction,* Defendant Whisman submitted an affidavit where she calculated Mandela's Count 2 life sentence as 30 years minus 2004 PSRC credits. She then started his count 4 sentence of 4 years.

122. The Supreme Court has held:

> When interpreting a criminal statute, we do not play the part of a mind reader. In

our seminal rule-of-lenity decision, Chief Justice Marshall rejected the impulse to speculate regarding a dubious congressional intent '[p]robablility is not a guide which a court, in construing a penal statute, can safely take.' *United States v. Wiltberger ,* 5 Wheat. 76, 105 L.Ed. 37 (1820). And Justice Frankfurter, writing for the Court in another case, said the following: 'when Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity'." *Bell v. United States,* 349 U.S. 81, 83, 75 S.Ct. 620, 99 L.Ed. 905 (1955).

*United States v. Santos,* 553 U.S. 507, 515 (2008).

123.     Applying the rule-of-lenity to the four contradicting and vague statues of Tennessee from 1979-1989, lenity requires that all life sentences during this time period are to have an expiration date of thirty (30) years total time to serve.  Such contradicting and vague statutes violate the fundamental tenet of the Due Process Clause.

124.     When a prisoner has one life sentence, Defendant Whisman claims that the sentence continues for natural life. She is using a double standard in calculating consecutive sentences versus one sentence. In the case of Mandela and Wooden, Defendant Whisman calculated each of their life sentences at thirty years when other sentences were running consecutive to their life sentences.

125.     Therefore, Defendant Whisman is treating one class, prisoners with consecutive sentences different from another, prisoners with one life sentence.

126.     Defendant Whisman defines a determinate sentence as:

"an old-law sentence for an offense committed prior to 9-1-79, for an offense listed in T.C.A. § 40-20-107 and 108, and is calculated with a maximum term of imprisonment. Parole eligibility is one half the sentence undiminished by Good Conduct Credits" (Sentence Management Services Procedures Manual, at 4).

127.     Defendant Whisman is applying determinate sentences to sentences prior to 1979 at their maximum term. Her interpretation is incorrect pursuant to the statutory definition and Defendant is applying the pre-1979 instead post-1982 sentences.

128.     By reviewing Defendant Whisman's sentencing manual coupled with the ambiguity of the sentencing statutes it is clear that she does not understand the proper sentencing scheme and thereby Plaintiffs Due Process as guaranteed by the U.S. Constitution are violated.

129.     Irreconcilable conflicts exist between the Class X Felonies Act of 1979, Tennessee Sentencing Reform Act of 1982, Judge Sentencing Act of 1982, and Tennessee Comprehensive Improvement Act of 1985 because the acts are interlaced in such a way that neither act annuls the preceding act.

130.     The Tennessee Comprehensive Improvement Act of 1985 was supposed to have repealed the Class X Felonies Act, however, all life sentences remained as Class X Felonies until the enactment of the 1989 Act which changed post-1989 life sentences to Class A.

131.     From 1986 - October 31, 1989, sentences were controlled by these same three acts plus the Tennessee Comprehensive Improvement Act of 1985. After four years of study, the legislature enacted the Tennessee Sentencing Reform Act of 1989 which had varying degrees of impact, both legal and fiscal. This new law became effective on November 1, 1989 and is currently in effect.

**The Sentence Reform Act of 1989**

132.     In the Sentence Reform Act of 1989 the legislature changed the conviction class of first degree murder from Class X to Class 1. All pre-1989 convictions of first degree murder remains as conviction Class X. Class X status was never repealed from 1979 until the enactment of the Sentence Reform Act of 1989.

133.     Also in 1989, the legislature enacted T.C.A. § 39-13-202, "first degree murder,"

statute which defined first degree murder, and enumerates life without the possibility of parole, or imprisonment for life.

134. The legislature further enacted § 40-35-101, "short title." This statute lists the sentence ranges and release eligibility for all felony classifications except for first degree murder. The statute reads:

> NOTE: First Degree Murder <u>excluded</u> from classification of sentencing process and sentencing solely according to first degree murder statute.

The problem begins here because § 39-13-202 (above) does not address the sentencing for first degree murder.

135. In 1989 the General Assembly enacted T.C.A. § 39-13-204, First Degree Murder Sentencing Factors, which states in part:

> "(a) Upon a trial for first degree murder, should the jury find the defendant guilty of first degree murder, it shall fix punishment in a separate sentencing hearing to determine whether the defendant shall be sentenced to death, to imprisonment for life without the possibility of parole, or to imprisonment for life."

> "(e)(2) . . . The jury shall be instructed that a defendant who receives a sentence of imprisonment for life shall not be eligible for parole consideration until the defendant has served at least twenty-five (25) full calendar years of the sentence. The jury shall also be instructed that a defendant who receives a sentence of imprisonment for life without possibility of parole shall never be eligible for **release on parole.**"

136. Tennessee's criminal sentencing scheme concerning these four concurrent statutes is so complicated that even the Tennessee courts have experienced difficulty in understanding the different classes, ranges, and triers involved in making sentencing determination. The Supreme Court of Tennessee has noted that "[d]rawing the distinction among these various categories has proved vexatious for our courts..." *Cantrell v. Easterling,*

346 S.W.3d 445, 453 (Tenn.2011).

137.     In 1993, the Tennessee legislature amended the 1989 Act for "truth in sentencing."

138.     Again in 1995, the legislature enacted amendments that changed certain sentencing statutes which included first degree murder.

