RECEIVED

SEP 1 8 2023

U.S. District Court
Middle District of TN

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **RICKY HARRIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **No. 3:19-cv-00174** |
| | ) | |
| **CANDICE WHISMAN, in her official** | ) | **JUDGE RICHARDSON** |
| **Capacity as Director of Sentence** | ) | **JURY DEMAND** |
| **Management Services for the TENNESSEE** | ) | **CLASS ACTION** |
| **DEPARTMENT OF CORRECTION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**SECOND COMPLAINT**
**FOR VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**

**INTRODUCTION**

1.     Plaintiff, Ricky Harris, Pro se and brings this civil rights action for injunctive and declaratory relief under the Eighth Amendment for cruel and unusual punishment, and of the Due Process Clause of the Fourteenth Amendment of the United States Constitution, via 42 U.S.C. § 1983 et seq., against Candice Whisman, in her official capacity as Tennessee Department of Correction (TDOC) Director of Sentence Management Services.

2.     Fourteen Plaintiffs initially filed this action pro se, prior to the Court appointment of counsel. Pursuant to the Prison Litigation Reform Act, 28 U.S.C. § 1915A, the Court conducted a preliminary review of Plaintiffs' complaint to determine whether it was

1

"frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." (Doc. No. 35 at 1).

3.      In its Order of January 9, 2020, this Court held that Plaintiffs' Complaint stated two colorable claims against Defendant Candice Whisman in her official capacity.

4.      First, the Court construed Plaintiffs' Complaint to include a claim that "Tennessee's statutes regarding life sentences and calculating sentence credits are unconstitutionally vague under the Due Process Clause." (Doc. No. 36 at 1). The Court declined to dismiss the claim.

5.      Second, the Court construed Plaintiff's Complaint to include a claim that "Defendant's process for addressing a prisoner's request to calculate his sentence" violates the United States Constitution (Doc. No. 36 at 1). The Court declined to dismiss the claim.

6.      More specifically, the Court noted that Plaintiffs' claim regarding requests for sentence calculation implicated two separate provisions of the Constitution: (1) The Due Process Clause of the Fourteenth Amendment and (2) the Eighth Amendment prohibition against cruel and unusual punishment.

7.      Plaintiffs, represented by court-appointed counsel filed the First Amended Complaint on January 8, 2021 in conformance with the Court's January 9, 2020 Order.

8.      This Court filed an order dated October 27, 2022, directing Plaintiffs to file a second amended complaint and subsequent complaints in order to satisfy the Court's directive pertaining to misjoinder issues. (Doc. No. 96 at 7).

9.      Plaintiff's court-appointed counsel decided to withdraw from representation in this case.

10. Counsel filed an Unopposed Motion for Leave to Withdraw as Counsel of Record on January 11, 2023.

11. On September 1, 2023, this granted the motion of counsel and ordered the Plaintiff to file a second complaint within thirty (30) days of the order.

12. Plaintiff, Pro se, accordingly files this Second Complaint in conformance with the Court's September 1, 2023 Order.

## ISSUES PRESENTED

**I.** Tennessee's Class X Felonies Act of 1979, Tennessee Criminal Sentencing Reform Act of 1982, and Comprehensive Correction Improvement Act of 1985 statutes regarding life sentences and calculation of sentence reduction credits are unconstitutionally vague, in violation of the Due Process Clause of the Fourteenth Amendment and Eighth Amendment as it is incorporated into the Fourteenth Amendment of the United States Constitution.

**II.** The process of the Defendant as Director of Sentence Management Services in refusing to address prisoner recalculation requests by nonresponse or evasive answers violate the Due Process Clause of the Fourteenth Amendment and Eighth Amendment as it is incorporated into the Fourteenth Amendment of the United States Constitution.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over Plaintiff's constitutional civil rights claims as invoked pursuant to 28 U.S.C. § 1983 as well as 28 U.S.C. § 1331, and 28 U.S.C. § 1343(a).

14. Venue is proper in this federal judicial district pursuant to 28 U.S.C. § 1391, because a substantial portion of the events or omissions giving rise to these claims occurred in Davidson County, Tennessee, within this judicial district, and because Defendant, in her official

3

capacity resides in and/or regularly conducts business within this judicial district, and thus, is subject to personal jurisdiction within this judicial district.

## EXHAUSTION OF STATE REMEDIES

15.     Plaintiff submitted inmate requests through his counselor, through Records Office, to Defendant requesting that she reflect an expiration date on his life sentence on November 1, 2017; March 14, 2018; June 20, 2018; and December 8, 2018. All of the requests went unanswered. The Defendant never responded. Plaintiff tried to mail an inmate request directly to Defendant and it was returned to Plaintiff unanswered with a note attached to submit the request through the counselor then Records Office who would forward it to Defendant's office.

16.     Plaintiff submitted a motion for declaratory order to the TDOC on December 28, 2018, requesting that the Defendant as Director of Sentence Management Services reflect an expiration date on his life sentence pursuant to state statutes.

17.     TDOC's Douglas Stephens, Detainer Administrator, Office of General Counsel, who is not an attorney, responded to the motion on February 19, 2019 and denied the request for declaratory order stating that Plaintiff's life sentence was calculated correctly pursuant to statute.

18.     Plaintiff filed a Petition for Writ of Habeas Corpus in the Circuit Court for Bledsoe County, Pikeville, Tennessee challenging the expiration of his life sentence after thirty calendar years of service.

19.     On February 26, 2019, the court issued an order summarily denying his Petition for Writ of Habeas Corpus.

20.     Plaintiff appealed the court's denial of his Petition to the Tennessee Court of Criminal Appeals on April 1, 2019.

