# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

RECEIVED

JUN 0 7 2024

U.S. District Court
Middle District of TN

| | |
|---|---|
| **RICKY HARRIS,** )<br><br>**Plaintiff,** )<br><br>**vs.** )<br><br>**CANDICE WHISMAN, in her official** )<br>**Capacity as Director of Sentence** )<br>**Management Services for the TENNESSEE** )<br>**DEPARTMENT OF CORRECTION,** )<br><br>**Defendant.** ) | **No. 3:19-cv-00174**<br>*cw*<br><br>**JUDGE RICHARDSON**<br><br>**JURY DEMAND**<br>**CLASS ACTION** |

## SECOND AMENDED COMPLAINT
## FOR VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983

### INTRODUCTION

1.      Plaintiff, Ricky Harris, Pro se and brings this civil rights action for injunctive and declaratory relief under the Eighth Amendment for cruel and unusual punishment, the Due Process Clause of the Fourteenth Amendment, and Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, via 42 U.S.C. § 1983 et seq., against Candice Whisman, in her official capacity as Tennessee Department of Correction's Director of Sentence Management Services.

2.      Fourteen Plaintiffs initially filed this action pro se, prior to the Court's appointment of counsel. Pursuant to the Prison Litigation Reform Act, 28 U.S.C. § 1915A, this Court conducted a preliminary review of Plaintiffs' complaint to determine whether it was

1

"frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." (Doc. No. 35 at 1).

3.      In its Order of January 9, 2020, this Court held that Plaintiffs' Complaint stated two colorable claims against Defendant Candice Whisman in her official capacity.

4.      First, the Court construed Plaintiffs' Complaint to include a claim that "Tennessee's statutes regarding life sentences and calculating sentence credits are unconstitutionally vague under the Due Process Clause." (Doc. No. 36 at 1). The Court declined to dismiss the claim.

5.      Second, the Court construed Plaintiff's Complaint to include a claim that "Defendant's process for addressing a prisoner's request to calculate his sentence" violates the United States Constitution (Doc. No. 36 at 1). The Court declined to dismiss the claim.

6.      More specifically, the Court noted that Plaintiffs' claim regarding requests for sentence calculation implicated two separate provisions of the Constitution: (1) The Due Process Clause of the Fourteenth Amendment and (2) the Eighth Amendment prohibition against cruel and unusual punishment.

7.      Plaintiffs, represented by court-appointed counsel Jerry Martin and Seth Hyatt, filed the First Amended Complaint on January 8, 2021, in conformance with the Court's January 9, 2020, Order.

8.      This Court filed an order dated October 27, 2022, directing Plaintiffs to file a second amended complaint and subsequent complaints in order to satisfy the Court's directive pertaining to misjoinder issues. (Doc. No. 96 at 7).

9.      Plaintiff's court-appointed counsel decided to withdraw from representation in this case and, therefore did not file a second amended complaint.

2

10.     Counsel filed an Unopposed Motion for Leave to Withdraw as Counsel of Record on January 11, 2023.

11.     On September 1, 2023, this Court granted the motion of counsel and ordered the Plaintiff to file a second complaint within thirty (30) days of the order.

12.     On December 4, 2023, this Court appointed Tricia Herzfeld as counsel for Plaintiff.

13.     Attorney Herzfeld moved to withdraw as counsel on May 2, 2024.

14.     This Court granted the motion to withdraw on May 28, 2024.

15.     Attorney Herzfeld did not file an amended complaint.

## ISSUES PRESENTED

**I.**     Tennessee's Class X Felonies Act of 1979, Tennessee Criminal Sentencing Reform Act of 1982, and Comprehensive Correction Improvement Act of 1985 statutes regarding life sentences are unconstitutionally vague, in violation of the Due Process Clause of the Fourteenth Amendment and Eighth Amendment as it is incorporated into the Fourteenth Amendment of the United States Constitution.

**II.**     The Defendant's processes and procedures, as Director of Sentence Management Services in refusing to address Plaintiff's recalculation requests by nonresponse or evasive answers violate the Due Process Clause of the Fourteenth Amendment and Eighth Amendment as it is incorporated into the Fourteenth Amendment of the United States Constitution.

**III.**     Defendant's processes and arbitrary procedures in her application of the Class X sentencing statutes to some inmates and the exclusion of Plaintiff is in violation of his substantive due process rights of the Fourteenth Amendment and cruel and unusual punishment of the Eighth Amendment, and the Fourteenth Amendment's Equal Protection Clause.

3

**IV.** Defendant's calculation procedures and processes used to deny Plaintiff a state-created determinate sentence is in violation of his substantive due process rights of the Fourteenth Amendment and cruel and unusual punishment of the Eighth Amendment.

**V.** Defendant's processes and procedures in calculating Plaintiff's earned time reduction credits are unconstitutional and violates his substantive due process rights of the Fourteenth Amendment, cruel and unusual punishment of the Eighth Amendment, and the Fourteenth Amendment's Equal Protection Clause.

**VI.** Defendant's unconstitutional conduct in calculating Plaintiff's sentence versus other similarly situated inmates is in violation of Plaintiff's Fourteenth Amendment's Equal Protection Clause, and the Due Process Clause of the Fourteenth Amendment, and cruel and unusual punishment under the Eighth Amendment.

**VII.** The rule of lenity supports the narrow construction of the Class X Felonies Act of 1979, Tenn. Code Ann. § 40-35-501 (1982), and Tenn. Code Ann. § 41-21-236, urged by Plaintiff in this case.

## JURISDICTION AND VENUE

16. This Court has jurisdiction over Plaintiff's constitutional civil rights claims as invoked pursuant to 28 U.S.C. § 1983, as well as 28 U.S.C. § 1331, and 28 U.S.C. § 1343(a).

17. Venue is proper in this federal judicial district pursuant to 28 U.S.C. § 1391, because a substantial portion of the events or omissions giving rise to these claims occurred in Davidson County, Tennessee, within this judicial district, and because Defendant, in her official capacity resides in and/or regularly conducts business within this judicial district, and thus, is subject to personal jurisdiction within this judicial district.

4

## EXHAUSTION OF STATE REMEDIES

18.     Plaintiff submitted inmate requests through his counselor, through the Records Office, to Defendant requesting that she reflect an expiration date on his life sentence on November 1, 2017; March 14, 2018; June 20, 2018; and December 8, 2018. All of the requests went unanswered. The Defendant never responded. Plaintiff tried to mail an inmate request directly to Defendant and it was returned to Plaintiff unanswered with a note attached to submit the request through the counselor then Records Office, who would forward it to Defendant's office.

19.     Plaintiff submitted a motion for declaratory order to the Tennessee Department of Correction on December 28, 2018, requesting that the Defendant, as Director of Sentence Management Services reflect an expiration date on his life sentence pursuant to state statutes.

20.     Tennessee Department of Correction's Douglas Stephens, Detainer Administrator, Office of General Counsel, who is not an attorney, responded to the motion on February 19, 2019, and denied the request for declaratory order stating that Plaintiff's life sentence was calculated correctly pursuant to statute.

21.     The Sixth Circuit held that in procedural due process cases, when there is an adequate state remedy, a § 1983 action cannot be maintained. *Vicory v. Walton*, 721 F.2d 1062 (6th Cir. 1983), *rehearing en banc denied*, 730 F.2d 466 (6th Cir. 1984), however when there has been a substantive due process violation resulting from the aggravated conduct of the state actor, despite the availability of state remedies, no such state remedy will be found adequate to compensate the plaintiff for the deprivation of his right to substantive due process, thus justifying the maintenance of a § 1983 cause of action. *Wilson v. Beebe*, 743 F.2d 342 (6th Cir. 1984); *see also Haag v. Cuyahoga County*, 619 F.Supp. 262 (N.D. Ohio 1985). Due to the Defendant's violation of Plaintiff's substantive due process rights, he must be allowed to proceed.

5

22.     A case involving a violation of an express constitutional right to state remedy need not be first sought and refused before § 1983 may be invoked. In other words, it is not necessary to exhaust state remedies as a condition precedent to maintaining a § 1983 action. *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). In Plaintiff's case the state has not established post deprivation remedy that adequately affords Plaintiff his substantive due process.

23.     A § 1983 action alleging a violation of an express constitutional right may be pursued in the federal courts. If, however, a § 1983 action alleges a substantive due process violation, wherein the state actor's conduct is "abhorrent" or "shocks the conscience," then regardless of the available state tort remedies, the action rises to the level of a constitutional tort and a § 1983 action may be brought in the federal courts. *Wilson v. Beebe*, *supra*; Also see *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). As presented herein, the Defendant, a state actor, is violating Plaintiff's constitutional rights by failing to follow statutory law. Her actions in violating statutory law are abhorrent and shocks the conscience.