139.     From 1989 to 2016 Tennessee Code Annotated § 40-35-501 has given birth to 28 amendments. One such amendment was enacted on July 1, 1995, after only 20 minutes of discussion, by the Senate Judiciary Committee. This enactment was § 40-35-501(i)(l) regarding the calculation of release eligibility of a series of offenses enumerated in subdivision (2) of the statute, including "murder in the first degree" which states:

> There shall be no release eligibility for a person committing an offense, on or after July 1, 1995 that is enumerated in subdivision (i)(2). The person shall serve one hundred percent (100%) of the sentence **imposed** by the court less sentence credits earned and retained. However, no sentence reduction credits authorized by § 41-21-236 or any other provision of law shall operate to reduce the sentence **imposed** by the court by more than fifteen percent (15%). (Emphasis added)
>
> (2)     The offenses to which subdivision (i)(l) applies are:
>
> (A)     Murder in the first degree...

140.     The statute states the person shall serve one hundred percent (100%) of the sentence imposed by the court. The sentence imposed by the court was imposed under § 39-13-204 which states in part:

> (e)(2) . . . The jury shall be instructed that a defendant who receives a sentence of imprisonment for life shall not be eligible for parole consideration until the defendant has served at least twenty-five (25) full calendar years of the sentence. The jury shall also be instructed that a defendant who receives a sentence of imprisonnᴍent for life without possibility of parole shall never

be eligible for release on parole.

141.    Tennessee Code Annotated § 40-35-501(i)(l) is unclear as to whether it imposes a sentence greater than 25 years imposed under § 39-13-204, nor was TC.A. § 39-13-204 amended to coincide with this new amendment. As early as 1998 the Court, in *State v. Golden* No. 02C01-9709-CR-00362, 1998 WL 518071 at *7-*8 (Tenn. Ct. Crim. App. 1998), opined:

> Unfortunately Tennessee Code Annotated § 39-13-204 was not amended to reflect this change.
>
> It **immediately becomes apparent that the legislature in 1995 overlooked amending Tennessee Code Annotated § 39-13-204 to coincide with the 1995 amendment to Tennessee Code Annotated § 40-35-501.** The statutes presently are in conflict. . . ." (Emphasis added).

142.    As evident by the courts, the statutes controlling first degree murder and sentencing have had so many amendments, or lack of constitutional amendments, since the 1989 enactment that they have become unconstitutionally vague and it would be impossible for a defendant to understand enough to make an intelligent decision to plea or go to trial.

143.    Article II, Section 17 of the Tennessee Constitution provides in relevant part that **"**[a]ll acts which repeal, revive or amend former laws, shall recite in their caption, or otherwise, the title or substance of the law repealed revived or amended." Statutes that fail to meet the requirements of Article II, Section 17 will be struck down as invalid.

144.    Article II, Section 3 of the Tennessee Constitution vests the state's legislative power solely in the General Assembly. In general, legislative power is the authority to make, order and repeal law. Specifically, the General Assembly may not delegate to an executive branch agency the exercise of the legislature's discretion as to what the law shall be, because this is a purely legislative function.

30

145. In 2018, due to the statutes' vagueness, the Sixth Circuit Court of Appeals requested a certified question of law from the Tennessee Supreme Court to define a life sentence:

> Will a defendant convicted of first-degree murder committed on or after July 1, 1995, and sentenced to life in prison under T.C.A. 39-13- 202 (c)(3) become eligible for release and, if so, after how many years? *(Brown v. Jordan,* 563 S.W.3d 196)(Tenn. 2018)

146. As part of its answer, the Tennessee Supreme Court emphasized:

> Words used in a statue must be given their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose" (*Id*. at 198) (internal quotations omitted).

147. Then, in 2019, the General Assembly attempted to **"clarify"** the life sentence statutes from 1989 to present.

148. A bill presented by the General Assembly attempting to clarify the thirty (30) year old amendments leaves no doubt that the statues are vague, debatable and in conflict with other statutes. A version of that bill (HB 394/SB 453) was ultimately approved effective July 15, 2020 as Public Chapter 765,

149. Even more, this clarification law is unconstitutional due to the ex post facto clause.

150. T.C.A. § 39-13-204 and§ 40-35-50l(i)(l) must read that the person shall serve 100% of the sentence imposed by the court or twenty-five years (25) with a maximum allowable reduction of 15% for sentencing credits earned. If the statute is not interpreted in this manner Tenn. Code Annotated § 39-13-204 and § 40-35-501(i)(l) are in violation of the Plaintiffs' due process rights in that they must be provided with clear notice of the sentences

31

to which they are subject.

151.    Defendant Whisman calculates all felony offenders' time with the expiration dates and full expiration dates except first degree murder offenders. This exclusion applies to pre- as well as post-1989 life sentences. Defendant Whisman is violating state law in denying the calculating expiration dates of life sentences, thereby showing deliberate indifference and proving disparity in the class of offenders with first degree murder convictions.

152.    Defendant Whisman is further showing deliberate indifference in calculating expiration dates on life sentences. Inmate Jonathon Stephenson was convicted of first-degree murder and conspiracy to commit first degree murder on December 3, 1989. Defendant Whisman calculated both life sentences at 60 years and gave him an expiration date and full expiration date.