4

21.     The Court of Criminal Appeals denied the appeal on April 22, 2020, holding that Plaintiff's sentence does not have an expiration date pursuant to statute, therefore, he is not entitled to habeas corpus relief. *Harris v. Hampton*, No. E2019-00571-CCA-R3-HC, 2020 WL 1934021 (Tenn. Ct. Crim. App. 2020).

22.     Plaintiff presented and exhausted both avenues with the State in trying to get Defendant to adhere to the life sentence statutes. Do to the ambiguity of the statutes the state courts as well as the Defendant have conflicting opinions as to what the statutes dictate.

23.     The Sixth Circuit held that in procedural due process cases, when there is an adequate state remedy, a § 1983 action cannot be maintained. *Vicory v. Walton*, 721 F.2d 1062 (6th Cir. 1983), *rehearing en banc denied*, 730 F.2d 466 (6th Cir. 1984), however when there has been a substantive due process violation resulting from the aggravated conduct of the state actor, despite the availability of state remedies, no such state remedy will be found adequate to compensate the plaintiff for the deprivation of his right to substantive due process, thus justifying the maintenance of a § 1983 cause of action. *Wilson v. Beebe*, 743 F.2d 342 (6th Cir. 1984); *see also Haag v. Cuyahoga County*, 619 F.Supp. 262 (N.D. Ohio 1985). Due to the Defendant's violation of Plaintiff's substantive due process rights, he must be allowed to proceed.

24.     A case involving a violation of an express constitutional right to state remedy need not be first sought and refused before § 1983 may be invoked. In other words, is not necessary to exhaust state remedies as a condition precedent to maintaining a § 1983 action. *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). In Plaintiff's case the state has not established post deprivation remedy that adequately affords Plaintiff his substantive due process.

25.     A § 1983 action alleging a violation of an express constitutional right may be pursued in the federal courts. If, however, a § 1983 action alleges a substantive due process

5

violation, wherein the state actor's conduct is "abhorrent" or "shocks the conscience," then regardless of the available state tort remedies, the action rises to the level of a constitutional tort and a § 1983 action may be brought in the federal courts. *Wilson v. Beebe*, *supra*; Also see *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). As presented herein, the Defendant, a state actor, is violating Plaintiff's constitutional rights by failing to follow statutory law. Her actions in violating statutory law are abhorrent and shocks the conscience.

## PARTIES

26.     Defendant Candice Whisman is the Director of Sentence Management Services for the Tennessee Department of Correction, and has broad responsibility for calculating sentences for TDOC prisoners and establishing and overseeing those sentence management procedures. Defendant Whisman is sued in her official capacity only. Plaintiff understands that Defendant Whisman may recently have retired from that position, and that there will soon be a new Director of Sentence Management Services. To the extent that is the case, Plaintiff reserves the right to substitute as Defendant whoever takes over as the Director of Sentence Management Services for the Tennessee Department of Correction.

27.     Plaintiff Ricky Harris is an adult resident of the State of Tennessee and is currently incarcerated at the Bledsoe County Correctional Complex, (TDOC ID No. 00121445), serving a life sentence with parole.

## CLASS ACTION STATUS

28.     Plaintiff brings this action on his own behalf and on behalf of all persons similarly situated. The Class plaintiffs represented consists of all prisoners in the control and custody of the Tennessee Department of Correction as set forth in the Statement of Facts.

6

29. The members of the Class plaintiffs represented have no plain, speedy, or adequate remedy at law against the Defendant, other than by maintenance of the class action, because Plaintiff is informed and believe, and on the basis alleged, that the damage to each of the Class is relatively small, and that it would be economically infeasible to seek recovery against Defendant other than by class action.

30. The Class members' claims against the Defendant involve questions of common interest, in that convolution of State of Tennessee sentencing statutes, deliberate indifference in sentencing as well as sentence calculations, and procedures in addressing sentencing calculation errors.

31. All persons currently incarcerated in any facility under the supervision or control of the Tennessee Department of Correction or persons incarcerated in a public or privately owned facility for whom the Tennessee Department of Correction has ultimate responsibility for their sentence calculations.

32. This class of persons shall hereinafter be referred to as the "Inmate Class." Excluded from the Inmate Class is the Defendant and any members of their family, as well as immediate family members of the judges.

33. Plaintiff seeks relief from the wrongdoing of Defendant for himself and for all members of the Inmate Class pursuant to Fed. R. Civ. P. 23. The putative class meets the statutory prerequisites of Fed. R. Civ. P. 23(a), as set forth herein.

34. The number and identity of putative Class members is easily ascertainable through discovery. Any notice of class members could be given through the already-established channels Defendant uses to communicate with individuals in The Tennessee Department of Correction's custody.

7

35.     Plaintiff claims are typical of the claims of the Inmate Class, as Defendant's policies, procedures, and practices apply to all sentenced prisoners in the Tennessee Department of Correction's facilities and ex-prisoners on parole. Plaintiff will fairly and adequately represent the interests of all Inmate Class members and do not have any interests antagonistic to those of the class. Plaintiff moves for appointment of counsel with competence and experience in class actions and constitutional litigation.

36.     Inmate Class members' claims involve common questions of both law and fact. The facts relevant to this action are limited simply to the evidence of Defendant's written statutes, policies, practices, case law, and customs regarding sentence calculations, sentencing, and release of prisoners. The injuries sustained by Plaintiff and all putative class members flow from a common nucleus of operative facts of Defendant's willful failure to maintain laws and statues, sentencing and sentence calculation procedures, and release procedures. Similarly, this action raises common questions of law regarding the rights of Plaintiff and Inmate Class members to receive adequate and equal sentence obligations under the Due Process Clause of the Fourteenth Amendment and Eighth Amendment as it is incorporated into the Fourteenth Amendment of the United States Constitution.