## PARTIES

24.     Defendant Candice Whisman is the Director of Sentence Management Services for the Tennessee Department of Correction, and has broad responsibility for calculating sentences for Tennessee Department of Correction prisoners and establishing and overseeing those sentence management procedures. Defendant Whisman is sued in her official capacity only. Plaintiff understands that Defendant Whisman has retired from that position, and that Amber Phillips is the new Director of Sentence Management Services. Plaintiff reserves the right to substitute as Defendant whoever takes over as the Director of Sentence Management Services for the Tennessee Department of Correction.

6

25.     Plaintiff Ricky Harris is an adult resident of the State of Tennessee and is currently incarcerated at the Bledsoe County Correctional Complex, TDOC ID No. 00121445, serving a life sentence.

## CLASS ACTION STATUS

26.     Plaintiff brings this action on his own behalf and on behalf of all persons similarly situated. The class plaintiffs represented consists of all prisoners in the control and custody of the Tennessee Department of Correction as set forth in the Statement of Facts.

27.     The members of the class represented have no plain, speedy, or adequate remedy at law against the Defendant, other than by maintenance of the class action, because Plaintiff is informed and believe, and on the basis alleged, that the damage to each of the Class is relatively small, and that it would be economically infeasible to seek recovery against Defendant other than by class action.

28.     The class' claims against the Defendant involve questions of common interest, in that convolution of State of Tennessee sentencing statutes, deliberate indifference in sentencing as well as sentence calculations, and Defendant's processes and procedures in addressing sentencing calculation errors.

29.     All persons currently incarcerated in any facility under the supervision or control of the Tennessee Department of Correction or persons incarcerated in a public or privately owned facility for whom the Tennessee Department of Correction has ultimate responsibility for their sentence calculations.

30.     This class of persons shall hereinafter be referred to as the "class members." Excluded from the class members is the Defendant and any members of their family, as well as immediate family members of the judges.

7

31.     Plaintiff seeks relief from Defendant's unconstitutional processes and procedures and the wrongdoing of Defendant for himself and for all members of the class members pursuant to Fed. R. Civ. P. 23. The putative class meets the statutory prerequisites of Fed. R. Civ. P. 23(a), as set forth herein.

32.     The number and identity of putative class members is easily ascertainable through discovery. Any notice of class members could be given through the already-established channels Defendant uses to communicate with individuals in The Tennessee Department of Correction's custody.

33.     Plaintiff claims are typical of the claims of the class members, as Defendant's policies, procedures, and practices apply to all sentenced prisoners in the Tennessee Department of Correction's facilities and ex-prisoners on parole. Plaintiff will fairly and adequately represent the interests of all class members and do not have any interests antagonistic to those of the class. Plaintiff moves for appointment of counsel with competence and experience in class actions and constitutional litigation and knowledge of the sentencing statutes in Tennessee from1975 through 2023.

34.     Class members' claims involve common questions of both law and fact. The facts relevant to this action are limited simply to the evidence of Defendant's written processes, policies, practices, case law, and customs regarding sentence calculations, sentencing, and release of prisoners. The injuries sustained by Plaintiff and all putative class members flow from a common nucleus of operative facts of Defendant's willful refusal to abide by the laws and statues, sentencing and sentence calculation procedures, and release procedures. Similarly, this action raises common questions of law regarding the rights of Plaintiff and class members to receive adequate and equal sentence obligations under the Due Process Clause of the Fourteenth

Amendment and Eighth Amendment as it is incorporated into the Fourteenth Amendment of the United States Constitution.

35. This action is maintainable as a class action pursuant to Fed. R. Civ. P. 23(b)(1), because the number of class members is estimated to be over 1,000 and the prosecution of separate actions by individuals would create a risk of inconsistent and varying adjudications, which in turn would establish incompatible standards of conduct for Defendant. Additionally, the prosecution of separate actions by individual members could result in adjudications with respect to individual members that, as a practical matter, would substantially impair the ability of other members to protect their interests.

36. This action is also maintainable as a class action pursuant to Fed. R. Civ. P. 23(b)(2), because Defendant's processes, policies, and practices that form the basis of this Complaint are common to and apply generally to all members of the class members, regardless of what entity runs the particular facility where an inmate is housed or what entity issues the sentencing statutes, sentence calculations, or release determinations pertaining to the class members. All class-wide injunctive and declaratory relief sought.

## LEGAL STANDARD

37. Pursuant to 42 U.S.C. § 1983, every person "who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

9

38.     The Eighth Amendment to the United States Constitution states that "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted."

39.     The Due Process Clause of the Fourteenth Amendment to the United States Constitution states that no State shall "deprive any person of life, liberty, or property, without due process of law."

## STATEMENT OF FACTS

40.     Plaintiff was tried and convicted under the Class X Felonies Act or 1979, Criminal Sentence Reform Act of 1982, Judge Sentencing Act of 1982, and Tennessee Comprehensive Improvement Act of 1985. Tennessee relies on a web of sentencing and parole statutes, many of which incorporate each other by reference. None of the four Acts state with sufficient clarity the consequences of violating a given criminal statute.

## SUMMARY OF THE ARGUMENT

41.     This case provides this Court with an ideal and unique opportunity to review the two issues presented, because it is a textbook case of how Tennessee's sentencing scheme is so convoluted and vague that it fails to protect the constitutional rights of Plaintiff and the respective class sentenced to life sentences under the statutes from 1979 through 1989.

42.     Second, the Defendant as Director of Tennessee Department of Correction's Sentence Management Services has deliberately established processes and procedures whereby inmates with sentencing issues are blocked for redressing their questions concerning the inmate's sentence processing errors. If the Defendant actually gets to court to question such errors, that court relies on the Defendant Whisman's affidavits or to testify about the complaint. The

10

Defendant, without any formal legal training, interprets the statute in question where the court unquestionably accepts Defendant's testimony and dismisses the complaint.

43.     This Court is urged to intervene in the Defendant Whisman's continuing constitutional violations to Plaintiff and the representative class relating to the foregoing issues. The sentencing statutes are so vague that it violates the Due Process Clause of the Fourteenth Amendment and Eight Amendment as it is incorporated into the Fourteenth Amendment of the United States Constitution. Such constitutional violations cannot be allowed to continue.

## ARGUMENT

### I.

**Tennessee's Class X Felonies Act of 1979, Tennessee Criminal Sentencing Reform Act of 1982, and Comprehensive Correction Improvement Act of 1985 statutes regarding life sentences are unconstitutionally vague, in violation of the Due Process Clause of the Fourteenth Amendment and Eighth Amendment as it is incorporated into the Fourteenth Amendment of the United States Constitution.**

44.     In May, 1979, the Tennessee General Assembly enacted the Public Acts, Chapter Number 318, titled the Class X Felonies Act of 1979. This Act became effective on September 1, 1979.

45.     The Act's Section 2, Tenn. Code Ann. § 39-1-702, classified several felony offenses as Class X felonies which carried a sentence of life or death. Murder in the first degree was one of the offenses listed in this Section.

46.     Section 3, of the Act and Tenn. Code Ann. § 39-1-703 held that all "Class X felonies shall be determinate in nature," and "terminate or expire only after service of the entire sentence, day for day."

47.     All Class X felonies were declared to be determinant which meant they had a specific amount of time to serve. Since life sentences could not receive sentence reduction credits

11

and therefore had to be served day for day. The sentence terminated only after service of the entire sentence. This coincides with the General Assembly's continuing definition of *serving the entire sentence* as late as 2021, holding, "There shall be no release eligibility for a person ... until the defendant has served the entire sentence imposed by the court ... ." Tenn. Code Ann. § 40-35-501(l) (effective July 1, 2021). The sentence has to be served until the expiration date of that sentence.

48.     The Tennessee General Assembly mandated,

> Where the release eligibility date for a single offense ... or the sentence is life, release eligibility on such sentence shall occur after service of thirty (30) years.

Tenn. Code Ann. § 40-35-501(f) (1988 Supp.) and Tennessee Sentencing Reform Act of 1982. This Section further holds:

> The release eligibility date provided for in this section shall be eligible for release status; such date shall be conditioned on the defendant's good behavior.

Tennessee Sentence Reform Act of 1982, Tenn. Code Ann. § 40-35-501(h) (1982). The legislators deliberately based this thirty (30) year reclassification status date with the condition on good behavior, because the thirty (30) years could not be extended without due process.