153.    The rule of lenity, demands that ambiguities in criminal statutes be resolved in favor of the Plaintiffs.

154.    There are four Tennessee statutes controlling first degree murder sentences. Tennessee's criminal sentencing scheme concerning these four concurrent acts is so complicated that even the Tennessee courts have experienced difficulty in understanding the different classes, ranges, and triers involved in making sentencing determination.

**Examples drawn from specific Plaintiffs**

**Plaintiff Jack Nunley:**

155.    Plaintiff Jack Nunley was sentenced under the 1975 Sentencing Act. Plaintiff Nunley was convicted on a Grundy County, Tennessee conviction of aggravated rape and

kidnapping in which he received two consecutive life sentences on August 1, 1979.

156. Pursuant to T.C.A. § 40-36-13 Plaintiff's sentence should have been calculated on one cumulative sentence with a parole eligibility date of 30 years. At this time Plaintiff was not awarded sentence reduction credits.

157. Plaintiff should have begun earning sentence reduction credits in 1986 when the PSRC law was passed. However, Defendant Whisman failed to have the Plaintiff sign waiver form CR2969 until January 14, 2019. Due to Whisman's failure to properly calculate his sentence and to properly award his sentence credits, he is still serving his last consecutive life sentence.

158. Plaintiff has made several requests to Sentence Management Information Services to have his sentence properly recalculated, but Defendant has refused to recalculate his sentence.

159. The aforementioned facts the rule of lenity demands that ambiguities in criminal statutes be resolved in favor of the Plaintiffs.

**Plaintiff Ricky Harris:**

160. Plaintiff Ricky Harris was sentenced on a Carter County, Tennessee conviction for first degree murder and received a sentence of life with parole on May 4, 1988. Plaintiff Harris was sentenced under the Class X Felonies Act of 1979, Sentencing Reform Act of 1982, and Tennessee Comprehensive Improvement Act of 1985. All four of these Acts remained in full effect until their repeal in 1989.

161. Pursuant to these Acts, Plaintiff Harris should have expired his sentence in 2018 without the benefit of sentence reduction credits. However, Defendant Whisman refuses to calculate Plaintiffs sentence to include an expiration date.

33

162.     Plaintiff has sent several requests to Sentence Management Information Services to have his sentence recalculated, but Defendant has refused to recalculate his sentence.

163.     Further, Plaintiff met the Board of Parole in June 2008. After being denied parole, Defendant Whisman stopped awarding Plaintiff Harris his sentence reduction credits of 16 days per month. Plaintiff has earned approximately 2304 days' credit, but these days have not been applied to his sentence expiration date as occurs for inmates without a life sentence. Defendant Whisman is deliberately denying Plaintiff his rights under the Due Process Clause in refusing to award Plaintiff his sentence reduction credits. Defendant is further violating Plaintiffs equal protection rights in refusing to award his sentence reduction credits solely because he has a life sentence.

**Plaintiff Raymond Teague:**

164.     Plaintiff Raymond Teague was sentenced on a Hamilton County, Tennessee conviction for first degree murder and received a sentence of life with parole on April 4, 1980. Plaintiff Teague was sentenced under the Class X Felonies Act of 1979, Sentencing Reform Act of 1982. Both of these acts remained in full effect until their repeal in 1989.

165.     T.C.A. § 41-361 (later designated as T.C.A. § 41-21-231) converted credits earned pursuant to T.C.A. § 41-332 and §41-334 prior to July 1, 1981 to "good conduct sentence credits." The General Assembly envisioned that the new good conduct sentence credit program would apply across-the-board to **all** prisoners and thus did not provide a waiver or opt-in system to prisoners who committed crimes prior to July 1, 1981. *Jones v. Reynolds,* 1997 WL 36761 (Tenn. Ct. Crim. App. July 2, 1997) (Emphases added). No person should be deprived of life, liberty, or limb without due process and equal protection of law.

166.   The General Assembly later amended T.C.A. §40-28-301(i) (Supp.1983), addressing T.D.O.C. policy 505.1, providing that "[i]nmates serving Class X and Judge Sentencing sentences with offense date prior to December 11, 1985, may earn PPSC to reduce only their **expiration dates** and may not reduce their expiration date in excess of their (release eligibility date). PPSC does not reduce the (release eligibility date)."

167.   Pursuant to these acts the Plaintiff should have expired his sentence April 4, 2010 without the benefit of sentence reduction credits. However, Defendant Whisman refuses to calculate Plaintiffs sentence to include an expiration date.

168.   Plaintiff has sent several requests to Sentence Management Information Services to have his sentence recalculated, but Defendant has refused to recalculate his sentence. Further, Plaintiff met the Board of Parole on April 5, 2005. After being denied parole Defendant Whisman stopped awarding Plaintiff his sentence reduction credits of 16 days per month. Plaintiff has earned approximately 2800 days' credit that have not been applied to his sentence expiration date as Defendant Whisman does for inmates without a life sentence. T.C.A. § 41-21-230 stipulates that Plaintiff shall receive the earned sentence reduction credits from his expiration date. Defendant Whisman is deliberately denying Plaintiff his rights under the Due Process Clause in denying to award Plaintiff his statutory right sentence reduction credits. Defendant is further violating Plaintiffs equal protection rights in refusing to award his sentence reduction credits just because he has a life sentence.