37.     This action is maintainable as a class action pursuant to Fed. R. Civ. P. 23(b)(1) because the number of Inmate Class members is over 1,000 and the prosecution of separate actions by individuals would create a risk of inconsistent and varying adjudications, which in turn would establish incompatible standards of conduct for Defendant. Additionally, the prosecution of separate actions by individual members could result in adjudications with respect to individual members that, as a practical matter, would substantially impair the ability of other members to protect their interests.

8

38.     This action is also maintainable as a class action pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant's statutes, policies, and practices that form the basis of this Complaint are common to and apply generally to all members of the Inmate Class, regardless of what entity runs the particular facility where an inmate is housed or what entity issues the sentencing statutes, sentence calculations, or release determinations pertaining to the Inmate Class. All class-wide injunctive and declaratory relief sought.

## LEGAL STANDARD

39.     Pursuant to 42 U.S.C. § 1983, every person "who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

40.     The Eighth Amendment to the United States Constitution states that "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted."

41.     The Due Process Clause of the Fourteenth Amendment to the United States Constitution states that no State shall "deprive any person of life, liberty, or property, without due process of law."

## STATEMENT OF FACTS

42.     Plaintiff was tried and convicted under the Class X Felonies Act or 1979, Criminal Sentence Reform Act of 1982, Judge Sentencing Act of 1982, and Tennessee

9

Comprehensive Improvement Act of 1985. Tennessee relies on a web of sentencing and parole statutes, many of which incorporate each other by reference.

## SUMMARY OF THE ARGUMENT

43.     This case provides this Court with an ideal and unique opportunity to review the two issues presented, because it is a textbook case of how Tennessee's sentencing scheme is so convoluted and vague that it fails to protect the constitutional rights of Plaintiff and the respective class sentenced to life sentences under the statutes from 1979 through 1989.

44.     First, throughout the years, Defendant Whisman has claimed that life sentences never expire until death of the person sentenced. This has been the holding of the Defendant from 1979 through 2023, when in early 2023 the Defendant made an about-face and began to calculate expiration dates on the 1995 through 2020 life sentences. The statutes controlling sentencing has not changed, however the understanding of how to calculate life sentences has changed. Such an abrupt change would not happen if the sentencing statutes were clear enough for an ordinary person to understand. The Defendant, courts, attorney generals, district attorney generals, and practicing attorneys, etc. have debated for yeas as to what Tennessee's life sentence statutes mean when it comes to calculating sentence length. This has recently been proven in the case of *Howard Jefferson Atkins v. Tennessee Department of Correction*, No. 22-0574-IV (Davidson Co. Chancery Ct., Sept. 30, 2022)[1], when the Tennessee Department of Correction agreed that life sentences do not have a release eligibility date, but an expiration date instead.

45.     Second, the Defendant as Director of Tennessee Department of Correction's Sentence Management Services has deliberately established procedures whereby inmates with sentencing issues are blocked for redressing their questions concerning the inmate's sentence

---

[1] Exhibit Number 1.

processing errors. If the Defendant actually gets to court to question such errors, that court relies on the Defendant Whisman to testify about the complaint. The Defendant, without any formal legal training, interprets the statute in question where the court unquestionably accepts Defendant's testimony and dismisses the complaint.

46.     This Court is urged to intervene in the Defendant Whisman continuing constitutional violations to Plaintiff and the representative class relating to the foregoing issues. The sentencing statutes are so vague that it violates the Due Process Clause of the Fourteenth Amendment and Eight Amendment as it is incorporated into the Fourteenth Amendment of the United States Constitution. Such constitutional violations cannot be allowed to continue.

## ARGUMENT

### I.

**Tennessee's Class X Felonies Act of 1979, Tennessee Criminal Sentencing Reform Act of 1982, and Comprehensive Correction Improvement Act of 1985 statutes regarding life sentences and calculation of sentence reduction credits are unconstitutionally vague, in violation of the Due Process Clause of the Fourteenth Amendment and Eighth Amendment as it is incorporated into the Fourteenth Amendment of the United States Constitution.**

47.     Since 1979, Defendant Whisman and the Tennessee Department of Correction's Sentence Management Services have maintained that first degree murder life sentences do not have an expiration date. For example, in an affidavit to the David County Chancery Court, Amber Phillips, Assistant Director of Sentence Management Services stated, "…there is no expiration date on a life sentence."[2] Defendant Whisman and Sentence Management Services on their own volition made the decision to institute a release eligibility date instead of the statutory expiration date. Instead of calculating the statutory expiration date of thirty years, Sentence Management Services calculates a release eligibility date beginning at thirty years, then,

---

[2] Affidavit of Amber Phillips, Number 17, dated May 31, 2019. Exhibit Number 2.

11

when the inmate meets that date the inmate is sent before the Board of Parole. The Board of Parole usually denies parole time after time, thereby incarcerating the inmate years beyond his/her statutory expiration date. Defendant Whisman and Sentence Management Services continues to deny Plaintiff with a first degree murder life sentence from being released from incarceration upon the expiration of his sentence, thereby detaining him beyond his jail sentence.

**Factual Allegations:**
**History of the First Degree Murder Life Sentence Acts**

48. The Tennessee General Assembly enacted three acts and one amendment governing first degree murder life sentences from 1979 through 1989. The following are excerpts as they govern life sentences.

**Class X Felonies Act of 1979**

49. In May, 1979, the Tennessee General Assembly enacted the Public Acts, Chapter number 318, titled the Class X Felonies Act of 1979 as part of their "get tough on crime" policy "and was designed to provide swift and certain punishment for those who committed the most serious violent crimes." *Garrett v. Little*, No. 2008-01867-COA-R3-CV, 2009 WL 2432974 (Tenn. Ct. App., Aug. 7, 2009). This Act became effective September 1, 1979.