49.     Plaintiff's sentence is still controlled by the Class X Felonies Act of 1979.

> A crime which occurs on or after July 1, 1982, and is otherwise classified as a Class X felony shall be treated in all respects under the law as it existed prior to July 1, 1982.

The Tennessee Criminal Sentencing Reform Act of 1982 and Tenn. Code Ann. § 40-43-601(b) (1982). This subsection continued the Class X felonies designations and punishments.

50.     The law changed in 1983 for those convicted of Class X felonies. At that time, the General Assembly adopted Public Chapter 400, which became effective July 1, 1983.

12

> Notwithstanding the provisions of this chapter to the contrary, a person convicted of a **Class X felony** shall be eligible to receive prisoner performance sentence credits as provided in Tenn. Code Ann. § 41-21-230 to **reduce the expiration date** of such person's sentence.

Tenn. Code Ann. § 40-28-301(i) (Supp. 1983). (Emphasis added). The General Assembly, within this statute have deliberately specified that **Class X felonies were to receive sentence reduction credits from their expiration dates**. Plaintiff was convicted of a Class X felony.

51. The General Assembly's intentions are clear that all Class X felonies have a specific release date.

52. The Tennessee Supreme Court, Tennessee Court of Criminal Appeals, Tennessee Court of Appeals, and Federal District Court of Middle Tennessee have opined that Tennessee life sentences have expiration dates.

53. However, the Defendant refuses to calculate life sentences from 1979-1994 with an expiration date.

54. It is obvious that the sentencing statutes from 1979-2021 are so vague that it has created a multitude of problems with the Tennessee Supreme Court, Tennessee Court of Criminal Appeals, Tennessee Court of Appeals, and Federal District Court of Middle Tennessee Tennessee Attorney General, the Tennessee Department of Correction, and Sentence Management Services interpreting the sentencing statutes in different ways.

55. The General Assembly has notoriously not stated in statute, the actual number of years an inmate must to serve to expire a life sentence, until a clarification bill was enacted in 2021.

56. Due to the vagueness of the sentencing statutes the Tennessee General Assembly impermissibly delegated to the Executive Branch the Legislator's responsibility to fix

13

criminal penalties. In essence, the courts and Defendant had to use their best guess as to the amount of time the Legislators intended for an inmate to serve on a life sentence. *See United States v. Batchelder*, 442 U.S. 114, 99 S.Ct. 2198 at *2205, 60 L.Ed.2d 755 (1979), quoting *United States v. Hudson*, 7 Cranch 32, 34, 3 L.Ed. 259 (1812); *United States v. Grimaud*, 220 U.S. 506, 516-517, 519, 31 S.Ct. 480, 482-483, 484, 55 L.Ed. 563 (1911); *United States v. Evans*, 333 U.S. 483, 486, 68 S.Ct. 634, 636, 92 L.Ed. 823 (1948). This allows the Defendant free reign to make her own determination and develop such unconstitutional processes and procedures as to the length of a life sentence.

57.     A judicial enlargement of a criminal statute by interpretation violates the constitutional protection guarantee; "it is a fundamental tenet of due process that [n]o one may be required at peril of life, liberty, or property to speculate as to the meanings of penal statutes." *U.S. v. Batchelder*, 99 S.Ct. 2198 at 2204; quoting *Lanzetta v. New Jersey*, 306 U.S. 451, 453, 59 S.Ct. 618, 619, L.Ed. 888 (1939). "So too, vague sentencing provisions may pose constitutional questions if they **do not state with sufficient clarity** consequences of violation of a given criminal statute." *Batchelder* at 2205. *See United States v. Evans*, 333 U.S. 483, 685 S.Ct. 634, 92 L.Ed. 823 (1948); *United States v. Brown*, 333 U.S. 18, 68 S.Ct. 376, 92 L.Ed. 442 (1948); *cf. Giaccio v. Pennsylvania*, 382 U.S. 399, 86 S.Ct. 518, 15 L.Ed.2d (1966). (Emphasis added).

58.     "The prohibition of vagueness in criminal statutes 'is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law,' and a statute that flouts it 'violates the first essential of due process.' *Connally v. General Constr. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926). These principles apply not only to statutes defining elements of crimes, but also to statues fixing sentences. *United States v. Batchelder*, 442

14

U.S. 114, 123, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979)." *Johnson v. U.S.*, 576 U.S. 591, 595, 135 S.Ct. 2551, 2557, 192 L.Ed.2d 569 (2015).

59.     To prove the point on vagueness of the life sentence statutes, the following are examples of various Tennessee counties and how the trial courts and the Tennessee Department of Correction have misinterpreted the same sentencing statutes.

60.     Plaintiff's judgment from the Carter County Criminal Court, lists "The offense is a Class X felony." The judgment does not list if the Plaintiff is a standard offender or other type.[1] However, the Tennessee Department of Correction's Initial Classification Summary, lists Plaintiff's sentence as "Judge Sentencing Act." It does not list a percentage or that the offense is a Class X. Plaintiff's Offender Sentence Letter lists Plaintiff's sentence as Class X.

61.     Inmate Alan Lawhorne's judgment from the Bradley County Criminal Court, lists "The offense is a Class X felony." "The defendant is a Range II offender." The defendant must serve 40% of his sentence before he is eligible for Release Classification Status.[2] Lawhorne's Offender Sentence Letter does not list any percentage. The Tennessee Department of Correction's Initial Classification Summary does not list if the sentence is Class X or Judge Sentencing Act. It does not list a percentage to serve.

62.     Inmate Larry Cauley's judgment from the Montgomery County Criminal Court, lists his sentence as a "felony" and "life."[3] There is nothing else listed on his judgment.

63.     Inmate William Ledford's judgment from the Bradley County Criminal Court, lists his sentence as a Class X felony. However, Tennessee Department of Correction's Initial

---

[1] Exhibit Number 1 – Plaintiff's judgment, Initial Classification Summary, and Offender Sentence Letter.
[2] Exhibit Number 2 – Alan Lawhorne's judgment, Offender Sentence Letter.
[3] Exhibit Number 3 – Larry Cauley's judgment and Initial Classification Summary.

Classification Summary lists his offense as a "Class X at 40%".[4] Ledford's Offender Sentence Letter does not list a percentage to be served.

64.     Inmate Robert Brewington's judgment from the Davidson County Criminal Court, lists his sentence as "life imprisonment" and "a standard offender, Range I". It also lists the offense as a Class X Felony.[5] However, Brewington's Initial Classification Summary lists his offense as Class X at 30%. His Offender Sentence Letter dose not list any percentage to be served.

65.     The trial courts across Tennessee were unable to have a standard adherence to the Class X Felonies Act of 1979 in completing the judgments due to the vagueness. How the trial court interprets the sentencing statutes is the way the court sentences each particular offender.

66.     After the trial court issues a judgment, then the Tennessee Department of Correction changes the sentences without approval from the court, to how they interpret the sentencing statutes instead of following court orders. The Department's processes and procedures are also contrary to statute and vary between one inmate's sentence as compared to another's sentence.

67.     The Class X Felonies Act of 1979 specifically states that all Class X sentences are determinate in nature. The Tennessee courts have carelessly held that there are no indeterminate sentences in Tennessee. The Tennessee Supreme Court stated that "the determinate sentence for a life sentence is sixty years. *Brown v. Jordan*, 563 S.W.3d 196, 200 (Tenn. 2018). "The Class X designation required that a sentence be served pursuant to certain conditions, including the sentence was to be 'determinate in nature,' '[n]ot be subject to reduction for good, honor or incentive or other sentence credit of any sort,' '[t]erminate or expire only after service of the entire sentence, day for day.' T.C.A. § 39-1-703 (1982)." "A life sentence was 'presumed to

_____

[4] Exhibit Number 4 – William Ledford's judgment and Initial Classification Summary, and Offender Sentence Letter.
[5] Exhibit Number 5 – Robert Brewington's judgment, Classification Summary, and Offender Sentence Letter.

be sixty (60) years. *Id.* § 39-2-501(d)(1) (1982)." *State v. Walker*, No. E2021-01115-CCA-R3-CD, 2022 WL 4475939 (Tenn. Crim. App. Sept. 27, 2022). Determinate day for day was deliberately imbedded into the life sentencing statutes by the General Assembly, and therefore has specific meaning. There is no question that Plaintiff's life sentence is a determinate sentence and the Defendant's processes and procedures are not adhering to statute.