**Plaintiff William Ledford:**

169.   Plaintiff William Ledford was sentenced on a Bradley County, Tennessee conviction for first degree murder and received a sentence of life with parole on February 24, 1989. Plaintiff Ledford was sentenced under the Class X Felonies Act of 1979, Sentencing

Reform Act of 1982, and Tennessee Comprehensive Improvement Act of 1985. All four of these Acts remained in full effect until their repeal in 1989.

170.    Pursuant to these Acts the Plaintiff should have expired his sentence in February 2019 without the benefit of sentence reduction credits. However, Defendant Whisman refuses to calculate Plaintiffs sentence to include an expiration date.

171.    Plaintiff has sent several requests to Sentence Management Information Services to have his sentence recalculated, but Defendant has refused to recalculate his sentence.

172.    Further, Plaintiff met the Board of Parole in 2008. After being denied parole Defendant Whisman stopped awarding Plaintiff his sentence reduction credits of 16 days per month.

173.    Plaintiff has earned approximately 2112 days' credit that have not been applied to his sentence expiration date as Defendant Whisman does for inmates without a life sentence.

174.    T.C.A. § 41-21-230 stipulates that Plaintiff shall receive the earned sentence reduction credits from his expiration date. Defendant Whisman is deliberately denying Plaintiff his rights under the Due Process Clause in denying to award Plaintiff his statutory right sentence reduction credits. Defendant is further violating Plaintiffs equal protection rights in refusing to award his sentence reduction credits just because he has a life sentence.


**Plaintiff Charles Mosley:**

175.    Plaintiff Charles Mosley was sentenced on a Sullivan County, Tennessee conviction for first degree murder and received a sentence of life with parole on August 23,

1982. Plaintiff Mosley was sentenced under the Class X Felonies Act of 1979, Sentencing Reform Act of 1982, both of these acts remained in full effect until their repeal in 1989.

176.    Pursuant to these acts the Plaintiff should have expired his sentence in 2012 without the benefit of sentence reduction credits. However, Defendant Whisman refuses to calculate Plaintiffs sentence to include an expiration date.

177.    Plaintiff has sent several requests to Sentence Management Information Services to have his sentence recalculated, but Defendant has refused to recalculate his sentence.

178.    Further, Plaintiff met the Board of Parole in June 2004. After being denied parole Defendant Whisman stopped awarding Plaintiff his sentence reduction credits of 16 days per month. Plaintiff had to continue to serve his sentence until he was released on parole in February 2020. Plaintiff remains under the custody and control of The Tennessee Department of Correction on parole without an expiration date. Defendant Whisman is deliberately denying Plaintiff his rights under the Due Process Clause in denying to award Plaintiff his statutory right expiration date and sentence reduction credits. Defendant is further violating Plaintiffs equal protection rights.

179.    The Supreme Court has held:

> "When interpreting a criminal statute, we do not play the part of a mindreader. In our seminal rule-of-lenity decision , Chief Justice Marshall rejected the impulse to speculate regarding a dubious congressional intent ' [p]robablility is not a guide which a court, in construing a penal statute, can safely take. ' *United States v. Wiltberger,* 5 Wheat. 76, 105 L.Ed. 37 (1820). And Justice Frankfinter, writing for the Court in another case, said the following: 'when Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity." *Bell v. United States,* 349 U.S. 81, 83, 75 S.Ct. 620, 99 L.Ed. 905 (1955).

*United States v. Santos,* 553. U.S. 507, 515, (2008).

180.　Based upon the aforementioned facts, the rule of lenity demands that ambiguities in criminal statutes be resolved in favor of the Plaintiffs.

**Plaintiff Stacy Ramsey:**

181.　Plaintiff Stacy Ramsey was sentenced on a Montgomery County, Tennessee conviction for first degree murder and the court imposed a sentence of life without parole in May 1994.

182.　Plaintiff Ramsey was sentenced under the Sentencing Reform Act of 1989 and sentence was imposed under T.C.A. § 39-13-204 which states in part:

> "(e)(2) ... The jury shall be instructed that a defendant who receives a sentence of imprisonment for life shall not be eligible for parole consideration until the defendant has served at least twenty-five (25) full calendar years of the sentence. The jury shall also be instructed that a defendant who receives a sentence of imprisonment for life without possibility of parole shall never be **eligible for release on parole."** (Emphasis added).

183.　The General Assembly in 1989 also enacted T.C.A. § 40-35-501 Subsection (h)(l) which holds:

> "release eligibility for each defendant rece1vmg a sentence of imprisonment for life for first degree murder shall occur after service of sixty percent (60%) of sixty years less sentence credits earned and retained by the defendant, but in no event shall a defendant sentenced to imprisonment for life be eligible for parole until the defendant has served a minimum of twenty-five (25) full calendar years of the sentence, notwithstanding the governor' s power to reduce prison overcrowding pursuant to title 41, chapter 1, part 5, any sentence reduction credits authorized by § 41-21-236 or any other provision of law relating to sentence credits..."

> "(2) There shall be **no release eligibility** for a defendant receiving a sentence of imprisonment for **life without** possibility of parole for first degree murder." (Emphasis added).