50. The Act's Section 2, Tenn. Code Ann. § 39-1-702 (1982), classified the following offenses as Class X which carried a sentence of life. It listed the following in this category:

(1) **murder in the first degree**;
(2) murder in the second degree;
(3) criminal sexual conduct in the first degree;
(3) aggravated kidnapping;
(4) robbery accomplished by use of deadly weapon;
(5) aggravated arson;

12

(emphasis added). Numbers 2 through 4 carried a punishment range from a specific number of years to life. First degree murder sentences were in a category by themselves which carried punishment of life or death.

51.    Section 3, Tenn. Code Ann. § 39-1-703 (1982), lists the nature of Class X felonies. All Class X felonies shall:

(1)  be determinate in nature. [*Nature means a kind or class usually distinguished by fundamental or essential characteristics.*]
(2)  not be subject to reduction for good, honor or incentive or other sentence credit of any sort.
(3)  **terminate or expire only after service of the entire sentence, day for day**, under the control and supervision of the state of Tennessee. (emphasis added).

52.    All Class X felonies were declared to be determinant which meant they had a specific amount of time to serve. Since life sentences could not receive sentence reduction credits and therefore had to be served day for day, the sentence terminated only after service of the entire sentence. This coincides with the General Assembly's continuing definition of *serving the entire sentence* in Tenn. Code Ann. § 40-35-501(l) (effective July 1, 2021) which states: "There shall be no release eligibility for a person … until the defendant has served the entire sentence imposed by the court …." The sentence has to be served until the expiration date of that sentence.

53.    Class X Felonies Act of 1979, Section 29(f) states: "The release classification for a single life sentence shall be thirty (30) years."

### Tennessee Criminal Sentencing Reform Act of 1982

54.    The Tennessee Criminal Sentencing Reform Act of 1982, Tenn. Code Ann. § 40-43-601(b) (1982) states:

A crime which occurs on or after July 1, 1982, and is otherwise classified as a Class X felony shall be treated in all respects under the law as it existed prior to July 1, 1982.

13

The Tennessee Criminal Sentencing Reform Act of 1982 continued the Class X felonies designations and punishments.

### 1983 Amendment

55. The law changed in 1983 for those convicted of Class X felonies. At that time, the General Assembly adopted Public Chapter 400, which became effective July 1, 1983. In pertinent part, Chapter 3 of Chapter 400 stated:

> Notwithstanding the provisions of this chapter to the contrary, a person convicted of a Class X felony shall be eligible to receive prisoner performance sentence credits as provided in Tenn. Code Ann. § 41-21-230 to reduce the expiration date of such person's sentence.

Tenn. Code Ann. § 40-28-301(i) (Supp. 1983).

56. Under the 1983 amendments, Class X felons could earn prisoner performance sentence credits affecting their sentence expiration dates by participating in prison programs. *Brown v. Tennessee Department of Correction*, No. M1999-02519-COA-R3-CV (Tenn. Ct. App. Feb. 23, 2001); *Jordan v. Campbell*, No. M1999-00540-COA-R3-CV, 1999 WL 1015581 at *1 (Tenn. Ct. App. Nov. 10, 1999) (per. app. denied May 15, 2000); *Hensley v. Dep't of Correction*, No. 01A01-9712-CH-00747, 1999 WL 141065 at *1 (Tenn. Ct. App. Mar. 17, 1999) (no Tenn. R. App. P. 11 application filed).

### Comprehensive Correction Improvement Act of 1985

57. The Comprehensive Correction Improvement Act of 1985, Section 12(c)(2) states:

> Any provision of Titles 39 and 40 to the contrary notwithstanding, all persons who commit Class X felonies on or after passage of this Act shall be eligible for the sentence reduction credits authorized by this section.

14

58. The Comprehensive Correction Improvement Act of 1985 authorized those with Class X life sentences to receive sentence reduction credits. However, since Class X life sentences had an expiration date only, the sentence reduction credits could only reduce their expiration dates.

59. If Tenn. Code Ann. § 40-35-501 is not interpreted in one of the manners set forth above, it would be void for vagueness because it does not provide notice of the possible number of years a life sentence entail. Constitutional due process provides that individuals must be provided with clear notice of the sentences to which they are subject. *Lindsey v. Washington*, 301 U.S. 397, 401, 57 S.Ct. 797, 81 L.Ed. 1182 (1937).

60. Various Tennessee and federal courts have held that life sentences have expiration dates instead of parole dates. Following, are examples of such rulings.

61. The Tennessee Supreme Court held:

> The sentence for robbery, Of course, is held in abeyance until the life sentence expires, or the prisoner has had a complete pardon under this sentence.

*Howell v. State*, 569 S.W.2d 428 (Tenn. 1978), quoting *Doyle v. Hampton*, 207 Tenn. 399, 403-404, 340 S.W.2d 891, 893 (Tenn. 1960). It is clear that a life sentence expires at some point in time.

62. The Tennessee Court of Criminal Appeals held:

> For determining the sentence expiration date, and release is not contingent upon a grant of parole.

*Christopher A. Williams v. State*, No. 2013-00555-CCA-R3-HC, 2013 WL 5493568, at *2 (Tenn. Crim. App. Sept. 30, 2013).

63. The Tennessee Court of Criminal Appeals also held:

> [A] sentence of life in prison entitles the defendant to be released, as opposed to paroled.

15

*Kermit Penley v. State*, No. E2004-00129-CCA-R3-PC, 2004 WL 2439287, at *3 (Tenn. Crim. App. Nov. 1, 2004).

64.     In *Blake* the Tennessee Court of Criminal Appeals stated: "[A] sentence of life imprisonment is not 'an indefinite amount of time.'" *Blake v. State*, 2016 WL 4060696 (Tenn. Crim. App. 2016).

65.     The Tennessee Supreme Court held in *Booker*:

> Under Tennessee law, a life sentence guarantees release. Therefore, not only does life imprisonment under Tennessee law guarantee release at a point, the sentencing scheme offers Mr. Booker the opportunity to obtain release … through earning good-time credits.