68.     Since all state actors have interpreted the life sentence statues from 1979 through 1989 in various ways including the General Assembly issuing a clarification bill in 2021, supports the fact that the statues are vague and in violation of the Plaintiff's Fifth Amendment rights under the Due Process Clause of the Fourteenth Amendment and Eighth Amendment as it is incorporated into the Fourteenth Amendment of the United States Constitution.

## II.

**The Defendant's processes and procedures, as Director of Sentence Management Services in refusing to address Plaintiff's recalculation requests by nonresponse, evasive, and arbitrary answers violate the Due Process Clause of the Fourteenth Amendment and Eighth Amendment as it is incorporated into the Fourteenth Amendment of the United States Constitution.**

69.     The Defendant, as Director of the Tennessee Department of Correction's Sentence Management Services is engaging in a pattern and practice of violating the constitutional rights of Plaintiff and other inmates in the Tennessee Department of Correction's custody by detaining them at state and local correctional facilities past their release dates pursuant to the Civil Rights of Institutionalized Persons Act (CRIPA), 42 U.S.C. § 1979. Plaintiff has been in continuous incarceration within the Tennessee Department of Correction since November 5, 1988. The Defendant calculated a release eligibility date for the Plaintiff which he met in January, 2008. The Defendant's arbitrary processes and procedures have extended Plaintiff's incarceration fifteen

17

(15) plus years beyond his release status date, thereby denying him a meaningful opportunity for release.

70.     Plaintiff has sent numerous requests to the Defendant and Sentence Management Services concerning his sentence miscalculations. The only response Plaintiff receives is "Sentence law X has no expiration date." Such response is contrary to statute, because the Class X Felonies Act of 1979, Criminal Sentencing Reform Act of 1982, and the Tennessee Comprehensive Improvement Act of 1985 never states there is no expiration date. Plaintiff has requested a copy of the statute in which the Defendant relies on in her response, but never receives an answer. the Records Office did send a copy of Tenn. Code Ann. § 40-35-501 (2021) version, however this version does not pertain to Plaintiff's sentence.

71.     The Defendant's processes and procedures as Director of the Tennessee Department of Correction's Sentence Management Services are in violation of the Due Process Clause of the Fourteenth Amendment of the United States Constitution, and that these violations are pursuant to a pattern and practice of resistance to the full enjoyment of Plaintiff's constitutional rights. There is a reasonable cause to believe that the Defendant and Sentence Management Services routinely violate the constitutional rights of Plaintiff and other people in their custody by incarcerating them past their legal release dates. These violations are severe, systemic, and are both caused and perpetuated by serious ongoing deficiencies in the Defendant's unconstitutional processes, policies, procedures, and practices.

72.     Therefore, Plaintiff challenges Defendant's processes and procedures for questioning sentence calculations. "[A]s a general proposition, … the Eighth and Fourteenth Amendment may be implicated when a prisoner is detained beyond his jail sentence." *Beil v. Lake Erie Corr. Records Dep't*, 282 F. App's 362, 368 (6th Cir. 2008) (collecting cases). Thus, a prisoner

18

may state "a viable due process claim" by "challeng[ing his] state's procedures for addressing requests for sentence recalculations." *See Russell v. Lazar*, 300 F.Supp.2d 716, 722 (E.D. Wis. 2004).

73. Defendant maintains a time-consuming process for calculating sentences and release dates, which includes both manual calculations and automated processes using an antiquated patch-work of various data management systems. Defendant and Sentence Management Services lack standardized training or accountability processes to ensure all staff have the ability to make sentencing computations accurately.

74. Defendant, Candice Whisman, the former Director and Amber Phillips, present Director of Sentence Management Services have no formal training or legal degrees, yet are in charge of making determinations as to sentencing statutes, judgment orders, and court decisions affecting sentencing computations. Further, the courts rely on sentence computations submitted by the Defendant and Sentence Management Services when people challenge sentence calculation errors.

75. Plaintiff is denied Due Process when attempting to seek correction of miscalculations of his sentence. Procedures in place by Sentence Management Services insulates the Defendant and department from being held accountable and justifying their sentence calculations. When Plaintiff submits an Inmate Inquiry – Information Request through his counselors, the Defendant and Sentence Management Services very seldom respond. Majority of the time he never receives a response.

76. The Defendant has never posted Sentence Management Services' procedures to alert prisoners held in the Tennessee Department of Correction's institutions and county jails as to how to submit a request for sentencing issues. However, the Defendant expects those seeking to

19

question a sentencing issue to follow her strict procedures without releasing or posting her required procedures. The Defendant's *Sentence Management Services Procedures Manual* states:

> <u>Offender/Inmate Correspondence</u> All letters, requests, inquiries received from inmates in TDOC institutions will be returned with a cover memo to the warden specifying the correct procedures to use and the channels to follow to receive an answer.[6]

Instead of notifying the requester, the Defendant notifies the Warden of the facility. It should be the responsibility of the Defendant to inform the requester directly instead of sending her procedures memorandum to a third party.

77.     Given "'the importance and fundamental nature' of the individual's right to liberty," the Supreme Court has recognized that incarceration "for any purpose constitutes a significant depravation of liberty that requires due process protection.'" *See Foucha v. Louisiana*, 504 U.S. 71, 80 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992). These "due process protections extend to the right to timely release from incarceration." *Porter v. Epps*, 659 F.3d. 440, 445 (5th Cir., 211).

78.     Defendant Whisman and System Management Services' pattern and practice of depriving Plaintiff and other inmates in its custody of their Fourteenth Amendment right to timely release is the direct result of the numerous failures to adopt constitutional and functional processes, policies, and procedures; and to adequately train Sentence Management Services employees, despite knowing about these systemic deficiencies for at least forty-five years.

79.     When various law enforcement authorities file a detainer against an individual, the Defendant and Sentence Management Services fails to notify the individual in order to give that individual an opportunity to resolve the detainer. Once the person is ready to be released or considered for parole, Sentence Management Services' failure to notify the individual of the

---

[6] Page 29, Processing Inquiries and requests, 3. Procedures (a).

detainer prevents the person from being released, a meaningful opportunity for release, or thereby creating over-detention.

80.     Defendant Whisman and Sentence Management Services are liable for a constitutional violation when their policies or practices "causally result [ ]" in the violation. *Crittindon v. LeBlanc*, 37 F.4th 177, 186 (5th Cir., 2022). In examining causation, courts may properly consider how individual policies or practices interact with one another within the larger system, such that the harm caused by a particular policy or practice may be exacerbated or mitigated. *See M.D. by Stukenberg v. Abbott*, 907 F.3d. 237, 255 (5th Cir., 2018). A "policy or custom" can include a "policy of inaction"; in other words, Defendant Whisman and Sentence Management Services can be liable for a failure to adopt policy or procedure, and failure to train and supervise subordinate officials when that inaction results in a constitutional violation. *Connick v. Thompson*, 563 U.S. 51, 61-62, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011); *Crittindon*, 37 F.4th at 186.

81.     If Sentence Management Services cannot answer a request to their benefit or to justify their actions, the request goes unanswered. These problems have been inherent within Sentence Management Services since 1979, and continue to worsen each year. Such deficiencies of the Defendant and Sentence Management Services' processes and procedures are causing Plaintiff and other inmates to be incarcerated not only for an extra day beyond their release dates, but for years in the cases of those serving life sentences as in the Plaintiff's case.

82.     Defendant Whisman and Sentence Management Services are liable for Fourteenth Amendment violations when they act, or fail to act, with "'deliberate indifference,' in 'disregard [for]a known or obvious consequence of [their] action[s].'" *Crittindon*, 37 4th at 186; *also see Porter*, 659 F.3d at 446-47.

21

83.     Over-detention likewise carries numerous collateral harms to both incarcerated individuals and their families, including missed important family milestones, lost opportunities to say farewell to dying loved ones, lost or missed job opportunities, and diminished opportunities to fully re-integrate into society.

84.     Defendant's arbitrary processes and procedures are collaterally harming Plaintiff.

## III.

**Defendant's processes and arbitrary procedures in her application of the Class X sentencing statutes to some inmates and the exclusion of Plaintiff is in violation of his substantive due process rights of the Fourteenth Amendment and cruel and unusual punishment of the Eighth Amendment, and the Fourteenth Amendment's Equal Protection Clause.**

85.     Plaintiff was convicted of first degree murder, a Class X felony and sentenced to life on May 4, 1988. He was transferred to the Tennessee Department of Correction, classified as medium, and placed in a maximum security prison on May 6, 1988.

86.     On February 1, 1989, the Classification Board met with Plaintiff for release classification status evaluation. In the first step, Plaintiff was evaluated pursuant to:

> ... a class X felony shall be eligible for release classification status such date being conditioned on the prisoner's good behavior while in prison.