184.    These two statutes contradict each other. T.C.A. § 40-35-501(h)(2) is unconstitutionally vague.

185.    The Tennessee General Assembly failed to amend T.C.A. § 40-35-501(h)(2) to coincide with § 39-13-204. Plaintiff sentence was imposed under T.C.A. §39-13-204 which states that someone convicted under the status will "never be **eligible for release on parole".** Defendant, however, is calculating the Plaintiff's sentence as someone never eligible to be released as opposed to being released after 36 years.

186.    Life without parole means that someone is <u>"not eligible for release on **parole"**</u> as stated in T.C.A. § 39- 13-204. This is a mandatory sentence that must be served day for day until the sentence is expired. Plaintiff Ramsey would be released after service of sixty percent (60%) of sixty years or thirty six (36) calendar years.

187.    The Supreme Court has held:

> When interpreting a criminal statute, we do not play the part of a mind reader. In our seminal rule-of-lenity decision, Chief Justice Marshall rejected the impulse to speculate regarding a dubious congressional intent '[p ]robability is not a guide which a court, in construing a penal statute, can safely take.' *United States v. Wiltberger* , 5 Wheat. 76, 105 L.Ed. 37 (1820). And Justice Frankfurter, writing for the Court in another case, said the following: 'when Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity." *Bell v. United States,* 349 U.S. 81, 83, 75 S.Ct. 620, 99 L.Ed. 905 (1955).

*United States v. Santos,* 553. U.S. 507, 515 (2008).

188.    Pursuant to T.C.A. § 39-13-204 the Plaintiff will expire his sentence in 2029, without the benefit of sentence reduction credits. However, Defendant Whisman refuses to

calculate Plaintiffs sentence to include an expiration date.

189. T.C.A. § 40-28-129 states:

> "The Department of Correction shall be responsible for calculating the sentence expiration date and earliest release date of any felony offender sentenced to the department of correction . . ."

190. Based upon the aforementioned facts the statutes are so vague that they violate the plaintiffs due process rights by failing to provide individuals with clear notice of the sentences to which they are subject. The statutes are not only vague, debatable and in conflict with each other but are void.

191. The rule of lenity demands that ambiguities in criminal statutes be resolved in favor of the Plaintiffs.

192. Since 1989 Tennessee Code Annotated § 40-35-501 has given birth to 28 amendments.

193. One such amendment was enacted on July 1, 1995, **after only 20 minutes of discussion,** by the Senate Judiciary Committee. This enactment was § 40-35-501(i)(l) regarding the release eligibility of a series of offenses enumerated in subdivision (2) of the statute, including "murder in the first degree" which states:

> "There shall be no release eligibility for a person committing an offense, on or after July 1, 1995 that is enumerated in subdivision (i)(2). The person shall serve one hundred percent (100%) of the sentence **imposed** by the court less sentence credits earned and retained. However, no sentence reduction credits authorized by § 41-21-236 or any other provision of law shall operate to reduce the sentence **imposed** by the court by more than fifteen percent (15%).
>
> (2) The offenses to which subdivision (i)(l) applies are:
>
> (A) Murder in the first degree... "

40

194.    The sentence imposed by the court is imposed under T.C.A. § 39-13-204

which states in part:

> "(e)(2) ... The jury shall be instructed that a defendant who
> receives a sentence of imprisonment for life shall not be
> eligible for parole consideration until the defendant has
> served at least **twenty-five (25)** full calendar years of the
> sentence. The jury shall also be instructed that a defendant
> who receives a sentence of imprisonment for life without
> possibility of parole shall never be eligible for release on
> parole." (Emphasis added).

195.    T.C.A. § 40-35-101, "short title." list the sentence ranges and release

eligibility for all felony classifications except for first degree murder. The statute reads:

> **"NOTE:** First Degree Murder <u>excluded</u> from
> classification of sentencing process and sentencing solely
> according to first degree murder statute." (Emphasis
> added)

**Plaintiff Randy Jones:**

196.    Plaintiff Randy Jones was convicted of first-degree murder on January 11, 1997

and the court imposed a sentence under T.C.A. § 39-13-204. The trial court imposed the life

sentence with a minimum of twenty-five (25) years to serve.

197.    T.C.A. § 39-13-204 and § 40-35-501(i)(l) and (2)(a) must read that the person

shall serve 100% of the sentence imposed by the court of twenty-five years (25) with a

maximum allowable reduction of 15% for sentencing credits earned. If the statute is not read

in this manner then Tennessee Code Annotated § 40-35-501(i)(l) and (2)(a) is

unconstitutionally vague and in violation of the Plaintiff's due process rights. Thus, the statute

is void.

198.    Defendant Whisman is calculating the Plaintiffs sentence at 60 years based upon

her manual and not the statute. In her Procedure Manual, it states:

> Effective 7/1/95, offenders convicted of violent offenses (committed on or after 7/1/195) and receive a life sentence (not Life w/o Parole) must serve 60 years before parole eligibility. The sentence can reduce to no less than 51 years with credit earned.