*State v. Booker*, No. 2018-01439-SC-R11-CD, 2022 WL 17072990, *29 (Tenn. 2022).

66.     In addressing the Tennessee life sentences, the Middle District of Tennessee Court held:

> When a defendant receives a life sentence in Tennessee, no parole is involved. The defendant receives a specific number of years, and then is eligible for release with no parole supervision.

*Pinchon v. Washburn*, 3:16-cv-03031, 2020 WL 5250668 (M.D. Tenn. Sept. 3, 2020).

67.     In the recent case of *Howard Jefferson Atkins v. Tennessee Department of Correction*, No. 22-0574-IV (Davidson Co. Chancery Ct. Sept. 30, 2022)[3] the State entered into an agreed order that Tennessee Department of Correction's use of "Release Eligibility Date" is inaccurate and should be reflected as an "expiration date." As a result of this agreed order the Tennessee Department of Correction removed the release eligibility date phrase and calculated expiration dates for all post-1995 life sentences. The Tennessee Department of Correction has been carrying on this misinterpretation of the life sentence statutes since 1979.

---

[3] Exhibit Number 1.

68. According to the Tennessee Department of Correction, Class X felonies are offenses which are punishable by life imprisonment or death. In 1979, Tennessee did not have a parole system, so individuals sentenced to life imprisonment were required to serve their entire sentence before being released. However, in 1981, Tennessee implemented a system of release eligibility for certain offenders sentenced to life imprisonment, however first degree murder life sentences were exempt under this statute. In 1985, Tennessee General Assembly enacted legislation which allowed offenders sentenced to life imprisonment to receive sentence reduction credits.[4]

69. Sentence Management Services' *Sentence Management Services Procedures Manual*, page 17 states: "A life sentence conviction with a date of offense after 5-6-73 to 11-1-89, is computed at 30 years TTS."[5]

Tenn. Code Ann. § 40-35-501(l) states:

> Notwithstanding any other provision of the law to the contrary the department of correction shall be responsible for calculating the sentence expiration date and release eligibility date of any felony offender sentenced to the department of correction and any felony offender sentenced to confinement in a county jail or workhouse for one (1) or more years.

70. On researching the first degree murder life sentence scheme from 1979 through 2020, it is very clear the Tennessee General Assembly intended for first degree murder life sentences to have an expiration date. Therefore, since 1979, the Defendant as Director of the Tennessee Department of Correction's Sentence Management Services has been and continues to violate Tennessee law in refusing to reflect the statutory expiration date for first degree murder life sentences.

---

[4] Tennessee Department of Correction: *https://www.tn.gov/correction.html*
[5] TTS means – time to serve, page 8 of the *Sentence Management Services Procedures Manual*.

17

71.     Throughout the years, the Defendant as well as Tennessee state courts have held that life sentences expire upon death only. However, as shown above, the courts now hold that life sentences have an expiration date. Due to the vagueness of the sentencing statutes the Tennessee General Assembly impermissibly delegated to the Executive Branch the Legislator's responsibility to fix criminal penalties. In essence, the courts and Defendant had to use their best guess as to the amount of time the Legislators intended for an inmate to serve on a life sentence. *See United States v. Batchelder*, 442 U.S. 114, 99 S.Ct. 2198 at *2205, 60 L.Ed.2d 755 (1979), quoting *United States v. Hudson*, 7 Cranch 32, 34, 3 L.Ed. 259 (1812); *United States v. Grimaud*, 220 U.S. 506, 516-517, 519, 31 S.Ct. 480, 482-483, 484, 55 L.Ed. 563 (1911); *United States v. Evans*, 333 U.S. 483, 486, 68 S.Ct. 634, 636, 92 L.Ed. 823 (1948).

72.     Such actions violate the Fifth Amendment right to due process of the Plaintiff and those similarly situated. "The Fifth Amendment provides that '[n]o person shall … be deprived of life, liberty, or property without due process of law.' Our cases establish that the Government violates this guarantee by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement. *Kolender v. Lawson*, 461 U.S. 352, 357-358, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983). The prohibition of vagueness in criminal statutes 'is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law,' and a statute that flouts it 'violates the first essential of due process.' *Connally v. General Constr. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926). These principles apply not only to statutes defining elements of crimes, but also to statues fixing sentences. *United States v. Batchelder*, 442 U.S. 114, 123, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979)." *Johnson v. U.S.*, 576 U.S. 591, 595, 135 S.Ct. 2551, 2557, 192 L.Ed.2d 569 (2015). Since all state actors have interpreted the life sentence

18

statues from 1979 through 1989 in various ways, it is obvious that the statues are vague and in violation of the Plaintiff's Fifth Amendment rights under the Due Process Clause the Fourteenth Amendment and Eighth Amendment as it is incorporated into the Fourteenth Amendment of the United States Constitution.

**II.**

**The process of the Defendant as Director of Sentence Management Services in refusing to address prisoner recalculation requests by nonresponse or evasive answers violate the Due Process Clause of the Fourteenth Amendment and Eighth Amendment as it is incorporated into the Fourteenth Amendment of the United States Constitution.**

73.     The Defendant, as Director of the Tennessee Department of Correction's Sentence Management Services is engaging into a pattern and practice of violating the constitutional rights of people in Tennessee Department of Correction's custody by detaining them at state and local correctional facilities past their release dates pursuant to the Civil Rights of Institutionalized Persons Act (CRIPA), 42 U.S.C. § 1979. Plaintiff has been in continuous incarceration within the Tennessee Department of Correction since November 5, 1988. The Defendant calculated a release eligibility date for the Plaintiff which he met in 2008. At this point in time, the Defendant sent Plaintiff to the Board of Parole instead of calculating the 2008 as his expiration date.