Class X Felonies Act of 1979, Section 20(h)(1).

87.     After Plaintiff met the criteria listed in Section (h)(1), he was then evaluated pursuant to Section 21(b) guidelines.

> Reclass classification is a privilege and not a right, and no person convicted of a class x felony shall be granted release classification statues if the authority finds that:

22

(1) there is a substantial risk that the person will not conform to the conditions of the release program;

(2) the release from custody at the time would depreciate the seriousness of the crime of which the person stands convicted or promote disrespect for the law;

(3) the release from custody at the time would have a substantially adverse effect on intuitional discipline; or

(4) the person's continued correctional treatment, medical care or vocational or other training in the institution will substantially enhance the person's capacity to lead a law abiding life when given release status at a later time.

88.     Once the Tennessee Department of Correction determined Plaintiff was not excluded by Section 21(b), he was eligible for the next step in the release classification status process. Plaintiff was then evaluated pursuant to the proviso of Section 22(a).

(a) When the authority determines that a person is eligible for release classification status, it shall, in its discretion place the person in one or more of the programs:

(1) transfer to a minimum security facility, work release center or to any appropriate program whose purpose is to assist in re-integrating persons into the community;

(2) vocational, educational or other programs within a correctional institution which permit, in proper circumstances, a limited period or supervised release not to exceed three (3) days at a time; or

(3) full-time supervised community release which shall be under such conditions as the authority may deem appropriate. The person shall then be supervised by a counselor as in the case of persons released pursuant to Tennessee Code Annotated, Section 40-3615.

89.     On February 1, 1989, the Tennessee Department of Correction determined, pursuant to the Class X Felonies Act of 1979, Section 22(a)(1), Plaintiff was eligible for release classification status at which time he was reclassed to minimum and transferred to a minimum security facility. Plaintiff was transferred from Brushy Mountain State Penitentiary to Tennessee

23

State Prison, and then to West Tennessee State Penitentiary, all were maximum security prisons. Plaintiff was then transferred from West Tennessee State Penitentiary to Lake County Regional Correctional Facility, a minimum security facility.

90.     While remaining at release classification status, Plaintiff has not only participated in various programming and educational programs, and continues to meet the conditions of good behavior as required by Section 20(h)(1).

91.     After Plaintiff meeting the plenary required statutory stipulations listed above and placed under Section 22(a)(1), the Defendant has refused to comply with the Class X Felonies Act of 1979 statutes and place Plaintiff under subsections (2) or (3) for the past thirty plus years.

92.     The Defendant is mandated to place Plaintiff's crime under the proper statute in accordance with following:

> A crime which occurs on or after July 1, 1982, and is otherwise classified as a class X felony shall be treated in all respects under the law as it existed prior to July 1, 1982.

Tenn. Code Ann. § 40-35-501(b) (1988).

93.     This statute is unequivocal in distinguishing between the terms *release eligibility date* and *parole*. The General Assembly differentiated the two terms and did not use them interchangeably as the Defendant's process uses them. Such use by the Defendant is in violation of state law, thereby violating Plaintiff's due process rights.

94.     The Defendant's processes and procedures violates the General Assembly's mandate, "Where the release eligibility date for a single offense …, is life, release eligibility on such sentence shall occur after service of thirty (30) years." Tenn. Code Ann. § 40-35-501 (1988). The Defendant's process in calculating Plaintiff's life sentence is in violation of this statute.

95.     The Defendant's processes and procedures do not adhere to,

24

Extensions in the release eligibility date provided for herein and in other sections of this chapter shall only be imposed following a hearing conducted in accordance with due process of law.

Tenn. Code Ann. § 40-35-501(f) (1988). In refusing to comply to the mandates of this statute, Defendant's processes and procedures violates Plaintiff's constitutional due process rights in that she has never afforded him any due process hearings prior to extending his thirty (30) year release eligibility date.

96.     The Defendant's processes and procedures also fail to follow the statutory mandates of:

(f) The release classification dated for a single life sentence shall be thirty (30) years unless otherwise increased pursuant to subsection (h) of this section.

The Class X Felonies Act of 1979, Section 20(f).

97.     Defendant's own procedures manual states, "A life sentence conviction with a date of offense after 5-6-73 to 11-1-89 is computed at 30 years TTS[7], and no expiration."[8] In the updated version of the manual, the Defendant writes, "A life sentence conviction with a date of offense after 5-6-73 to 11-1-89 is computed at 30 years TTS (can reduce with credits earned) and no expiration."[9] The General Assembly has never defined a Class X life sentence as not having an expiration date.

98.     The statutory provisions as well as Defendant's manual create a liberty interest in mandating the Defendant to apply the above statutory provisos upon Plaintiff meeting the criterion of each conditional stipulation.

---

[7] "TTS" means "Time to Serve" pursuant to the definitions in Defendant's Sentence Services Procedures Manual for Record Offices, State of Tennessee Department of Correction, September 2012, page 8.
[8] Sentence Services Procedures Manual for Record Offices, State of Tennessee Department of Correction, September 2012, page 17.
[9] Sentence Services Procedures Manual for Records Offices, State of Tennessee Department of Correction, 2016, page 57.

99. Plaintiff is further being deprived his substantive due process rights of the Fourteenth Amendment to statutory mandated prison programming, calculation of release classification status, meaningful opportunity for release, and his reintegration into society.

100. Plaintiff is seeking an injunction against Defendant's use of unconstitutional processes and procedures in applying the above statutory mandates.

101. Plaintiff further moves this Court for a declaratory order directing Defendant to create a processes and procedures to protect Plaintiff's interests and sufficiently embraces the statutory mandates within Fourteenth Amendment and to entitle him to those minimum procedures appropriate under the circumstances as required by the Due Process Clause to insure the state-created right is not arbitrarily abrogated.

102. This type of relief would not necessarily affect the duration of Plaintiff's sentence, nor would it allow him to walk free before his sentence expires, because Plaintiff remains in the control and custody of the Tennessee Department of Correction as required by Section 22(a)(3), for the remainder of his sentence.

**IV.**

**Defendant's calculation procedures and processes used to deny Plaintiff a state-created determinate sentence is in violation of his substantive due process rights of the Fourteenth Amendment and cruel and unusual punishment of the Eighth Amendment.**

103. Plaintiff was convicted of murder in the first degree, a Class X felony. "All class X felonies shall … be determinate in nature." Class X Felonies Act of 1979, Section 3. Plaintiff's sentence is a Class X felony.

104. According to Tennessee statute, "there are no indeterminate sentences. Sentences for all felonies and misdemeanors are determinate in nature." Tenn. Code Ann. § 40-

26

35-211(2) (2018). Therefore, there is no question that Plaintiff's sentence is a determinate sentence.

105.    In the 1982, Tennessee Code Annotated legislative terms and definitions, App'x. XXI, the legislators defined a determinate sentence as: "A sentence for a fixed length of time rather than for an unspecified duration — Also termed *definite sentence; definitive sentence; fixed sentence; flat sentence; straight sentence*."

106.    The Tennessee Supreme Court, in answering a certified question from the Sixth Circuit Court of Appeals stated, "The determinate sentence for a life sentence is sixty years, as set forth in Tennessee committed before July 1, 1995." *Brown v. Jordan*, 563 S.W.3d 196, 200 (Tenn. 2018). There is no question that all determinate life sentences in Tennessee has a specific number of years to serve.

107.    The Defendant refuses to adhere to the mandate that,

> Every person sentenced to a determinant sentence and confined in a state prison, after having served a period of time equal of one half (½) of the sentence imposed by the court for the crime for which the person was convicted.

Tenn. Code Ann. § 40-28-115(b)(1). Plaintiff was sentence by the trial court to life. Class X life sentences have an end date in that, "all class X felonies shall … terminate or expire, day for day." Class X Felonies Act of 1979, Section 3(3); and "All class X felonies shall: be determinate in nature" Tenn. Code Ann. § 39-1-703 (1982), The Class X Felonies Act of 1979, Section 3. The Defendant's process does not adhere to the dictates of Tenn. Code Ann. § 40-28-115(b)(1).

108.    The Tennessee General Assembly mandated,

> Where the release eligibility date for a single offense … or the sentence is life, release eligibility on such sentence shall occur after service of thirty (30) years.

Tenn. Code Ann. § 40-35-501(f) (1988 Supp.), Tennessee Sentencing Reform Act of 1982. This Section further holds:

> The release eligibility date provided for in this section shall be eligible for release status; such date shall be conditioned on the defendant's good behavior.