199.    Plaintiff Jones' sentence is imposed under T.C.A § 39-13-204. As early as 1998 the courts were aware that T.C.A. § 39-13-204 and T.C.A. § 40-35-501(i)(l) were not amended to coincide with each other and T.C.A. § 40-35-501(i)(l) was invalid. (See, *State v. Golden* No. 02C01-9709-CR-00362 1998 WL 518071, at *7-*8 (Tenn. Ct. Crim. App.1998)

> Unfortunately Tennessee Code Annotated § 39-13-204 was not amended to reflect this change.
>
> It **immediately becomes apparent that the legislature in 1995 overlooked amending Tennessee Code Annotated § 39-13-204 to coincide with the 1995 amendment to Tennessee Code Annotated § 40-35-501.** The statutes presently **are in conflict ...** " (Emphasis added).

200.    Article II, Section 17 of the Tennessee Constitution provides in relevant part that "[a]ll acts which repeal, revive or amend former laws, shall recite in their caption, or otherwise, the title or substance of the law repealed revived or amended." Statutes that fail to meet the requirements of Article II, Section 17 will be struck down as invalid.

201.    Article II, Section 3 of the Tennessee Constitution vests the state's legislative power solely in the General Assembly. In general, legislative power is the authority to make, order and repeal law. Specifically, the General Assembly may not delegate to an executive branch agency the exercise of the legislature's discretion as to what the law shall be, because this is a purely legislative function.

42

**Plaintiff John Boatfield:**

202.     Plaintiff John Boatfield was convicted on a Hamilton, County, Tennessee first-degree murder charge on May 3, 2000 and the court-imposed sentence under T.C.A. § 39-13-204.  Defendant Whisman calculates his life sentence at 51 years.

**Plaintiff Michael Stewart:**

203.     Plaintiff Michael Stewart was convicted on a Polk County first-degree murder charge on November 16, 2005 and the court imposed a life sentence under T.C.A. § 39-13-204. Defendant Whisman calculates his life sentence at 51 years.

**Plaintiff Eddie Murphy:**

204.     Plaintiff Eddie Murphy was convicted on a Sumner County, Tennessee, first-degree murder charge on August 31, 2006 and the court imposed a life sentence under T.C.A. § 39-13-204. Defendant Whisman calculates his life sentence at 51 years.

**Plaintiff Lamont Johnson:**

205.     Plaintiff Lamont Johnson was convicted on a Gibson County, Tennessee, first-degree murder charge on December 12, 2011 and the court  imposed a life sentence under T.C.A. § 39-13-204. Defendant Whisman calculates his life sentence at 51 years.

**Plaintiff Andrew Mann:**

206.     Plaintiff Andrew Mann was convicted on a Knox County, Tennessee first-degree murder charges on January 15, 2009 and the court imposed two consecutive life sentences  under § 39-13-204. Defendant Whisman calculates his life sentence at 51 years.

207.     Tennessee Code Annotated § 40-35-501(i)(l) does not imposes the sentence but

calculates the sentence imposed under T.C.A § 39-13-204. As early as 1998 the courts were aware that T.C.A. § 39-13-204 and T.C.A. § 40-35-50l(i)(l) and (2)(a) were in conflict and were not amended to coincide with each other. (See, *State v. Golden* No. 02C01-9709-CR-00362 1998 WL 518071, at \*7-\*8 (Tenn. Ct. Crim. App.1998) :

> Unfortunately Tennessee Code Annotated § 39-13-204 was not amended to reflect this change.
>
> It **immediately becomes apparent that the legislature in 1995 overlooked amending Tennessee Code Annotated § 39-13-204 to coincide with the 1995 amendment to Tennessee Code Annotated § 40-35-501.** The statutes presently are in conflict. . . " (Emphasis added).

208.    Article II, Section 17 of the Tennessee Constitution provides in relevant part that "[a]ll acts which repeal, revive or amend former laws, shall recite in their caption, or otherwise, the title or substance of the law repealed revived or amended." Statutes that fail to meet the requirements of Article II, Section 17 will be struck down as invalid.

209.    Article II, Section 3 of the Tennessee Constitution vests the state's legislative power solely in the General Assembly. In general legislative power is the authority to make, order and repeal law. Specifically, the General Assembly may not delegate to an executive branch agency the exercise of the legislature's discretion as to what the law shall be, because this is a purely legislative function.

210.    T.C.A. § 39-13-204 and § 40-35-501(i)(l) and (2)(a) must read that the person shall serve 100% of the sentence imposed by the court of twenty five years (25) with a maximum allowable reduction of 15% for sentencing credits earned. If the statute is not interpreted in this manner then Tennessee Code Annotated § 39-13-204 and § 40-35-S0l(i)(l) and (2)(a) are in violation of the Plaintiffs' due process rights that individuals must be

provided with clear notice of the sentences to which they are subject.

211.    The aforementioned statutes are unconstitutionally vague and violate the plaintiffs due process rights by failing to provide individuals with clear notice of the sentences to which they are subject. The statutes are not only vague, debatable and in conflict with each other but are void.

212.    In 2018, due to the statutes vagueness, the Sixth Circuit Court of Appeals requested a certified question of law from the Tennessee Supreme Court to define a life sentence:

> Will a defendant convicted of first-degree murder committed on or after July 1, 1995, and sentenced to life in prison under T.C.A. 39-13-202 (c)(3) become eligible for release and, if so, after how many years? *Brown v. Jordan,* 563 S.W.3d 196, 197 (Tenn. 2018).