74.     The Defendant as Director of the Tennessee Department of Correction's Sentence Management Services is violating the Due Process Clause of the Fourteenth Amendment of the United States Constitution, and that these violations are pursuant to a pattern and practice of resistance to the full enjoyment of incarcerated persons' constitutional rights. There is a reasonable cause to believe that the Defendant and Sentence Management Services routinely violates the constitutional rights of people in its custody by incarcerating them past their legal

19

release dates. These violations are severe, systemic, and are both caused and perpetuated by serious ongoing deficiencies in Tennessee Department of Correction's Sentence Management Services' policies, procedures, and practices. This Court must act to end the over-detention of people in the Tennessee Department of Correction's custody.

75. Therefore, Plaintiff challenges Defendant's procedures for questioning sentence calculations. "[A]s a general proposition, … the Eighth and Fourteenth Amendment may be implicated when a prisoner is detained beyond his jail sentence." *Beil v. Lake Erie Corr. Records Dep't*, 282 F. App's 362, 368 (6th Cir. 2008) (collecting cases). Thus, a prisoner may state "a viable due process claim" by "challeng[ing his] state's procedures for addressing requests for sentence recalculations." *See Russell v. Lazar*, 300 F.Supp.2d 716, 722 (E.D. Wis. 2004).

76. Sentence Management Services maintains a time-consuming process for calculating sentences and release dates, which includes both manual calculations and automated processes using an antiquated patch-work of various data management systems. Sentence Management Services lacks a standardized training or accountability process to ensure its staff have the ability to make sentencing computations accurately.

77. Candice Whisman, the former Director and Amber Phillips, present Acting Director of Sentence Management Services have no training or legal degree, yet are in charge of making determinations as to sentencing statutes, judgment orders, and court decisions affecting sentencing computations. Further, the courts rely on sentence computations submitted by the Defendant and Sentence Management Services when people challenge sentence calculation errors.

78. Defendant Whisman and her subordinates in submitting affidavits in various court cases interpret the life sentencing statutes differently. For example, in the *Howard* case,

20

Whisman stated that Howard had to expire his sentence before receiving sentence reduction credits on his next consecutive sentence. *Howard* at *2. The Tennessee Court of Appeals agreed.

79.     In another case, Amber Phillips, a sentence analyst at the time submitted an affidavit stating, "In accordance with Tenn. Code Ann. § 40-35-501, this sentence was originally calculated with a release eligibility date set at 36 years which is 60% of 60 years with no expiration date if imposed under the Sentence Reform Act of 1989." *Tate v. Tennessee Department of Correction*, No. M2016-01611-COA-R3-CV, 2017 WL 3741348 (Tenn. Ct. App., Aug. 30, 2017). The court agreed.

80.     Ms. Phillips submitted an affidavit in a chancery court case where she stated, "there is no expiration dates on life sentences." Phillips further stated, "the release eligibility date ... may or may not be the same as the sentence expiration date."[6] The court agreed.

81.     Then, in the *Atkins* case the Tennessee Department of Correction and Atkins agreed that life sentences have expiration dates instead of release eligibility dates.[7] The chancery court accepted the agreed order. As a result of this order, Phillips, acting as Director of Sentence Management Services has recalculated all post-1995 life sentences with expiration dates. The above absolutely proves the vagueness of Tenn. Code Ann. § 40-35-501 throughout the years.

82.     Incarcerated individuals are denied Due Process when attempting to seek correction of miscalculations of their sentences. Procedures in place by Sentence Management Services insulates the Defendant and department from being held accountable and justifying their sentence calculations. When incarcerated individuals submit an inmate request through their counselors, the Defendant and Sentence Management Services very seldom responds. Majority of the time the requester never receives a response.

---

[6] See Exhibit Number 2.
[7] See Exhibit Number 1.

83.     The Defendant has never posted Sentence Management Services' procedures to alert prisoners in Tennessee Department of Correction's institutions and county jails as to how to submit a request for sentencing issues. However, the Defendant expects those seeking to question a sentencing issue to follow her strict procedures. The Defendant's *Sentence Management Services Procedures Manual* states:

> <u>Offender/Inmate Correspondence</u> All letters, requests, inquiries received from inmates in TDOC institutions will be returned with a cover memo to the warden specifying the correct procedures to use and the channels to follow to receive an answer.[8]

Instead of notifying requester, the Defendant notifies the Warden of the facility. It should be the responsibility of the Defendant to inform the requester directly instead of sending her procedures memorandum to a third party.

84.     Given the "'the importance and fundamental nature' of the individual's right to liberty," the Supreme Court has recognized that incarceration "for any purpose constitutes a significant depravation of liberty that requires due process protection." *See Foucha v. Louisiana*, 504 U.S. 71, 80 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992). These due process protections extend to the right to timely release from incarceration. *Porter v. Epps*, 659 F.3d. 440, 445 (5th Cir., 211).

85.     Defendant Whisman and System Management Services' pattern and practice of depriving those in its custody of their Fourteenth Amendment right to timely release is the direct result of the numerous failures to adopt functional policies and procedures and adequately train its employees despite knowing about these systemic deficiencies for at least forty-five years.

86.     When various law enforcement authorities file a detainer against an individual, the Defendant and Sentence Management Services fails to notify the individual to give that individual an opportunity to resolve the detainer. Once the person is ready to be released or

---

[8] Page 29, Processing Inquiries and requests, 3. Procedures (a).

considered for parole Sentence Management Services' failure to notify the individual of the detainer prevents the person from being released or thereby creating over-detention.