Tennessee Sentence Reform Act of 1982, Tenn. Code Ann. § 40-35-501(h). The Defendant has not applied Tenn. Code Ann. § 40-28-115(b)(1) to Plaintiff's sentence. The Defendant's process is creating an adverse effect which is arbitrary to the above statute and thereby, denying him a meaningful opportunity for release.

109.     Plaintiff has a state-created liberty interest of his determinate release eligibility status calculation being thirty (30) years minus the accrued 6800 time reduction credits awarded by the Tennessee Department of Correction. The Defendant is violating state law with her arbitrary and unconstitutional processes and procedures, thereby inflicting additional punishment by holding Plaintiff past his 30-year release eligibility status date pursuant to Tenn. Code Ann. § 40-35-501(f). Such process utilized by the Defendant is in violation of the Due Process Clause of the Fourteenth Amendment and cruel and unusual punishment of the Eighth Amendment of the United States Constitution.

110.     Moreover, Plaintiff has a state-created liberty interest in being released at the end of his term of imprisonment. When the state itself creates a statutory right to release from prison, the state also creates a liberty interest and must follow minimum due process appropriate to the circumstances to ensure that liberty is not arbitrarily abrogated. The Defendant's processes and procedures fall far short of any due process to protect at best, Plaintiff's minimum due process.

## V.

**Defendant's processes and procedures in calculating Plaintiff's earned time reduction credits are unconstitutional and violates his substantive due process rights of the Fourteenth Amendment, cruel and unusual punishment of the Eighth Amendment, and the Fourteenth Amendment's Equal Protection Clause.**

111.     Tenn. Code Ann. § 40-28-129 dictates "the department of correction shall be responsible for calculating the sentence expiration date and the earliest release date of any felony offender sentenced to the department of correction... ."

112.     Sentence Management Services is a subdivision of the Tennessee Department of Correction and thereby, is responsible for all sentence calculations including, but not limited to time reduction credits.

113.     Since the Defendant is director of Sentence Management Services, she is responsible for the calculation of Plaintiff's sentence pursuant to the various statutes regulating sentences.

114.     As director, the Defendant is responsible for ensuring all Sentence Management Services employees are using constitutionally valid processes and procedures in the calculation of sentence credits.

115.     Defendant, in her official capacity is responsible for calculating Plaintiff's expiration date and earliest release date pursuant to Tenn. Code Ann. § 40-28-129. Defendant is further responsible for applying the time reduction credits accrued by Plaintiff to his expiration date and release eligibility date as mandated by Tenn. Code Ann. § 41-21-236(a)(8)(b).

116.     "Each inmate who exhibits good institutional behavior or who exhibits satisfactory performance within a program may be awarded time credits toward the sentence imposed." Tenn. Code Ann. § 41-21-236(a)(2)(A).

117. "It is the legislative intent that this credit be implemented by the department in a manner that maximizes the potential of prisoners who will return to the community to become working and productive members of society." Tenn. Code Ann. § 41-21-236(a)(B)(ii).

118. Plaintiff is eligible to earn time reduction credits pursuant to Tenn. Code Ann. § 41-21-263(a)(2)(A) on a monthly basis under the authority of subsection (a)(8)(c)(2), which states, "all persons who committed Class X felonies on or after December 11, 1985, shall be eligible for sentence reduction credits authorized by this section."

119. Pursuant to Tenn. Code Ann. § 41-21-236(a)(2)(1), Plaintiff has earned and continues to earn eight (8) days per month for good institutional behavior and eight (8) days per month for satisfactory program performance for a monthly total of sixteen (16) days.

120. Since May 4, 1988 through March 9, 2024, the Tennessee Department of Correction has awarded Plaintiff 3382 days of behavior credits and 3418 days of program credits for a total of 6800 days of time reduction credits.

121. Even though 6800 days of time reduction credits have been awarded by the Tennessee Department of Correction to Plaintiff, the Defendant has calculated only 3728 of those accrued days into Plaintiff's sentence. The Defendant has developed an arbitrary process and has deliberately decided not to calculate the remaining accrued 3072 days of time reduction credits to his sentence.

122. A good case in point, inmate Cory Cotham, Jr. sent and Inmate Inquiry – Information Request[10] to Sentence Management Services concerning his sentence credits not being calculated into his sentence. Sentence Management Services responded, "You are receiving credits by law. Per your sentence you have nothing to apply them to." If Cotham is receiving his credits

---

[10] Exhibit Number 6 – Inmate Inquiry – Information Request of Cory Cotham, Jr.

by law, then reason would be that the credits should be applied to the expiration of sentence as mandated by law.

123. "An inmate may be deprived of those sentence credits previously awarded pursuant to this section only for the commission of any major infraction designated by the department as a Class A disciplinary offense." Tenn. Code Ann. § 41-28-236(a)(5). Plaintiff has never received any Class A disciplinary offenses since his incarceration on November 5, 1987.

124. Furthermore, the "Extension in release classification status eligibility date provided herein shall only be imposed following a hearing conducted in accordance with due process of law." Class X Felonies Act of 1979, Section 20(h)(3). The Tennessee Department of Correction has never conducted a due process of law hearing to take any of Plaintiff's accrued time reduction credits to extend his thirty (30) year reclassification status date.

125. The Tennessee Department of Correction's TOMIS[11] database shows that the Tennessee Department of Correction has awarded Plaintiff 6800 time reduction credit days and continues to award both behavior and program credits of sixteen (16) days per month in accordance to Tenn. Code Ann. § 41-21-236(a)(2)(1).

126. The Defendant's unconstitutional process is denying Plaintiff's due process rights in refusing to properly calculate all accrued time reduction credits as mandated by Tenn. Code Ann. § 41-21-236(A)(8), "this section shall be referred to as inmate sentence reduction credits and shall affect release eligibility and sentence expiration dates... ."

127. Plaintiff is not seeking restoration of time reduction credits, because he has never lost them by disciplinary, due process, or any other means. The Defendant is simply not applying them to Plaintiff's sentence as required by statute.

---

[11] Tennessee Offender Management Information System

31

128. Calculating accrued time reduction credits is not a speedier release or shorter duration as pertaining to this case. Plaintiff complains of the process and procedures the Defendant uses in refusing to calculate those accrued time reduction credits into his sentence. *See Wilkinson v. Dotson*, 544 U.S. 74, 78, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005); *Wershe v. Combs*, 763 F.3d 500, 504 (6th Cir. 2014); *Synder v. Hill*, 878 F.3d 193, 209-10 (6th Cir. 2017). "An award of good time credit does not affect the length of a court-imposed sentence, but rather, it is an administrative award 'to provide an incentive for prisoner to 'comp[y] with institutional disciplinary regulations.' 'Such credits may be revoked at any time before the date of a prisoner's release.'" *Bear Cloud v. State of Wyoming*, 334 P.3d 132, 2014 WY 113, n. 4 (WY 2014); quoting *Pepper v. United States*, 560 U.S. 476, 480, 131 S.Ct. 1229, 1248, n. 14, 179 L.Ed.2d 196 (2011) (quoting *Barber v. Thomas*, 560 U.S. 474, 482, 130 S.Ct. 2499, 2505, 177 L.Ed.2d 1 (2010)).

129. The Defendant's formula and process of denying the application of Plaintiff's accrued time reduction credits runs afoul of the Due Process Clause of the Fourteenth Amendment because it constricts Plaintiff's opportunity for a meaningful release, and thereby made more onerous the punishment of Plaintiff. Defendant's cancellation of provisional time reduction credits has the effect of increasing Plaintiff's punishment against the Due Process Clause of the Fourteenth Amendment, and in violation of state statute.

130. Plaintiff moves this Court for ancillary relief and otherwise proper injunction enjoining the prospective enforcement of invalid and unconstitutional processes, policies, and procedures utilized by the Defendant's arbitrary, and indifferent actions in calculating time reduction credits properly awarded by the Tennessee Department of Correction and accrued by Plaintiff in accordance with Tenn. Code Ann. § 41-21-236.

131.     The Tennessee General Assembly, having created the right to time reduction credits, and itself, recognizing that its deprivation is a sanction authorized for major misconduct only; the Plaintiff's interest has real substance and is sufficiently embraced by the Due Process Clause to ensure this state-created right is not arbitrarily abrogated. *See Wolff v. McDonnell*, 418 U.S. 539, 577, 94 S.Ct. 2963, 41 L.Ed.2d 935, O.O.2d 336 (1994). Plaintiff seeks injunctive relief to protect his Due Process Clause rights from violation by Defendant's arbitrary processes, policies, and procedures used in calculating his statutorily awarded and accrued time reduction credits.