213.    As part of its answer, the Supreme Court emphasized:

> "Words used in a statue must be given their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose:" (Id. at 198)

214.    In 2019, the General Assembly attempted to **"clarify"** the life sentence statutes from 1989 to present. A bill presented by the General Assembly twenty-five years later attempting to clarify prior amendments leaves no doubt that the statues are vague, debatable and in conflict with other statutes. Plus, the bill attempted to validate a twenty-five year old statute that is invalid. The bill was passed by members of the General Assembly that were not members of the General assembly when these previous amendments were enacted and this court cannot with certainty state the intention of the members enacting bills during those sessions.  A version of that bill (HB 394/SB 453) was ultimately approved effective July 15, 2020 as Public Chapter 765,

**Plaintiff Bruce Smiley:**

215.    Plaintiff Bruce Smiley entered into a plea in the Hamilton County Criminal Court on July 7, 2004. The plea was for rape of a child with a 15 year sentence at 100% and especially aggravated exploitation with an 8 year sentence at 30%. The sentences were ordered to run consecutively for a total of 23 years.

216.    In 2016 Plaintiff expired the 15 year sentence after serving 85%. He then began to earn sentence credits of 16 days per month on the remaining 8 year sentence. Defendant Whisman certified Plaintiff as eligible for parole consideration and met the Board of Parole on February 15, 2018. He was declined parole.

217.    In August 2018, Defendant Whisman, without notice, removed 64 pretrial behavior credits, 586 behavior credits, and 544 program credits from Plaintiffs 15 and 8 year sentences. By removing 1,194 sentence credits from Plaintiffs sentences Defendant effectively removed him from the 8-year sentence and placed him back to serving the 15 year sentence.

218.    On October 29, 2018, Plaintiff sent an information request through his counselor to Sentence Management. Sentence Management responded on October 30, 2018 by stating "full expiration date had not been met. Your sentence is 100% no behavior or program credits will be granted per policy." After sending a request to Defendant Whisman, she refused to answer.

219.    Defendant Whisman and Tennessee Department of Correction's procedure for challenging sentence credit calculations violate Plaintiffs Eighth and Fourteenth Amendment rights as guaranteed by the U.S. Constitution.

46

**Plaintiff Ronnie Armstrong**

220.    Plaintiff Ronnie Armstrong was convicted by guilty plea of two counts of rape of a child in Fentress County, Tennessee. He received two fifteen (15) year sentence to run concurrently.

221.    In January 2019, Plaintiff received his sentence summary letter and Defendant Whisman had removed a total of 792 sentence credits and increased his expiration date. Defendant removed these credits, however never informed the Plaintiff as to why she took the credits.

222.    Plaintiff has sent several inmate information requests to Sentence Information Management but has never received a response.

223.    Defendant Whisman and the Tennessee Department of Correction's procedure for challenging sentence credits violate Plaintiffs Eighth and Fourteenth Amendment rights guaranteed by the U.S.Constitution.

## CAUSES OF ACTION

### COUNT I
**Unconstitutional Vagueness of Tennessee's Statutes Regarding Life Sentences and Calculating Sentence Credits – in violation of the Due Process Clause of the 14th Amendment and 42 U.S.C. § 1983**
**(Asserted by All Plaintiffs Against Defendant, in her official capacity)**

224.    Plaintiffs reallege and incorporate by reference each allegation in each of the preceding paragraphs as though fully set forth herein.

225.    In this Court's Order of January 9, 2020, the Court found that Plaintiffs had stated a colorable claim "that Tennessee's statutes regarding life sentences and calculating sentence credits are unconstitutionally vague under the Due Process Clause." (Doc. No. 36 at 1).

226.    The Due Process Clause of the Fourteenth Amendment prohibits a State from

47

depriving "any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1.

227. The United States Supreme Court has acknowledged that "vague sentencing provisions may pose constitutional questions if they do not state with sufficient clarity the consequences of violating a given criminal statute." *United States v. Batchelder*, 442 U.S. 114, 123 (1979).

228. Pursuant to 42 U.S.C. § 1983, any person who, under color of law, deprives another person of "any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured at law, suit in equity, or other proper proceeding for redress."

229. As set forth in the allegations above, Defendant has calculated sentence lengths for individuals sentenced to life and has calculated sentence credits pursuant to a statutory system that is unconstitutionally vague, in violation of the Due Process Clause of the Fourteenth Amendment and 42 U.S.C. § 1983.

230. Plaintiffs have all been subjected to these sentence length calculations, and/or sentence credit calculations and have all been harmed by them.

231. Plaintiffs are entitled to all available relief under the law necessary to make Plaintiffs whole, including without limitation, an order finding that the relevant sentencing and sentence credit statutes are unconstitutionally vague; injunctive relief to require the recalculation of Plaintiffs' sentences and sentence credits to conform to the requirements of the United States Constitution; reasonable attorneys' fees, expenses, and costs to the maximum extent permitted by law, including under 42 U.S.C. § 1988; and all other relief, legal or equitable, that the Court deems just and proper.

## COUNT II

**Failing to Properly Address Prisoner Requests to Recalculate their Sentences, in Violation of the Due Process Clause of the Fourteenth Amendment and 42 U.S.C. § 1983**
**(Asserted by All Plaintiffs Against Defendant, in her official capacity)**

232.    Plaintiffs reallege and incorporate by reference each allegation in each of the preceding paragraphs as though fully set forth herein.