87.     Defendant Whisman and Sentence Management Services are liable for a constitutional violation when their policies or practices "causally result [ ]" in the violation. *Crittindon v. LeBlanc*, 37 F.4th 177, 186 (5th Cir., 2022). In examining causation, courts may properly consider how individual policies or practices interact with one another within the larger system, such that the harm caused by a particular policy or practice may be exacerbated or mitigated. *See M.D. by Stukenberg v. Abbott*, 907 F.3d. 237, 255 (5th Cir., 2018). A "policy or custom" can include a "policy of inaction"; in other words, Defendant Whisman and Sentence Management Services can be liable for a failure to adopt policy and failure to train and supervise subordinate officials when that inaction results in a constitutional violation. *Connick v. Thompson*, 563 U.S. 51, 61-62, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011); *Crittindon*, 37 F.4th at 186.

88.     The Defendant, as Director of Sentence Management Services is refusing to reflect expiration dates for those individuals who are sentenced to life sentences. Once an individual reaches the release eligibility the Defendant and Sentence Management Services stops awarding the person's statutory mandated sentence reduction credits in turn prolonging the person's incarceration.

89.     If a person is sentenced to life plus a consecutive sentence; when the person reaches the release eligibility date, that person automatically begins service on the consecutive sentence. However, if a person is serving a single life sentence, the Defendant as Director of Sentence Management Services claims that individual is scheduled to be incarcerated until that person dies. Sentence Management Services treats individuals with consecutive sentences differently than individuals with a single life sentence.

23

90.    In *Howard*, the petitioner filed a declaratory judgment to challenge the Department of Correction's manner of applying sentence reduction credits to his consecutive sentences. The Tennessee Court of Appeals opined:

> In support to its motion [for summary judgment], the TDOC filed the affidavit of Candace Whisman, Director of Sentence Management Services for the TDOC, who set out in detail the TDOC's calculation of the sentence reduction credits applicable to Howard's sentences and his release eligibility date. Whisman stated that Howard's twenty-five year sentence was to be served consecutive to the life sentence, and the six year sentence was to be served consecutive to the twenty-five year sentence.
>
> The TDOC informed Howard that it had properly calculated his consecutive sentence to include "your life sentence, then the 25 year sentence, and then your 6 year sentence." Therefore, according to the TDOC, Howard's prisoner sentence reduction could not be applied to the twenty-five year sentence **until the life sentence expired**.

*Howard v. Tennessee Department of Correction*, No. M2016-00337-COA-R3-CV, 2016 WL 7048838, at *2 (Tenn. Ct. App., Dec. 5, 2016) (emphasis added), perm. app. denied, Feb. 27, 2017. Defendant Whisman states that in consecutive sentencing, the first sentence must expire in order to receive sentence credits on the next consecutive sentence. The Court of Appeals agreed with Defendant Whisman.

91.    Inmate Alan Lawhorne, TDOC Number 00131956, was sentenced to two consecutive life sentences with a sentence effective date of May 19, 1988. Upon meeting his release eligibility date on November 8, 2008, Alan Lawhorne began receiving sentence reduction credits on the second life sentence.[9]

92.    Inmate Larry G. Cauley, Jr., TDOC Number 00146889, was sentenced to two consecutive life sentences with a sentence effective date of July 13, 1988. Upon meeting his release

---

[9] TOMIS Offender Sentence Letter. Exhibit Number 3.

eligibility date on April 8, 2009, Larry Cauley began receiving sentence reduction credits on the second life sentence.[10]

93.     Inmate James K. Cauley, TDOC Number 00129375, was sentenced to two consecutive life sentences with a sentence effective date of October 19, 1988. Upon meeting his release eligibility date on October 21, 2009, James Cauley began receiving sentence reduction credits on the second life sentence.[11]

94.     Pursuant to Defendant Whisman's affidavit in *Howard*, the three above named inmates were required to expire their first life sentence before they could receive sentence credits on the second consecutive life sentence.

95.     The Plaintiff is being treated differently that the above listed inmates. Defendant Whisman should have calculated Plaintiff's life sentence with his expiration date in 2008. However, the Defendant has chosen to use the vagueness of the statutes to incarcerate Plaintiff for another fifteen years beyond his jail sentence. Plaintiff submitted an Inmate Inquiry – Information Request through his counselor and Records to Sentence Management Services on May 22, 2023, requesting the calculation of his expiration date. Amber Phillips responded and stated, "your sentence does not qualify for an expiration date. You can look up Tenn. Code Ann. 40-35-501 in the law library to review."[12] Plaintiff responded to Ms. Phillips response that pursuant to Tenn. Code Ann. 40-35-501 (1982), that his sentence should have expired after the service of thirty years minus sentence reduction credits. Sentence Management Services failed to respond.[13] Such actions by the Defendant violates the Plaintiff's Eighth and Fourteenth Amendment to the United States Constitution and his rights under the Due Process Clause.

---

[10] TOMIS Offender Sentence Letter. Exhibit Number 4.
[11] TOMIS Offender Sentence Letter. Exhibit Number 5.
[12] Inmate Inquiry – Information Request, Exhibit Number 6.
[13] Inmate Inquiry – Information Request, Exhibit Number 7.

96. If Sentence Management Services cannot answer a request to their benefit to justify their actions, the request goes unanswered. These problems have been inherent within Sentence Management Services since 1979 and continue to worsen each year. Such deficiencies of the Defendant and Sentence Management Services causing people to be incarcerated not only for an extra day beyond their expiration dates, but for years in the cases of those serving life sentences as in the Plaintiff's case.

97. Defendant Whisman and Sentence Management Services are liable for Fourteenth Amendment violations when they act, or fail to act, with "'deliberate indifference,' a 'disregard [for]a known or obvious consequence of [their] action[s].'" *Crittindon*, 37 4th at 186; *also see Porter*, 659 F.3d at 446-47.

98. Over-detention likewise carries numerous collateral harms to both incarcerated individuals and their families, including missed important family milestones, lost opportunities to say farewell to dying loved ones, lost or missed job opportunities, and diminished opportunities to fully re-integrate into society.