132.     Plaintiff also seeks injunctive relief directing the Defendant to implement constitutional processes, policies, and procedures to comply with the Due Process Clause.

133.     Further,  Plaintiff seeks injunctive relief directing the Defendant to implement a new sentence calculation conducted under constitutionally proper procedures and an injunction ordering the Defendant to comply with constitutional due process in the future.

## VII.

**Defendant's unconstitutional conduct in calculating Plaintiff's sentence versus other similarly situated inmates is in violation of Plaintiff's Fourteenth Amendment's Equal Protection Clause, and the Due Process Clause of the Fourteenth Amendment, and cruel and unusual punishment under the Eighth Amendment.**

134.     Plaintiff has been incarcerated and continuously serving his life sentence since November 5, 1987.

135.     Pursuant to Plaintiff's TOMIS[12] Offender Sentence Letter dated June 9, 2023, Plaintiff has a parole release eligibility date, however he does not have an expiration or release classification status date.

---

[12] Tennessee Offender Management Information System.

136.    On May 22, 2023, Plaintiff sent an Inmate Inquiry – Information Request form[13] to Sentence Management Services "requesting SMS to calculate and expiration date on my life sentence pursuant to TDOC Policy 505.01(VI)(K5) (July 1, 2018). This is to include my sentence credits."

137.    On June 5, 2023, the Records Office responded, "Law states must be after 1995 for exp. date. your case is from 1988." The 1995 law did not define the expiration for a life sentence. This was an amendment to the Tennessee Sentencing Reform Act of 1989.

138.    Then on June 9, 2023, Amber Phillips, the new Director for Sentence Management Services responded, "You sentence does not qualify for an expiration date. You can look up T.C.A. 40-35-501 in the law library to review."

139.    First, Tennessee does not have a law that states Plaintiff's life sentence must be after 1995 before for an expiration date can be calculated. To further prove that Sentence Management Service's response is not true, inmate Jonathan Stephenson committed first degree murder on December 3, 1989. He was sentenced to life without parole and conspiracy to commit first degree murder. The sixty (60) year sentence for conspiracy to commit first degree murder was to run concurrent with the life without parole sentence. Sentence Management Services calculated his sentences with a full expiration date, expiration date, and a release eligibility date.[14] Stephenson is also receiving time reduction credits calculated into his sentence. Stephenson's sentence is prior to 1995. This is a direct contradiction to the Records Office and Amber Phillip's claim that the "law states must be after 1995." This proves Sentence Management Services' response to Plaintiff is simply not true.

---

[13] Exhibit Number 7, Plaintiff's Inmate Inquiry – Information Request.
[14] See Exhibit Number 8 – Offender Sentence Letter of Jonathan Stephenson.

140.     Furthermore, Tenn. Code Ann. § 40-35-501 has never stated that any life sentence does not qualify for an expiration date, especially Plaintiff's sentence.

141.     The Defendant and Sentence Management Services in following the Defendant's policy, custom, and process has refused to calculate Plaintiff's sentence with a statute-mandated expiration date or release classification status date pursuant to Tenn. Code Ann. § 40-28-129. In replying to Plaintiff's inmate information requests, Defendant states that Class X life sentences do not qualify according to law, for an expiration date or release classification status date. However, Defendant never quotes which statute she relies on for this response.

142.     In affidavits to various courts, the Defendant and her staff have sworn that inmates who are serving a life sentence consecutive to another sentence must expire the life sentence before sentence credits can be applied to the consecutive sentence. The various state courts agree with the Defendant's analogy.

143.     For example, Defendant Whisman informed inmate Howard concerning his consecutive sentences that his "sentence reduction credits could not be applied to the twenty-five year sentence until the life sentence expired." *Howard v. Tennessee Department of Correction*, No. M2016-00337-COA-R3-CV, 2016 WL 7048838, at *2 (Tenn. Ct. App. 2016), perm. app. denied, Feb. 27, 2017.

144.     Inmates with another sentence consecutive to their Class X life sentence are treated differently than the Plaintiff. Examples of the Defendant's inconsistent application of sentence calculations are listed below.

145.     Inmate Alan Lawhorn, TDOC ID Number 00131956, was sentenced to two Class X life sentences for second degree murder on May 19, 1988. The life sentences were ordered to be served consecutive to one another.

35

146. Upon meeting his release eligibility date on November 8, 2008, Lawhorne began receiving his statutory time reduction credits on his second Class X life sentence.[15]

147. Inmate Larry G. Cauley, Jr., TDOC ID Number 00146889, was sentenced to two Class X life sentences for first degree murder on July 13, 1988. The life sentences were ordered to be served consecutive to one another. Upon meeting his release eligibility date on April 8, 2009, Cauley began receiving his statutory time reduction credits on his second Class X life sentence.[16]

148. Inmate James K. Cauley, TDOC ID Number 00129375, was sentenced to two Class X life sentences for first degree murder on October 19, 1988. The life sentences were ordered to be served consecutive to one another. Upon meeting his release eligibility date on October 21, 2009, Cauley began receiving his statutory time reduction credits on his second Class X life sentence.[17]

149. Inmate Billy E. Anglin, TDOC ID Number 00226110, was sentenced to one twenty-five (25) year sentence for attempted first degree murder to run consecutive to his one life sentence for first degree murder on June 26, 1991. In an inmate inquiry response dated April 28, 2014, Tennessee Department of Correction stated that Anlin had to "finish up the first degree murder charge" and then he "will have a (SED) Sentence Effective Date on the ATT-First Degree Murder." Upon meeting his expiration date on his life sentence, Anglin began receiving his statutory time reduction credits on his twenty-five (25) year sentence.[18]

150. Inmate Jonathan W. Stephenson, TDOC ID. Number 00140145, committed first degree murder on December 3, 1989, and was sentenced to life without parole. Stephenson

---

[15] Exhibit Number 2 – See Alan Lawhorn's TOMIS Offender Sentence Letter.
[16] Exhibit Number 3 – See Larry Cauley's TOMIS Offender Sentence Letter.
[17] Exhibit Number 9 – James Cauley's TOMIS Offender Sentence Letter.
[18] Exhibit Number 10 – Billy Anglin's Inmate Inquiry – Information Request and TOMIS Offender Sentence Letter.

also committed conspiracy to committed first degree murder on December 3, 1989, and was sentenced to sixty (60) years at sixty percent (60%).

151.    On Stephenson's TOMIS Offender Sentence Letter dated January 9, 2001,[19] the Defendant listed and expiration date of November 2, 2050. She also awarded Stephenson time reduction credits in which Defendant calculated into his expiration date. The expiration date had backed down to September 17, 2047.

152.    Not only did Defendant give Stephenson an expiration date, she also calculated a release eligibility dated of September 17, 2023.

153.    Plaintiff's claim of governmental liability for unconstitutional conduct shows that the alleged conduct is the result of a policy, statement, decision, and custom promulgated by the Tennessee Department of Correction's Sentence Management Services and its agent, Defendant Whisman. *Monell v. Dep't. of Social Services*, 436 U.S. 658, 690-91, 98 S.Ct. 2018 (1977). The direct causal link between state statute and Defendant's refusal to calculate Plaintiff's accrued time reduction credits when the same type credits are awarded to other inmates are in violation of Plaintiff's constitutional rights. *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1147 (1989); *Burgess v. Fisher*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell*, 436 U.S. at 693); *Regets v. City of Plymouth*, 568 F. App'x 380, 393 (6th Cir. 2014).

154.    There is no question that the Defendant uses her processes and procedures to the benefit of some inmates and arbitrary towards others such as Plaintiff.

155.    The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny any person within its jurisdiction the equal protection of the laws," which is

---

[19] See Exhibit Number 8 – Jonathan Stephenson's TOMIS Offender Sentence Letter.

essentially a direction that all persons similarly situated should be treated alike. *U.S. Const., Amendment, XIV.*

156. The Defendant's process and policy in calculating statutory awarded time reduction credits to other inmates with the exact same types of life sentences and excluding Plaintiff from the same type of calculation is in violation of Plaintiff's Equal Protection rights.

157. The Defendant is treating Plaintiff disparately as compared to similarly situated inmates, and that such disparate treatment burdens his fundamental rights. Such treatment has no rational basis, except the Defendant is intentionally refusing to adhere to state statutes.

158. Defendant Whisman stated in her affidavit in *Howard*, that a person, when serving consecutive sentences must expire the first sentence prior to receiving time reduction credits on the next sentence.