233.    In this Court's Order of January 9, 2020, the Court found that Plaintiffs had stated a colorable claim "that TDOC's process for addressing a prisoner's request to recalculate his sentence violates the Due Process Clause and the Eighth Amendment." (Doc. No. 36 at 1).

234.    The Due Process Clause of the Fourteenth Amendment prohibits a State from depriving "any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1.

235.    Courts, including the Sixth Circuit, have in turn noted that "the Eighth and Fourteenth Amendment may be implicated when a prisoner is detained beyond his jail sentence." *See, e.g., Beil v. Lake Erie Corr. Records Dep't*, 282 F. App'x 363, 368 (6th Cir. 2008).

236.    Pursuant to 42 U.S.C. § 1983, any person who, under color of law, deprives another person of "any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured at law, suit in equity, or other proper proceeding for redress."

237.    As set forth in the allegations above, Defendant has not maintained an adequate process for addressing a prisoner's requests to recalculate his sentence.

238.    Plaintiffs have suffered harm as a result of this lack of adequate process, specifically including the harm of being detained past the end of their lawful jail sentences.

239.     Plaintiffs are entitled to all available relief under the law necessary to make Plaintiffs whole, including without limitation, an order finding that Defendant's process for addressing prisoner requests for sentence recalculation violates Plaintiffs' rights under the Due Process Clause of the Fourteenth Amendment; injunctive relief to require the recalculation of Plaintiffs' sentences and sentence credits to conform to the requirements of the United States Constitution; reasonable attorneys' fees, expenses, and costs to the maximum extent permitted by law, including under 42 U.S.C. § 1988, and all other relief, legal or equitable, that the Court deems just and proper.

<u>**COUNT III**</u>
**Failing to Properly Address Prisoner Requests to Recalculate their Sentences, in Violation of the Eighth Amendment and 42 U.S.C. § 1983**
**(Asserted by All Plaintiffs Against Defendant, in her official capacity)**

240.     Plaintiffs reallege and incorporate by reference each allegation in each of the preceding paragraphs as though fully set forth herein.

241.     In this Court's Order of January 9, 2020, the Court found that Plaintiffs had stated a colorable claim "that TDOC's process for addressing a prisoner's request to recalculate his sentence violates the Due Process Clause and the Eighth Amendment." (Doc. No. 36 at 1).

242.     The Eighth Amendment, prohibits the infliction of "cruel and unusual punishments."  U.S. CONST. amend. VIII.

243.     Courts, including the Sixth Circuit, have in turn noted that "the Eighth and Fourteenth Amendment may be implicated when a prisoner is detained beyond his jail sentence." *See, e.g., Beil v. Lake Erie Corr. Records Dep't*, 282 F. App'x 363, 368 (6th Cir. 2008).

244.     Pursuant to 42 U.S.C. § 1983, any person who, under color of law, deprives

another person of "any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured at law, suit in equity, or other proper proceeding for redress."

245. As set forth in the allegations above, Defendant has not maintained an adequate process for addressing a prisoner's requests to recalculate his sentence.

246. Plaintiffs have suffered harm as a result of this lack of adequate process, specifically including the harm of being detained past the end of their lawful jail sentences, in violation of the Eighth Amendment.

247. Plaintiffs are entitled to all available relief under the law necessary to make Plaintiffs whole, including without limitation, an order finding that Defendant's process for addressing prisoner requests for sentence recalculation violates Plaintiffs' rights under the Eighth Amendment; injunctive relief to require the recalculation of Plaintiffs' sentences and sentence credits to conform to the requirements of the United States Constitution; reasonable attorneys' fees, expenses, and costs to the maximum extent permitted by law, including under 42 U.S.C. § 1988, and all other relief, legal or equitable, that the Court deems just and proper.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs pray for the following relief:

A. A finding that the relevant sentencing statutes as described herein to be unconstitutionally vague and therefore unenforceable;

B. A finding that Plaintiffs' rights pursuant to the Eighth and Fourteenth Amendments of the United States Constitution have been violated via the infliction of cruel and unusual punishment and due process violations;

C. Order Defendant and all relevant Tennessee agencies and departments to immediately implement constitutionally sound policies and practices to timely, efficiently and

accurately process sentence recalculations.

        D.      Award Plaintiffs all costs, expenses and reasonable attorneys' fees as permitted by law, including under 42 U.S.C. § 1988; and

        E.      All other relief, legal or equitable, that the Court deems just and proper.

Date: January 8, 2021

Respectfully submitted,

/s/ Jerry E. Martin
**JERRY E. MARTIN (No. 20193)**
**SETH M. HYATT (No. 31171)**
BARRETT JOHNSTON
MARTIN & GARRISON LLC
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: (615) 244-2202
Facsimile: (615) 252-3798
shyatt@barrettjohnston.com
jmartin@barrettjohnston.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing *First Amended Complaint* was filed electronically with the Clerk's office by using the CM/ECF system and served upon the parties as indicated below through the Court's ECF system on January 8, 2021:

Thomas J. Aumann
Tennessee Attorney General's Office
P O Box 20207
Nashville, TN 37202-0207
(615) 532-2551
(615) 532-2541 (fax)
thomas.aumann@ag.tn.gov

*Attorney for Defendant Candace Whisman*

/s/ Jerry E. Martin
JERRY E. MARTIN
**BARRETT JOHNSTON MARTIN &
GARRISON, LLC**