### The Rule of Lenity Supports the Narrow Construction of the Class X Felonies Act of 1979 and Tennessee Code Annotated § 40-35-501 (1982) Urged by Plaintiff in this Case

99. The United States Supreme Court has long used the rule of lenity to construe ambiguous criminal statutes in favor of a plaintiff. *United States v. Bass*, 404 U.S. 336, 347-48, 92 S.Ct. 515, 30 L.Ed. 488 (1971). There is a compelling argument that the Class X Felonies Act of 1979 and Tenn. Code Ann. § 40-35-501 (1982) should be read in the Plaintiff's favor without resorting to the rule of lenity. However, if any residual doubts remain, the rule of lenity clarifies those doubts and dictates that a sentence of life under the Act of 1979 and § 40-35-501 requires the sentence to be thirty years day-for-day minus sentence reduction credits.

100. The phrase "life sentence" as used in the Tennessee statutes is ambiguous. Although the term "life" connotes some form of incarceration, "it is not an indefinite amount of time." *Blake supra*. This ambiguity is demonstrated by a myriad of Tennessee court opinions, the Tennessee attorney general opinions, and federal district court opinions interpreting the Act of 1979 and § 40-35-501 and reaching conflicting conclusions. Faced with dueling interpretations "the tie must go to the" Plaintiff. *See. United States v. Santos*, 553 U.S. 507, 514, 128 S.Ct. 2020, 170 L.Ed.2d 912 (2008). (plurality opinion).

101. The rule of lenity should be given special force in cases where an ambiguous statute such as Tenn. Code Ann. § 40-35-501 imposes a mandatory sentence. because of conflicting interpretations in the federal and Tennessee courts, asymmetric punishments for the same conduct may result. For example, Defendant Whisman calculating sentence dates differently for those with a single life sentence versus those with two consecutive life sentences. Moreover, the principles supporting the rule of lenity – fair notice and separation of powers – are heightened where, as in this case, severe mandatory sentences result from a vague statutory phrase.

102. A more definitive interpretation is especially important for statutes mandating life sentencing terms. With life sentences, any ambiguity by the Tennessee General Assembly's intentions should trigger the rule of lenity in light of the drastic reductions in liberty at stake. Clarity also helps prevent arbitrary and inconsistent application of the statutory penalties for people who commit similar acts.

103. In light of the severe punishment, Defendant Whisman should not interpret the length of a life sentence when such an interpretation can be based on no more than a guess as to what the Tennessee General Assembly intended. *See United States v. Granderson*, 511 U.S. 39,

27

114 S.Ct. 1259, 127 L.Ed.2d 611 (1994). Such arbitrary results are particularly problematic where a vague statute provides the basis for a very substantial sentence increase.

104. The rule of lenity dictates that "where text, structure, and history fail to establish that the Government's position is unambiguously correct," ambiguity should be resolved in the Plaintiff's favor. *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 221-22, 735 S.Ct. 227, 97 L.Ed. 260 (1952), commanding that in such cases, "the tie must go to the defendant," *United States. v. Santos*, 553 U.S. 507, 554, 128 S.Ct. 2020, 170 L.Ed.2d 912 (2008).

105. In the case at bar, Plaintiff urges this Court to apply the rule of lenity and establish that due to the vagueness of Tennessee's life sentence statutes, Defendant Whisman must establish the expiration date for 1979-1989 Class X life sentences as thirty years minus the statutory sentence reduction credits.

## PRAYER FOR RELIEF

With all premises considered, this Court is moved to grant the following relief:

A. Allow this Complaint to proceed as a class action;

B. Reappoint counsel to represent the class;

C. Issue injunctive and declaratory relief granting that the life sentences statutes from 1979 – 1989 are vague as applied to Plaintiff and respective class;

D. Issue injunction and declaratory relief that Defendant Whisman under the rule of lenity, shall apply the Class X Felonies Act of 1979, Section 29(f) as the expiration date of thirty years as applied to Plaintiff and respective class;

E. Issue injunctive and declaratory relief granting that the procedures established by the Defendant as Director of Sentence Management Services violate the Due Process Clause of the Eighth and Fourteenth Amendments of the United States Constitution;

28

F.    Order the Defendant to pay all attorney fees and court costs associated with this Complaint; and

G.    Any and all further relief this Court may deem appropriate.


Date: September 14, 2023.

Ricky Harris
TDOC ID Number 00121445
1045 Horsehead Lane
Pikeville, TN 37367


## DECLARATION OF VERIFICATION

Pursuant to 28 U.S.C. § 1764, I declare that the facts stated within this Complaint under 42 U.S.C. § 1983 for injunctive and declaratory relief under the penalty of perjury are true and correct to the best of my knowledge, information, and belief.

Signed this the 14th day of September, 2023.

Ricky Harris

29

# CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the forgoing has been filed by placing it in the BCCX institutional mailbox, U.S. mail, postage prepaid to:

> John R. Glover
> Assistant Attorney General
> PO Box 20207
> Nashville, TN 37202

on this the 14th day of September, 2023.

_Ricky Harris_
Ricky Harris



RECEIVED

SEP 18 2023

U.S. District Court
Middle District of TN

Ricky Harris, 00121445
1045 Horsehead Lane
Pikeville, TN 37367

MS LYNDA HILL
CLERK OF COURT
US DISTRICT COURT
719 CHURCH ST STE 1300
NASHVILLE TN 37203

FIRST-CLASS

US POSTAGE PITNEY BOWES

ZIP 37367
02 7H
0006017106

$ 003.51

SEP 12 2023



RECEIVED

SEP 12 2023

BCCX MAILROOM
OUTGOING

THE DEPARTMENT OF CORRECTIONS
NEITHER INSPECTED
NOT CENSORED AND IS NOT
RESPONSIBLE FOR THE CONTENTS