159. Pursuant to the Defendant's own affidavit, the above named inmates had to expire their first life sentence before they could receive time reduction credits on the consecutive sentence.

160. Holding to the Defendant's affidavit and actions pertaining to the above calculations on the above named inmates' sentences, their sentences were calculated correctly pursuant to statute. However, the Defendant is refusing to calculate Plaintiff's sentence in the same manner. The Defendant is thereby violating Plaintiff's equal protection rights and inflicting cruel and unusual punishment.

## VII.

**Plaintiff moves this Court to apply the rule of lenity to the ambiguous construction of the Class X Felonies Act of 1979, in favor of Plaintiff's argument.**

38

161. The United States Supreme Court has long used the rule of lenity to construe ambiguous criminal statutes in favor of a plaintiff. *United States v. Bass*, 404 U.S. 336, 347-48, 92 S.Ct. 515, 30 L.Ed. 488 (1971). There is a compelling argument that the Class X Felonies Act of 1979 and Tenn. Code Ann. § 40-35-501 (1982) should be read in the Plaintiff's favor without resorting to the rule of lenity. However, if any residual doubts remain, the rule of lenity clarifies those doubts and dictates that a sentence of life under the Act of 1979 and § 40-35-501 mandates the sentence to be thirty years day-for-day release classification status.

162. The phrase "life sentence" as used in the Tennessee statutes is ambiguous. Although the term "life" connotes some form of incarceration, "a sentences of life imprisonment it is not an indefinite amount of time." *Blake v. State*, No. W2015-01423-CCA-R3-PC, 2016 WL 4060696, at *11 (Tenn. Ct. App. July, 2016), perm. app. denied (Tenn. 2016). This ambiguity is demonstrated by a myriad of Tennessee court opinions, the Tennessee Attorney General's opinions, and federal district court opinions interpreting the Class X Felonies Act of 1979 and Tenn. Code Ann. § 40-35-501, thereby reaching conflicting conclusions. Faced with dueling interpretations "the tie must go to the" Plaintiff. See *United States v. Santos*, 553 U.S. 507, 514, 128 S.Ct. 2020, 170 L.Ed.2d 912 (2008). (plurality opinion).

163. The rule of lenity should be given special force in cases where an ambiguous statute such as Tenn. Code Ann. § 40-35-501 imposes a mandatory sentence. Because of conflicting interpretations in the federal and Tennessee courts, asymmetric punishments for the same conduct may result. For example, Defendant Whisman calculating sentence dates differently for those with a single life sentence versus those with two consecutive life sentences. Moreover, the principles supporting the rule of lenity – fair notice and separation of powers – are heightened where, as in this case, severe mandatory sentences result from a vague statutory phrase.

39

164. A more definitive interpretation is especially important for statutes mandating life sentencing terms. With life sentences, any ambiguity in discerning the Tennessee General Assembly's intentions should trigger the rule of lenity in light of the drastic reductions in liberty at stake. Clarity also helps prevent arbitrary and inconsistent application of the statutory penalties for people who commit similar acts.

165. In light of the severe punishment, Defendant Whisman should not interpret the length of a life sentence when such an interpretation can be based on no more than a guess as to what the Tennessee General Assembly intended. *See United States v. Granderson*, 511 U.S. 39, 114 S.Ct. 1259, 127 L.Ed.2d 611 (1994). Such arbitrary results are particularly problematic where a vague statute provides the basis for a very substantial sentence increase.

166. The rule of lenity dictates that "where text, structure, and history fail to establish that the Government's position is unambiguously correct," ambiguity should be resolved in the Plaintiff's favor. *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 221-22, 735 S.Ct. 227, 97 L.Ed. 260 (1952), commanding that in such cases, "the tie must go to the defendant." *United States. v. Santos*, 553 U.S. 507, 554, 128 S.Ct. 2020, 170 L.Ed.2d 912 (2008).

167. In the case at bar, Plaintiff urges this Court to apply the rule of lenity and establish that due to the vagueness of Tennessee's life sentence statutes, Defendant Whisman must establish the release classification status date for 1979-1989 Class X life sentences as thirty (30) years.

## **PRAYER FOR RELIEF**

With all premises considered, this Court is moved to grant the following relief:

A. Allow this Complaint to proceed as a class action;

B. Reappoint counsel to represent the class;

40

C.    Issue injunctive and declaratory relief granting that the Class X life sentence statutes from 1979 – 1989 are vague as applied to Plaintiff and respective class;

D.    Issue injunction and declaratory relief to the Defendant directing her to draft and implement constitutional processes and procedures for responding to inmate's questions regarding sentence calculations as applied to Plaintiff and respective class;

E.    Issue injunctive and declaratory relief directing the Defendant to immediately stop using unconstitutional processes and procedures in calculating sentences, sentence credits, and various other calculations on life sentences, and to implement constitutionally sound and processes and procedures which sufficiently embraces the statutory mandates within the Fourteenth Amendment which entitles Plaintiff to those minimum processes and procedures appropriate under the circumstances as required by the Due Process Clause to insure the state-created right is not abrogated;

F.    Issue injunctive and declaratory relief directing the Defendant to implement constitutional processes and procedures to adhere to the mandates of the state-created liberty interest to have Plaintiff's Class X life sentence calculated in accordance with the determinate sentence mandates pursuant to Tenn. Code Ann. § 40-35-211(2) (2018).

G.    Issue injunctive and declaratory relief directing the Defendant to implement constitutional procedures and processes to adhere to the mandates of the state-created liberty interest to have Plaintiff's accrued sentence credits be calculated in accordance with the mandates of Tenn. Code Ann. § 41-21-236.

H.    Plaintiff moves this Court for ancillary relief and otherwise proper injunction enjoining the prospective enforcement of invalid and unconstitutional processes, policies, and procedures utilized by the Defendant's arbitrary, and indifferent actions in calculating time

41

reduction credits properly awarded by the Tennessee Department of Correction and accrued by Plaintiff in accordance with Tenn. Code Ann. § 41-21-236.

I.    Plaintiff seeks a new sentence calculation conducted under constitutionally proper procedures and an injunction ordering the Defendant to comply with constitutional due processes in the future.

J.    A finding that the relevant sentencing calculation statutes as describe herein to be unconstitutionally vague and therefore unenforceable as applied to Plaintiff.

K.    Order Defendant and all relevant Tennessee agencies and departments to immediately implement constitutionally sound policies and practices, to timely, efficiently and accurately process sentence calculation methods that conform to the requirements of the United States Constitution.

L.    Plaintiff moves this Court to apply the Rule of Lenity in favor of the Plaintiff concerning the recalculation of all Class X life sentences.

M.    Issue an injunction directing the Tennessee Department of Correction to create a director's position which mandates that the Director for Sentence Management Services has the appropriate college education and training in understanding and adhering to the dictates of the various sentencing statutes.

N.    Issue an injunction directing the Tennessee Department of Correction to completely revamp Sentence Management Services' processes and procedures used in the calculation of prisoners' sentences, including an updated computer/database system capable of accurately calculating and tracking such sentences.

O.    Order the Defendant to pay all attorney fees and court costs associated with this Complaint; and

P.      Any and all further relief this Court may deem appropriate.

Submitted: June 3, 2024.

Ricky Harris
TDOC ID Number 00121445
1045 Horsehead Lane
Pikeville, TN 37367

## DECLARATION OF VERIFICATION

Pursuant to 28 U.S.C. § 1764, I declare that the facts stated within this Complaint under 42

U.S.C. § 1983 for injunctive and declaratory relief under the penalty of perjury are true and correct

to the best of my knowledge, information, and belief.

Signed this the 3rd day of June, 2024.

Ricky Harris

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the forgoing has been filed by placing it in the
BCCX institutional mailbox, U.S. mail, postage prepaid to:

> John R. Glover
> Assistant Attorney General
> PO Box 20207
> Nashville, TN 37202

on this the 3rd day of June, 2024.

Ricky Harris

44

Ricky Harris
TDOC ID No. 00121445
1045 Horsehead Lane
Pikeville, TN 37367-7432



RECEIVED
JUN 0 7 2024
U.S. District Court
Middle District of TN

Ms. Lynda M. Hill
District Court Clerk
719 Church St. Ste. 1300
Nashville, TN 37203

THE DEPARTMENT OF CORRECTIONS
BCCX HAS NEITHER INSPECTED
NOR CENSORED AND IS NOT
RESPONSIBLE FOR THE CONTENTS

Received

JUN 0 3 2024

BCCX Mailroom
Outgoing