# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| RICKY HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | NO. 3:19-cv-00174 |
| v. | ) | |
| | ) | JUDGE RICHARDSON |
| CANDACE WHISMAN, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>**MEMORANDUM OPINION AND ORDER**</u>

Pending before the Court[1] is a Report and Recommendation (Doc. No. 185, "R&R") of the Magistrate Judge, wherein the Magistrate Judge recommends that this Court grant the motion to dismiss (Doc. No. 177, "Motion") filed by Defendant and dismiss this action in its entirety. Plaintiff, Ricky Harris, filed objections to the R&R (Doc. No. 189, "Objections"), [2] to which Defendant, Candace Whisman,[3] filed a response (Doc. No. 190). Unsurprisingly, Defendant filed no objections, so the only pending objections are objections of Plaintiff.

---

[1] Herein, "the Court" refers to the undersigned District Judge, as opposed to the Magistrate Judge who authored the R&R.

[2] Depending on the context, "Objections" herein could refer either to the document (Doc. No. 189) itself or to objections contained therein (i.e., the objections to the R&R contained within the "Objections").

[3] Plaintiff spells Defendant's name as "Candice Whisman." (Doc. No. 164 at 1). But the Court takes judicial notice of an affidavit filed in an unrelated case in this Court reflecting that the proper spelling is "Candace Whisman." *See King v. Hall*, No. 2:18-cv-00096, Doc. No. 26-1 (M.D. Tenn. July 17, 2019). The Court uses the proper spelling of Defendant's name—i.e., Candace Whisman—in the case caption.

The Court has reason to believe that Candace Whisman, who was sued only in her official capacity as Director of Sentence Management Services for the Tennessee Department of Correction, (Doc. No. 164 at 6), has been replaced in her official position by Amber Phillips. But it appears that neither party has requested that Amber Phillips be substituted in for Candace Whisman, and so the Court leaves intact the designation of Candace Whisman as Defendant.

As and for the reasons stated herein, the Court adopts in part and declines to adopt in part the R&R, grants the Motion, and dismisses this action in its entirety.

BACKGROUND

In his Objections, Plaintiff does not set forth any real dispute regarding the facts as set forth by the Magistrate Judge in the R&R. As such, the Court adopts that factual and procedural background in its entirety and includes it here for reference:

> Tennessee inmate Ricky Harris and others filed this 42 U.S.C. §1983 action against defendant Candace Whisman, former Director of Sentence Management Information Services for the Tennessee Department of Corrections (TDOC), and others, asserting that Tennessee's statutes regarding life sentences and calculating sentence credits are unconstitutionally vague in violation of their rights to due process, and that the TDOC's process for addressing a prisoner's request to recalculate his sentence violates the due process clause and the Eighth Amendment. Docket No. 36, generally. Plaintiff sues Whisman in her official capacity only. Plaintiff has been assisted by court-appointed counsel during periods of this litigation but is currently proceeding pro se. Harris, sole remaining plaintiff [in this particular case], alleges the following in his 46-page, second amended complaint. He is currently housed at Bledsoe County Correctional Complex. Docket No. 164, p. 7. Whisman had broad responsibility for calculating sentences for TDOC prisoners and setting and overseeing those sentence calculation procedures. *Id.* at p. 6.

> On March 1, 1988, Harris was convicted of first-degree murder, and on May 4, 1988, was sentenced to life in prison with the possibility of parole. Docket No. 164, pp. 9-10, 22, Docket No. 164-1, p. 3. Plaintiff alleges he was tried and convicted under the Class X Felonies Act of 1979, Criminal Sentence Reform Act of 1982, Judge Sentencing Act of 1982, and the Tennessee Comprehensive Improvement Act of 1985. *Id.*, p. 10. He alleges that Tennessee relies on a web of sentencing and parole statutes, many of which incorporate each other by reference. *Id.* He alleges that none of the four Acts state with sufficient clarity the consequences of violating a given criminal statute. *Id.*, p. 10.

> Plaintiff alleges that he has asked Whisman to calculate or recalculate his sentence, but she refused to do so. Docket No. 164, p. 13. Plaintiff alleges that Whisman has failed to properly calculate life sentence credits to reduce the expiration dates of his sentence and failed to list expiration dates on his inmate sentence summary sheet. *Id.*, at pp. 5, 13.

> Plaintiff alleges that Whisman has calculated his sentence length – as an individual sentenced to life in prison – and calculated sentence credits pursuant to

a statutory system that is unconstitutionally vague in violation of the Due Process Clause of the Fourteenth Amendment. Docket No. 164, pp. 11-14. He further alleges that the TDOC, through Whisman, has not maintained an adequate process for addressing a prisoner's requests to recalculate his sentence in violation of the Fourteenth Amendment's Due Process Clause and the Eighth Amendment's prohibition against cruel and unusual punishment. *Id.*, at p. 17-22. He alleges there is no question that his life sentence is a determinate sentence, and that Defendant's processes and procedures are not adhering to statute. *Id.*, p. 17.

For relief, Plaintiff seeks, among other things, declaratory and injunctive relief that would require Defendant to recalculate his sentence to include newly applied sentencing credits. *Id.*, pp. 40-43.

Defendant now moves to dismiss on the basis that habeas corpus relief is the exclusive remedy for Plaintiff's claim. Docket No. 178. Defendant contends §1983 is not the appropriate vehicle for an inmate to challenge his sentence calculation or request sentencing credits. Defendant argues that any such requests must first be made pursuant to the procedures set forth in the Uniform Administrative Procedures Act ("UAPA"), [Tenn. Code Ann. § 101 *et seq.*], which Plaintiff has failed to do, specifically, Plaintiff has not previously sought a declaratory order from the state Chancery Court.

(Doc. No. 185 at 1-3 (footnote omitted)).

The Magistrate Judge summarized Plaintiff's position in this case as follows:

Plaintiff challenges both the calculation of his sentence and the application of sentencing credits. The gist of his complaint is the specific amount of time he believes he must serve. Docket No. 164, pp. 1115. Plaintiff contends the TDOC has miscalculated his sentence because they have neither issued him an appropriate expiration date, *Id.* pp. 12, 16, 18, 25, 27, 29, 31, 33-34, nor . . . applied the appropriate credits to his sentence. *Id.* pp. 29-30, 38.

(*Id.* at 4). To complement (and at times unavoidably to reiterate in part) the above-quoted description of the procedural background of this case, the Court notes the following, from its so-called screening order (Doc. No. 36) that it was required to issue in this case under the Prison Litigation Reform Act ("PLRA"),[4] and which was completed prior to Plaintiff being severed (from

---

[4] The PLRA, which is codified at various places in the United States Code (some of which are cited herein), "governs § 1983 actions brought by prisoners." *Meeks v. Schofield*, No. 3:12-CV-00545, 2013 WL 12426695, at *1 (M.D. Tenn. Feb. 12, 2013). *See also Westley v. Harris*, No. 4:21-CV-1672, 2023 WL 1070268, at *2 (N.D. Ohio Jan. 27, 2023) ("When a prisoner brings a federal civil action under 42 U.S.C. § 1983, such actions are governed by the [PLRA]."), *aff'd in part, vacated in part on other grounds,* No.

the 13 other individuals who theretofore had been Plaintiff's co-plaintiffs in this action) to become the sole remaining Plaintiff in the above-numbered law suit:

> Having conducted the initial review required by the Prison Litigation Reform Act, the Court concludes that Plaintiffs have stated two colorable claims against Defendant Candace Whisman in her official capacity: a claim that Tennessee's statutes regarding life sentences and calculating sentence credits are unconstitutionally vague under the Due Process Clause; and a claim that TDOC's process for addressing a prisoner's request to recalculate his sentence violates the Due Process Clause and the Eighth Amendment. All other claims and Defendants are DISMISSED without prejudice, except that Plaintiffs' equal protection claim and Eighth Amendment excessive-sentence claim are DISMISSED with prejudice.

> The Court's determination that the Complaint states a colorable claim for purposes of this initial screening does not preclude the Court from dismissing any claim at any time for the reasons set forth in 28 U.S.C. § 1915(e)(2), nor does it preclude any Defendant from filing a motion to dismiss any claim under Federal Rule of Civil Procedure 12.

(Doc. No. 36 at 1-2). The Court also referred this action to the Magistrate Judge to, among other things, conduct case management and to issue a report and recommendation on all dispositive motions. (*Id.* at 2). The Court later issued an order (Doc. No. 96, "Severance Order") that, in pertinent part, severed Plaintiff from the 13 other individuals who until then had been Plaintiff's co-plaintiffs. Thereafter, consistent with other provisions in the Severance Order, counsel for Plaintiff moved to withdraw from their representation of Plaintiff, (Doc. No. 101), and the motion was granted (Doc. No. 142). New counsel was subsequently appointed for Plaintiff, (Doc. No. 148), but that counsel also moved to withdraw (Doc. No. 161), and that motion was granted (Doc. No. 163), thus leaving Plaintiff in *pro se* status, in which he has been ever since.

---

23-3177, 2024 WL 4111143 (6th Cir. Sept. 4, 2024). However, "[t]he PLRA does not apply in habeas proceedings." *Wilson v. Williams*, 961 F.3d 829, 839 (6th Cir. 2020).

Where it is applicable, the PLRA in pertinent part requires the Court to review and dismiss a prisoner's complaint if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A.

Plaintiff thereafter filed his Second Amended Complaint (Doc. No. 164), which was the version of Plaintiff's complaint that was the subject of the Motion and of the R&R and remains the operative complaint. Subsequently, Defendant filed the Motion, on which the Magistrate Judge thereafter issued the R&R.

SUMMARY OF RECOMMENDATIONS IN THE R&R

The Magistrate Judge found that the Motion should be granted on two alternative grounds, which the Court at times herein will call (for obvious reasons) the "First Grounds" and "Second Grounds," respectively. As for the First Grounds, the Magistrate Judge concluded that the Motion should be granted and Plaintiff's claims should be dismissed because (according to the Magistrate Judge) Plaintiff failed to state a claim upon which relief can be granted. (Doc. No. 185 at 8-9, 10). Specifically, the Magistrate Judge reasoned that § 1983 is an inappropriate vehicle for challenging an allegedly improper sentence-credit calculation and implying the unlawfulness of custody, and that the proper procedural vehicle for such challenges is instead a petition for a writ of habeas corpus. (*Id.* at 5-8). The Magistrate Judge reasoned that granting Plaintiff's request to order recalculation of his sentence by applying certain credits would lead to a sentence recalculation that necessarily implies the invalidity of TDOC's current sentence calculation. (*Id.* at 8-9). Therefore, relying on the guidance of *Kitchen v. Whitmer*, 106 F.4th 525 (6th Cir. 2024), the Magistrate Judge found that Plaintiff's claim should have been brought pursuant to habeas corpus as opposed to § 1983, as "habeas is the exclusive remedy for any such claims implying an unlawfulness of custody." (*Id.* at 8). In summary, the First Grounds are that Plaintiff improperly presented habeas claims as Section 1983 claims.

In his Objections as they relate to the First Grounds, Plaintiff identifies multiple purported flaws in the Magistrate Judge's reasoning. One, for example, is that purportedly the Magistrate

Judge erred in relying on *Kitchen v. Whitmer*, 106 F.4th 525 (6th Cir. 2024). (Doc. No. 189 at 2). Plaintiff's broader and overarching point is that the First Grounds are based on a misperception of Plaintiff's claims; Plaintiff contends that (contrary to the Magistrate Judge's analysis underlying the First Grounds) he is not actually asking the Court to change his sentence duration but rather is instead moving the Court for an injunction requiring Defendant to calculate his sentence (including his sentence expiration date and release eligibility date) pursuant to the applicable state statutes. (Doc. No. 189 at 4-5). In other words, Plaintiff claims that he "is complaining as to how the Defendant's policies and procedures are violating his constitutional rights by refusing to adhere to Tennessee sentencing statues when calculating his sentence, not [as the Magistrate Judge purportedly concluded when relying on the First Grounds] the duration of the time to be served or seeking the invalidation of his judgment" and that (contrary to the premise underlying the First Grounds) he "is not petitioning this Court for a less harsh sentence, but for an injunction to order the Defendant to calculate his sentence pursuant to Tennessee sentencing statutes." (Doc. No. 189 at 2).

As for the Second Grounds,[5] the Magistrate Judge recommended alternatively that Plaintiff's complaint be dismissed on the grounds that Plaintiff failed to exhaust administrative remedies (as required by the PLRA) as to TDOC's calculations concerning his sentence before bringing this suit. Specifically, the Magistrate Judge reasoned that Plaintiff has not filed a petition for declaratory judgment in Davidson County Chancery Court challenging TDOC's sentence calculation as he was permitted to do under the Tennessee Uniform Administrative Procedures Act

---

[5] The Magistrate Judge referred to the exhaustion (or lack thereof) at issue here as exhaustion of "state remedies." (Doc. No. 185 at 9-10). As discussed below, the Court treats the exhaustion here at issue as exhaustion under the PLRA, which is exhaustion of "*administrative* remedies," meaning *state* administrative remedies, i.e., exhaustion of administrative remedies under state law. The Magistrate Judge's terminology is not inconsistent with the kind of exhaustion at issue herein.

("UAPA") (Doc. No. 185 at 9-10). In his Objections, Plaintiff disputes this reasoning on the grounds that purportedly the UAPA simply is inapplicable to his claims. (Doc. No. 189 at 7).

The Magistrate Judge did not happen to address whether the recommended dismissal should be with or without prejudice. The Court notes, however, that under *either* of the two recommended grounds for dismissal, the dismissal would be without prejudice. First, when dismissal is on the grounds that Plaintiff brought his claims under Section 1983 when instead he should have brought them in habeas, the dismissal is properly without prejudice. *See, e.g.*, *Davis v. Washington*, No. 23-1925, 2024 WL 4589786, at *1 (6th Cir. July 17, 2024) (affirming the district court's dismissal without prejudice of the plaintiff's claims that "should have been brought in a federal habeas corpus petition instead of a § 1983 civil-rights action"); *Page v. Chapman,* No. 20-12570, 2020 WL 6161264, at *1 (E.D. Mich. Oct. 21, 2020) ("When a *pro se* prisoner files a mislabeled civil action that should have been filed under the habeas corpus statute, the suit should not be converted into a habeas corpus action and decided on the merits. Instead, the proper action is to dismiss the action without prejudice." (citing *Staples v. Casperson*, 6 F. App'x 481, 483-84 (7th Cir. 2001))).[6]

Likewise, when dismissal is on the grounds that the plaintiff—including one proceeding under the PLRA—failed to exhaust remedies as required, the dismissal (plainly being one *not* on the merits) is without prejudice. *See Payne v. Gifford*, No. 1:16-cv-514, 2017 WL 4329631, at *6 (S.D. Ohio Sept. 5, 2017) ("[I]f a claim is dismissed on the procedural ground of failing to exhaust under the PLRA, the dismissal is without prejudice." (internal quotation marks omitted)), *report*

---

[6] Relatedly, "[w]hen a suit that should have been brought under the habeas corpus statute is prosecuted instead as a civil rights suit, it should not be 'converted' into a habeas corpus suit and decided on the merits. *Pischke v. Litscher,* 178 F.3d 497, 500 (7th Cir.1999). Instead, the matter should be dismissed, leaving it to the prisoner to decide whether to refile it as a petition for a writ of habeas corpus. *Id.*" *Mitchell v. Jackson*, No. 210-CV-13483, 2010 WL 3906304, at *3 (E.D. Mich. Sept. 30, 2010).

*and recommendation adopted sub nom. Gibson v. Crawford*, No. 1:21-CV-292, 2023 WL 5745436 (S.D. Ohio Sept. 6, 2023). *See also Michigan Surgery Inv., LLC v. Arman*, 627 F.3d 572, 576-77 (6th Cir. 2010) ("Dismissals of actions that do not reach the merits of a claim, such as dismissals for lack of jurisdiction, ordinarily are without prejudice." (quoting *Mitan v. Int'l Fid. Ins. Co.*, 23 Fed. Appx. 292, 298 (6th Cir. 2001))); *Sparks v. Hutchinson*, No. CV 16-10752, 2017 WL 359607, at *2 (E.D. Mich. Jan. 4, 2017) ("A dismissal for failure to exhaust is without prejudice." (citing *Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 994 (6th Cir. 2006), *overruled on other grounds by Jones v. Bock,* 549 U.S. 199 (2007))), *report and recommendation adopted*, No. 16-CV-10752, 2017 WL 345675 (E.D. Mich. Jan. 24, 2017).

The Magistrate Judge seemingly implied that the recommended dismissal on both grounds would be under Rule 12(b)(6) in particular, inasmuch as he discussed dismissal under Rule 12(b)(6), (Doc. No. 185 at 3-4), without mentioning any other rule. And with respect to the First Grounds in particular, the Magistrate Judge was especially clear that the recommended dismissal would be one under Rule 12(b)(6) inasmuch as he referred to it as one based on "fail[ure] to state a claim for relief." (*Id.* at 9).

Presumptively, a dismissal under Rule12(b)(6) is a dismissal on the merits and thus a dismissal *with* rather than *without* prejudice. *See Miller v. Collins,* No. 23-3191, 2023 WL 7303305, at *4 (6th Cir. Nov. 6, 2023) ("[D]ismissals pursuant to Rule 12(b)(6) are 'judgment[s] on the merits' and are therefore presumed to be with prejudice." (quoting *Pratt v. Ventas, Inc.*, 365 F.3d 514, 522 (6th Cir. 2004)) (internal citation omitted)). But whether or not either or both of the grounds for the recommended dismissal are properly couched in terms of Rule 12(b)(6)[7] is

---

[7] As to dismissal based on failure to exhaust, there appears to be a colorable argument that (at least in some cases), the dismissal would properly be couched in terms of Rule 12(b)(6). As one district court explained:

immaterial for present purposes; what matters is only that dismissal under either grounds would be without prejudice.

OBJECTIONS TO THE R&R

As touched on above, Plaintiff makes objections to the First Grounds and Second Grounds. In so doing, Plaintiff identifies particular purported flaws in the First Grounds and Second Grounds; it is these portions of the R&R—the portions of the R&R reflecting these flaws—that are subject to *de novo* review; the aspects of the First Grounds and Second Grounds as to which Plaintiff does not identify flaws were not objected to and thus not subject to *de novo* (or indeed any) review by the Court.

As for the First Grounds, the Court can and does forgo a more detailed discussion (beyond the discussion above) of the flaws identified by Plaintiff because the Court is assuming *arguendo* that Plaintiff's objection to dismissal of this action to the extent that the dismissal would be based on the First Grounds is meritorious and otherwise well-taken, so that the First Grounds (assumedly) do not provide a valid basis to dismiss this action.

---

In *Jones v. Bock*, 549 U.S. at 214, the Supreme Court suggested in dicta that failure to exhaust might be a basis for dismissal under Rule 12(b)(6). However, in *Pointer v. Wilkinson*, 502 F.3d 369 (6th Cir. 2007), the Sixth Circuit found that a dismissal based on exhaustion may be distinct from a dismissal for failure to state a claim upon which relief may be granted. *See also Snider v. Melindez*, 199 F.3d 108, 112 (2d Cir. 1999) (concluding that failure to state a claim as used in § 1997e(c) and § 1915(g) does not include failure to exhaust administrative remedies).

*Sedore v. Greiner*, No. 19-10311, 2020 WL 8837441, at *3 (E.D. Mich. Sept. 21, 2020), *report and recommendation adopted sub nom. Sedore v. Campbell*, No. 19-10311, 2021 WL 405987 (E.D. Mich. Feb. 5, 2021). There is some authority for the proposition that dismissal for failure to exhaust can be deemed *both* under Rule 12(b)(6) *and* without prejudice. *See Taylor v. United States Treasury Dep't,* 127 F.3d 470, 475-78, 478 n.8 (5th Cir.1997) (explaining, in a non-PLRA context, that "Rule 12(b)(6) forms a proper basis for dismissal for failure to exhaust administrative remedies" and that a federal action should be dismissed without prejudice where a plaintiff has failed to exhaust administrative remedies even if the dismissal is one under Rule 12(b)(6)).

In any event, as suggested above, the Court need not decide whether either of the recommended grounds for dismissal portends dismissal specifically under Rule 12(b)(6).

As for the Second Grounds, the Objections state the following (and only the following):

> 22. Plaintiff's issues deal with the Defendant's unconstitutionally inval[i]d policies and procedures that are contrary to state statutes, which violate his constitutional rights under the Due Process Clause of the Fourteenth Amendment and Eighth Amendment as it is incorporated into the Fourteenth Amendment of the United States Constitution. The UAPA is not the proper avenue for Plaintiff's issues. Plaintiff is not seeking a change to his judgment or a lesser sentence. Plaintiff is complaining about Defendant's use of invalid unconstitutional policies and procedures pertaining to sentencing, which is contrary to state sentencing statutes regarding sentence computation.

> 23. Plaintiff's § 1983 suit challenging Defendant's invalid unconstitutional policies and procedures could not therefore be construed as the state's calculation of time to be served in accordance with the underlying sentence. Plaintiff has raised no claim on which habeas corpus relief could be granted on any recognized theory, therefore *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L.Ed.2d 383 (1994) does not apply in Plaintiff's present complaint.

(Doc. No. 189 at 7).

From this, it is apparent that as for the Second Grounds, Plaintiff objects (or purports to object) to the Magistrate Judge's conclusion in two respects. First, he contends that (contrary to the R&R), the UAPA does not apply to his claims, because "[t]he UAPA is not the proper avenue for Plaintiff's issues [, because] Plaintiff is not seeking a change to his judgment or a lesser sentence [but rather] is complaining about Defendant's use of invalid unconstitutional policies and procedures pertaining to sentencing . . . ." (*Id.* at 7 (footnote omitted)). Second, Plaintiff contends that because (as he asserts and as the Court is assuming *arguendo* herein) he "has raised no claim on which habeas corpus relief could be granted on any recognized theory"—i.e., because none of his claims sound in habeas—*Heck* does not apply. (*Id.*). But the latter (purported) objection is not even cognizable because it is not an objection to any portion of the R&R; although Plaintiff includes these purported objections under the section of his Objections entitled "Exhaustion of State Remedies," he does not cite to where the R&R (purportedly in objectionable fashion) invoked *Heck*, and in fact the part of the R&R setting forth the Second Grounds did not rely on or even cite

*Heck* in any way.[8] Because Plaintiff has not cited (and from the outset had absolutely no chance to cite) a portion of the R&R where the Second Grounds relied on *Heck*, this purported objection is not subject to review because the district court is required to review (*de novo*) only portions of a report and recommendation to which a proper objection is made. Fed. R. Civ. P. 72(b)(3). And in any event, and relatedly, Plaintiff does not need the Court to find meritorious his objection to any reliance by the Magistrate Judge on *Heck*, because as noted the R&R did not rely on *Heck* and because the Court (consistent with Plaintiff's view) treats *Heck* as irrelevant to the issues to be resolved herein.

Therefore, as regards the Second Grounds, the Court herein reviews (*de novo*) only the R&R's conclusion that, under the PLRA, the UAPA supplies the exhaustion requirements applicable to Plaintiff's claims.

LEGAL STANDARDS REGARDING REVIEW OF A REPORT AND RECOMMENDATION

When a magistrate judge issues a report and recommendation regarding a dispositive pretrial matter, the district court must review *de novo* any portion of the report and recommendation to which a proper objection is made. Fed. R. Civ. P. 72(b)(3). The district judge may accept, reject, or modify the recommended disposition, review further evidence, or return the matter to the magistrate judge with instructions. *Id.* Fed. R. Civ. P. 72(b)(2) provides that a party may file "specific written objections" to a report and recommendation, and Local Rule 72.02(a) provides that such objections must be written and must state with particularity the specific portions of the Magistrate Judge's report or proposed findings or recommendations to which an objection is made. "The filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object. Moreover, an objection that

---

[8] By contrast, via the Magistrate Judge's block quote of *Kitchen* (Doc. No. 185 at 5-8), the Magistrate Judge did (indirectly) cite and rely on *Heck* in connection with the *First Grounds*.

does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an objection as that term is used in this context." *Frias v. Frias*, No. 2:18-cv-00076, 2019 WL 549506, at *2 (M.D. Tenn. Feb. 12, 2019) (internal citations and quotation marks omitted).

The Court notes that—as is generally under-appreciated—under 28 U.S.C. § 636(b), its task is not actually to critique, or to directly approve or disapprove, the rationale of the Magistrate Judge; and its task certainly is not to decide whether the Magistrate Judge's rationale was reasonable. Rather, its task is to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). And so that is what the Court will do below, providing a *de novo* review of the issue that the Magistrate Judge decided against Plaintiff without dwelling on what the Magistrate Judge had to say about Plaintiff's arguments and without deferring to the Magistrate Judge's decision in any way—and also without purporting to make some direct pronouncement whether the Magistrate Judge's decision was "wrong."

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(3), the Court has reviewed the R&R and the Objections. The Court assumes *arguendo*—obviously in Plaintiff's favor—that Plaintiff's objection to the portion of the R&R recommending dismissal on the First Grounds is meritorious; that is, the Court will assume that Plaintiff's objection to the analysis of the portion of the R&R recommending dismissal of Plaintiff's claims for failure to bring those claims in habeas is well-taken, such that (assumedly) Plaintiff's claims are properly deemed brought under Section 1983.[9] The Court now addresses Plaintiff's objection to the portion of the R&R recommending dismissal on the Second Grounds.

---

[9] The Court notes that its initial impression is that the objection could have merit, but as indicated above, it need not decide this definitively.

The Court recognizes that in claims subject to the PLRA, "failure to exhaust is an affirmative defense that is more appropriately asserted in a motion for summary judgment." *Morgan v. Kentucky*, No. 3:17-CV-00474-JHM, 2018 WL 715468, at *5 n.3 (W.D. Ky. Feb. 5, 2018). However, as indicated above, Plaintiff did not object to the Magistrate Judge having decided the exhaustion issue on the instant Motion, which is a motion to dismiss; Plaintiff does not protest, for example, that exhaustion could not possibly be found based on whatever (limited) facts the Court properly can consider on a motion to dismiss, and he does not contend that there are factual disputes or uncertainties that prevent dismissal for lack of exhaustion at the current motion-to-dismiss stage. Accordingly, the Court does not provide *de novo* review of, or otherwise second-guess in any way, the R&R to the extent that it recommends *deciding* the exhaustion issue under the PLRA.

<u>REQUIREMENT OF EXHAUSTION UNDER THE PLRA</u>[10]

---

[10] Notably, the exhaustion requirements here at issue here are the exhaustion requirements prescribed specifically by the PLRA, and not the exhaustion requirements that would apply in habeas, which are separate requirements. *See, e.g.*, *Bankhead v. United States*, No. 22-11656, 2023 WL 5007913, at *2 (E.D. Mich. July 10, 2023) ("[T]he PLRA exhaustion requirements do not control exhaustion in the habeas context." (citing *Fazzini v. Ne. Ohio Corr. Ctr.*, 473 F.3d 229, 235 (6th Cir. 2006)); *Jenkins v. Dixon*, No. 4:23-CV-154-WS-MJF, 2024 WL 4757626, at *3 (N.D. Fla. Oct. 1, 2024) ("The exhaustion requirement of the [PLRA] does not apply to habeas petitions. Rather, the exhaustion requirement for § 2254 petitions derives from 28 U.S.C. § 2254(b)-(c)." (citations omitted and brackets omitted)), *report and recommendation adopted*, No. 4:23CV154–WS/MJF, 2024 WL 4752134 (N.D. Fla. Nov. 10, 2024). As the Ninth Circuit explained, referring in part to the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), which governs federal habeas actions:

> AEDPA and the PLRA . . . impose different exhaustion requirements. Under AEDPA, a state prisoner must pursue and exhaust all remedies available in state court before a federal court may entertain a petition, unless corrective process is unavailable in the state or is ineffective in protecting the prisoner's rights. *Id.* § 2254(b)(1). Under the PLRA, by contrast, prisoners must exhaust state *administrative* remedies by filing a grievance within the state prison system unless administrative remedies are not "available," but the plaintiff need not exhaust state judicial remedies before filing in federal court. *Id.* § 1997e(a); *Woodford*, 548 U.S. at 85, 126 S. Ct. 2378; *McBride v. Lopez*, 807 F.3d 982, 986 (9th Cir. 2015).

To place in context Plaintiff's sole objection to the Second Grounds, the Court here will provide some background regarding the PLRA's requirement that a plaintiff exhaust state administrative remedies before filing claims in federal court. In *Woodford v. Ngo*, 548 U.S. 81 (2006), the Supreme Court explained in detail the nature of and basis for the PLRA's exhaustion requirement (albeit while addressing a dispute between the parties therein that is absent in the present case):

The PLRA provides as follows:

"No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility *until such administrative remedies as are available are exhausted*." § 1997e(a) (2000 ed.) (emphasis added).

There is no dispute that this language requires a prisoner to "exhaust" administrative remedies, but the parties differ sharply in their understanding of the meaning of this requirement. Petitioners argue that this provision requires proper exhaustion. This means, according to petitioners, that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court. Respondent, on the other hand, argues that this provision demands what he terms

---

*Nettles v. Grounds*, 830 F.3d 922, 932 n.8 (9th Cir. 2016). The R&R did not make a distinction between the requirements for exhaustion in habeas and the requirements for exhaustion under the PLRA, and it did not indicate which of the two sets of requirements it was applying. (For example, it did not say whether it was applying the exhaustion requirements for habeas because the Magistrate Judge viewed Plaintiff's claims as sounding in habeas, or whether instead it was applying the PLRA's exhaustion requirements because it was accepting *arguendo* in this particular context Plaintiff's contention that the claims did *not* sound in habeas and instead *were* properly brought under Section 1983). Furthermore, the R&R did not say anything about what is required for exhaustion under the PLRA or exhaustion in habeas. But Plaintiff does not object to the R&R in this respect; he does not fault the R&R: (i) for not making clear whether the applicable exhaustion rules are those applicable under the PLRA or those applicable in habeas; (ii) for not making clear what exactly the exhaustion requirements are under the PLRA or in habeas; or (iii) for (purportedly) applying the wrong set of exhaustion requirements (i.e., applying the exhaustion requirements for habeas instead of the exhaustion requirements under the PLRA, or vice vera). So, the Court does not review *de novo*, or otherwise put to the test, the R&R's omissions on these points.

Having said that, the Court notes that herein it is treating the exhaustion requirements *under the PLRA* as the applicable exhaustion requirements because it is assuming *arguendo* (consistent with Plaintiff's position) that Plaintiff's claims are properly brought under Section 1983 (whereby they are subject to the PLRA) rather than in habeas. Were the situation otherwise, there would be no reason to even do an exhaustion analysis; if the Court were to deem Plaintiff's claims as improperly filed under Section 1983 because they should have been filed in habeas, the exhaustion analysis could be completely skipped because (as discussed above) Plaintiff's claims already would be subject to dismissal without prejudice.

"exhaustion *simpliciter*." Brief for Respondent 7. In his view, § 1997e(a) simply means that a prisoner may not bring suit in federal court until administrative remedies are no longer available. Under this interpretation, the reason why administrative remedies are no longer available is irrelevant. Bare unavailability suffices even if this results from a prisoner's deliberate strategy of refraining from filing a timely grievance so that the litigation of the prisoner's claim can begin in federal court.

The key for determining which of these interpretations of § 1997e(a) is correct lies in the term of art "exhausted." Exhaustion is an important doctrine in both administrative and habeas law, and we therefore look to those bodies of law for guidance.

"The doctrine of exhaustion of administrative remedies is well established in the jurisprudence of administrative law." *McKart v. United States,* 395 U.S. 185, 193, 89 S. Ct. 1657, 23 L.Ed.2d 194 (1969). "The doctrine provides 'that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.' " *Ibid.* (quoting *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50–51, 58 S. Ct. 459, 82 L.Ed. 638 (1938)). Exhaustion of administrative remedies serves two main purposes. See *McCarthy,* 503 U.S., at 145, 112 S. Ct. 1081.

First, exhaustion protects "administrative agency authority." *Ibid.* Exhaustion gives an agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court," and it discourages "disregard of [the agency's] procedures." *Ibid*.

Second, exhaustion promotes efficiency. *Ibid.* Claims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court. In some cases, claims are settled at the administrative level, and in others, the proceedings before the agency convince the losing party not to pursue the matter in federal court. See *ibid.; Parisi v. Davidson,* 405 U.S. 34, 37, 92 S. Ct. 815, 31 L.Ed.2d 17 (1972); *McKart, supra,* at 195, 89 S. Ct. 1657. "And even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration." *McCarthy, supra,* at 145, 112 S. Ct. 1081.

Because of the advantages of administrative review, some aggrieved parties will voluntarily exhaust all avenues of administrative review before resorting to federal court, and for these parties an exhaustion requirement is obviously unnecessary. Statutes requiring exhaustion serve a purpose when a significant number of aggrieved parties, if given the choice, would not voluntarily exhaust. Aggrieved parties may prefer not to exhaust administrative remedies for a variety of reasons. Although exhaustion promotes overall efficiency, a party may conclude—correctly or incorrectly—that exhaustion is not efficient in that party's particular case. In addition, some aggrieved parties may prefer to proceed directly

to federal court for other reasons, including bad faith. See *Thomas,* 337 F.3d at 752–753 (Rosen, J., dissenting in part and concurring in judgment).

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Pozo,* 286 F.3d, at 1024 (emphasis in original). This Court has described the doctrine as follows: "[A]s a general rule ... courts should not topple over administrative decisions unless the administrative body not only has erred, *but has erred against objection made at the time appropriate under its practice.*" *United States v. L.A. Tucker Truck Lines, Inc.,* 344 U.S. 33, 37, 73 S. Ct. 67, 97 L.Ed. 54 (1952) (emphasis added). See also *Sims v. Apfel,* 530 U.S. 103, 108, 120 S. Ct. 2080, 147 L.Ed.2d 80 (2000); *id.,* at 112, 120 S. Ct. 2080 (O'Connor, J., concurring in part and concurring in judgment) ("On this underlying principle of administrative law, the Court is unanimous"); *id.,* at 114–115, 120 S. Ct. 2080 (BREYER, J., dissenting); *Unemployment Compensation Comm'n of Alaska v. Aragon,* 329 U.S. 143, 155, 67 S. Ct. 245, 91 L.Ed. 136 (1946); *Hormel v. Helvering,* 312 U.S. 552, 556–557, 61 S. Ct. 719, 85 L.Ed. 1037 (1941); 2 K. Davis & R. Pierce, Administrative Law Treatise § 15:8, pp. 341–344 (3d ed.1994). Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.

*Woodford*, 548 U.S. at 87-91 (footnotes and caption omitted). Importantly, state law provides the

rules as to what constitutes administrative exhaustion. As one district court recently put it

(correctly, in the view of the undersigned):

> Exhaustion is mandatory, *Porter v. Nussle*, 534 U.S. 516, 524 (2002), and requires "proper exhaustion" of all available administrative remedies, *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). Moreover, those remedies "need not meet federal standards, nor must they be 'plain, speedy, and effective.' " *Porter*, 534 U.S. at 524 (citation omitted). Even where the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. *Id.*; *Booth v. Churner*, 532 U.S. 731, 741 (2001). The obligation to exhaust persists as long as some remedy is available; when that is no longer the case, the prisoner need not further pursue the grievance. *Brown v. Valoff*, 422 F.3d 926, 934–35 (9th Cir. 2005). The PLRA does not require exhaustion when circumstances render administrative remedies "effectively unavailable." *Sapp v. Kimbrell*, 623 F.3d 813, 822 (9th Cir. 2010). The particular process by which an inmate exhausts administrative remedies is governed by the prison's own grievance procedures. *Jones v. Bock*, 549 U.S. 199, 218 (2007). If the court concludes that the prisoner

has not exhausted the prison's administrative process, the proper remedy is dismissal without prejudice. *Wyatt* [*v. Terhune*, 315 F.3d 1108 1119–20 (9th Cir. 2003)].

*Israel v. Salinas*, No. 24-CV-08818-JD, 2025 WL 3685193, at *3 (N.D. Cal. Dec. 19, 2025).[11] So, and to repeat, state law prescribes the rules for what is required to exhaust administrative remedies.

---

[11] Notably, Plaintiff does not assert that administrative remedies, whether those under the UAPA or any potential alternative source of administrative remedies, were effectively unavailable. Plaintiff likewise does not assert that the "administrative remedies" that must be exhausted categorically excludes available remedies in the form of state *court* (judicial) review of the denial of relief by a state *administrative agency* (such as TDOC). That is, he does not take specific issue with any requirement to exhaust state-court review of agency denial of relief that is available under the UAPA. Instead, he challenges the applicability of the UAPA in its entirety. Notably, although the issue does not appear to the undersigned to be settled, there is authority (albeit non-binding authority) to support the notion that at least in some American jurisdictions, the "administrative remedies" that must be exhausted under the PLRA include any available judicial review of an agency denial of the relief requested from the agency. *See, e.g.*, *Addison v. Maryland Dep't of Pub. Safety & Corr. Servs.*, No. CV ELH-25-846, 2026 WL 795610, *24 (D. Md. Mar. 20, 2026); *Barbosa-Orona v. Flores-Dasta*, 843 F. Supp. 2d 230, 235-36 (D.P.R. 2012).

In summary, the Court will not address any such assertion, because Plaintiff has not made either of them and relatedly because he has not objected to any portion of the R&R that runs counter to any such assertion (i.e., those portions of the R&R that, respectively, (i) omit any reference to potential unavailability of applicable prescribed state administrative remedies, and (ii) embody an assumption that the PLRA's exhaustion requirement *does* extend to exhausting available state-court review the denial of relief by state administrative agencies).

Next, the Court notes that "the scope of [the PLRA's] exhaustion requirement is determined by the definition of a 'civil action with respect to prison conditions' as set forth in [18 U.S.C. § 3626(g)(2)]." *Freeman v. Francis*, 196 F.3d 641, 644 (6th Cir. 1999). That definition, in pertinent part, is as follows: "any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison . . . ." 18 U.S.C. § 3626(g)(2). Plaintiff does not assert that, contrary to the Magistrate Judge's apparent assumption, his claims are entirely outside the scope of the PLRA's exhaustion requirement because none of his claims involve a challenge to "prison conditions" (which is the only kind of challenge subject to the PLRA's exhaustion requirement). Plaintiff's challenges well might qualify in this context as a challenge to "prison conditions," a term that is construed very broadly to go far beyond things like the cleanliness of, food at, healthcare resources at, or literary or recreational opportunities at the prison. *See, e.g.*, *Estrada v. Smart*, 107 F.4th 1254, 1264 (10th Cir. 2024) (noting the Tenth Circuit's conclusion that the PLRA's exhaustion requirement applies when a prisoner is "'challenging the amount of compensation he received for work performed outside the prison'" (quoting *Dmytryszyn v. Hickox*, 172 F.3d 62, 1999 WL 59622, *1 (10th Cir. 1999))), *cert. denied*, 146 S. Ct. 90, 223 L. Ed. 2d 7 (2025); *Martin v. Iowa*, 752 F.3d 725, 727 (8th Cir. 2014) ("A challenge to parole procedures is a civil action with respect to prison conditions under the PLRA."); *Westefer v. Snyder*, 422 F.3d 570, 577 (7th Cir. 2005) (accepting the parties' agreement that the plaintiffs' challenge to their transfer to a particular prison "is subject to the PLRA's exhaustion requirement."). But because Plaintiff has not raised the issue, the Court will not resolve it.

Finally, the Court notes that Plaintiff does not contest that he did not avail himself of all remedies available under the UAPA (in particular, the option to seek review in Davidson County Chancery Court of any denial by the agency) and does not assert that a determination that he did not avail himself of this option is premature at the instant motion-to-dismiss phase.

*See, e.g.*, *Lamar Co., L.L.C. v. Mississippi Transportation Comm'n*, 786 F. App'x 457, 460 (5th Cir. 2019). As noted, Plaintiff's sole objection to the Second Grounds is that (supposedly) the Magistrate Judge applied the *wrong* state law to his claim because, according to Plaintiff, the UAPA is simply inapplicable to Plaintiff's claims.

ANALYSIS OF EXHAUSTION ISSUE

The Magistrate Judge found that Plaintiff had failed to exhaust state (administrative) remedies because, although he had sought *from TDOC* a declaratory order regarding his sentence calculation from TDOC as permitted by the UAPA, he has not filed a petition for declaratory judgment in Davidson County Chancery Court as (according to the Magistrate Judge) the UAPA permitted Plaintiff to do once TDOC denied him the requested order.[12] The Magistrate Judge stated as follows regarding the applicable law:

> In Tennessee, an inmate seeking to challenge the award of post-judgment sentence reduction credits, including "good time" or behavior credits, for example, must follow the procedures set forth in the Uniform Administrative Procedures Act ("UAPA"). See *Yates v. Parker*, 371 S. W. 3d, 152, 155 (Tenn. Ct. App. 2012) ("The proper avenue to address post-judgment jail credit for prisoners is through the TDOC administratively."). Plaintiff here must similarly follow the UAPA to challenge his sentence expiration date or release eligibility date. See *Hughley v. State*, 208 S. W. 3d 388, 395 (Tenn. 2006) "[t]he validity of any sentence reduction credits must be addressed through the avenues of the Uniform Administrative Procedures Act.", quoting *Carroll v. Raney*, 868 S. W. 2d 721, 723 (Tenn. Crim. App. 1993) (emphasis added).
>
> Under the UAPA, to exhaust a sentence calculation challenge, an inmate must first seek a declaratory order regarding the sentence calculation from the TDOC. *Stewart v. Schofield*, 368 S. W. 3d 457, 464 (Tenn. 2012); *Bonner v. Tenn. Dep't. of Corr.*, 84 S.W.3d 576, 583 (Tenn. Ct. App. 2001) (citing Tenn. Code Ann. § 4-5-5-225(b)). If the TDOC refuses to issue a declaratory order, the petitioner may seek judicial review by seeking a declaratory judgment in the chancery court and may appeal the chancery court's adverse decision [if the chancery court indeed

---

[12] As the Magistrate Judge found, Plaintiff has "submitted a motion for declaratory order to the TDOC and was denied his request." (Doc. No. 185 at 9-10). Under the UAPA, his next step would be to "seek judicial review by seeking a declaratory judgment in the chancery court," which he has not done. (Doc. No. 185 at 8).

does issue a decision adverse to the petitioner] to the Tennessee Court of Appeals. *Stewart*, 368 S.W.3d at 464; *Bonner*, 84 S. W. 3d at 578.

(Doc. No. 185 at 9).[13] Applying the law to the present case, the Magistrate Judge stated:

> Here, Plaintiff asserts in his complaint that he submitted a motion for declaratory order to the TDOC and was denied his request. Docket No. 164, p. 5. He has failed to pursue judicial relief as [permitted] under the UAPA by seeking a declaratory judgment in the chancery court. Accordingly, Plaintiff's complaint should be dismissed for failure to exhaust state remedies."

(*Id*. at 9-10).[14] [15]

As the Court has made clear above, the only cognizable objection to this recommendation of the Magistrate Judge is Plaintiff's contention that the UAPA is simply (entirely and categorically) inapplicable to his claims because (according to Plaintiff) "[t]he UAPA is not the proper avenue for Plaintiff's issues [, because] Plaintiff is not seeking a change to his judgment or

---

[13] The Court perceives that the reference to "Tenn. Code Ann. § 4-5-5-225(b)," a statute that does not exist, reflects a scrivener's error and that instead the reference should have been to Tenn. Code Ann. § "4-5-225(b)."

[14] Plaintiff's allegations regarding the seeking of a declaratory order are as follows:

> 19. Plaintiff submitted a motion for declaratory order to the Tennessee Department of Correction on December 28, 2018, requesting that the Defendant, as Director of Sentence Management Services reflect an expiration date on his life sentence pursuant to state statutes.

> 20. Tennessee Department of Correction's Douglas Stephens, Detainer Administrator, Office of General Counsel, who is not an attorney, responded to the motion on February 19, 2019, and denied the request for declaratory order stating that Plaintiff's life sentence was calculated correctly pursuant to statute.

(Doc. No. 164 at 5).

[15] Notably, although the Magistrate Judge at times refers to what the UAPA *requires*, for the purposes of this analysis it is better to frame the inquiry in terms of what the UAPA *permits*—i.e., the exhaustion analysis is properly focused on the procedural avenues the UAPA *permits* a party to use in the raising of complaints like those raised by Plaintiff. The procedural avenues that the UAPA *permits* a party to use in the raising of complaints like Plaintiff's (assuming that the UAPA actually applies to such complaints) supply the *requirements* making up the PLRA's administrative exhaustion requirements. In other words, if the UAPA applies here, then what it *permits* a petitioner to do in order to seek administrative remedies is what the PLRA *requires* the petitioner to do to exhaust administrative remedies.

a lesser sentence [but rather] is complaining about Defendant's use of invalid unconstitutional policies and procedures pertaining to sentencing . . . ." (Doc. No. 189 at 7 (footnote omitted)). Plaintiff provides no authority in support of his contention that, given what Plaintiff is actually complaining about via his claims, the UAPA is entirely inapplicable to his claims. Naturally, the absence of authority from Plaintiff certainly does not help him persuade the Court that his contention is valid. Moreover, Plaintiff's own actions—in particular the submission of a request to TDOC for a declaratory order—suggest that Plaintiff himself believed that the UAPA (seemingly the sole law under which Plaintiff properly could have submitted such a request in the first place) was applicable to his grievances. Nevertheless, the Court will conduct a *de novo* review of the Magistrate Judge's conclusion that the UAPA applies to the (subject-matter of) Plaintiff's claims.

As noted above, the Court is accepting *arguendo* Plaintiff's characterization of his claims, as Plaintiff himself puts it, as seeking to force Defendant "to calculate his sentence pursuant to state statutes, [a calculation] which include[s] [a calculation of] the sentence expiration date and release eligibility date . . . ." (*Id.* at 4-5). As the Magistrate Judge noted, part of such calculation involves the application of any sentencing credits earned by the inmate. (Doc. No. 185 at 8). To Plaintiff's benefit here, the Court accepts (at least *arguendo*) that Plaintiff is not requesting any *particular* sentencing expiration date or release eligibility date; but rather is seeking merely a (re)calculation of such dates. Plaintiff's argument here appears to be that the UAPA is inapplicable because he is not seeking via his claims *any* particular release or release eligibility date (or, for

that matter, any general outcome of such calculation, such as for example a speedier release than is indicated by TDOC's original sentence-termination calculations). [16]

"TDOC has the authority and responsibility to determine sentence expiration dates and release eligibility dates of its prisoners regardless of where they are housed." *Yates v. Parker*, 371 S.W.3d 152, 155 (Tenn. Crim. App. 2012) (citing *Shorts v. Bartholomew,* 278 S.W.3d 268, 279 (Tenn. 2009) (citing T.C.A. §§ 40–35–501(c); 41–21–236)).[17] This "include[s] the authority to

---

[16] For ease of reference, the Court here and below refers to calculations regarding sentence expiration date, release eligibility date, and sentencing credits collectively as "sentence-termination" calculations or calculations concerning "sentence-termination dates."

Notably, in a case involving a defendant Davis different from the defendant Davis in the case cited repeatedly elsewhere herein, the Tennessee Supreme Court explained the difference between how sentencing credits (also known as "sentencing reduction credits") and early release eligibility operate to effectuate a defendant's release from incarceration earlier than it otherwise would be given the original sentence expiration date applicable to the defendant.

> Sentence reduction credits operate distinctly from eligibility for [early release on] parole. Sentence reduction credits actually *reduce* a defendant's sentence such that his or her term of imprisonment expires earlier than it would without the credits. Sentence reduction credits may also hasten a defendant's [release eligibility date]. Parole, on the other hand, allows a defendant to continue serving his sentence outside the walls of the prison; parole does not actually reduce the parolee's sentence.

*Davis v. State*, 313 S.W.3d 751, 757–58 (Tenn. 2010) (internal citations omitted).

[17] The Court notes that in citing cases herein to identify or explain its view as to what Tennessee law is on a particular topic or issue, the Court is mindful of the so-called *Erie* doctrine, whereby the Court should not necessarily accept that a court's prior statement of Tennessee law accurately reflects current Tennessee law. (Notably, at times the Court cites cases that purport to state Tennessee law, but does so for some purpose other than to identify or explain *the Court's view* as to what current Tennessee law is—for example, in order to note a particular view of some aspect of Tennessee law that is held by some courts but not necessarily by other courts and not necessarily by the undersigned judge of this Court).

The *Erie* doctrine was announced in *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). "Under the *Erie* doctrine, a federal court sitting in diversity applies 'the substantive law of the forum state and federal procedural law.'" *Bonasera v. New River Elec. Corp.*, 518 F. Supp. 3d 1136, 1151 (S.D. Ohio 2021) (quoting *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009)).

The Sixth Circuit has explained:

> In diversity cases such as this, [the *Erie* doctrine requires that] we apply state law in accordance with the controlling decisions of the state supreme court. If the state supreme court has not yet addressed the issue presented, we must predict how the court would rule by looking to all the available data. "Relevant data include decisions of the state appellate

compute and apply post-judgment jail credit." *Id.* And "[t]he proper avenue to address post-judgment jail credit for prisoners is through [] TDOC administratively." *Id.* To address post-judgment jail credit "administratively" is to address it *via the UAPA* in particular. *See Hughley v. State*, 208 S.W.3d 388, 395 (Tenn. 2006) ("[t]he validity of any sentence reduction credits *must* be addressed through the avenues of the Uniform Administrative Procedures Act." (quoting *Carroll v. Raney,* 868 S.W.2d 721, 723 (Tenn. Crim. App. 1993))). "An inmate dissatisfied with TDOC's calculation of a release eligibility date may challenge the calculation, but the challenge must comply with the procedures of the UAPA." *Stewart v. Schofield*, 368 S.W.3d 457, 464 (Tenn. 2012). All told, it is entirely clear that the UAPA applies to an inmate's grievances (complaints) about his or her sentence expiration date and release eligibility date, including any grievances about the application (or non-application) of any sentencing credits purportedly earned by the inmate.

But to say *that* is not necessarily to say that the UAPA applies to Plaintiff's kind of complaints, i.e., (i) a complaint ("Complaint Type 1") that the applicable TDOC official calculated

---

> courts, and those decisions should not be disregarded unless we are presented with persuasive data that the [state] Supreme Court would decide otherwise."

*Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001) (citations and footnote omitted) (quoting *Kingsley Assoc. v. Moll PlastiCrafters, Inc.*, 65 F.3d 498, 507 (6th Cir.1995)).

Putting things somewhat differently, the Sixth Circuit recently has said:

> When applying state law, we must follow the controlling decision of the highest state court. If no such decision controls, we follow a decision of the state appellate court, published or unpublished, unless we are convinced that the highest court of the state would decide otherwise.

*Boyd v. N. Biomedical Rsch., Inc.*, 165 F.4th 424, 435 (6th Cir. 2026) (citations, quotation marks, and ellipsis omitted). Herein, when the Court cites a decision of the Tennessee Court of Appeals or the Tennessee Supreme Court stating a purported proposition of Tennessee law, it does so with confidence that the Tennessee Supreme Court today would not decide differently with respect to the statement.

Plaintiff's sentence length and sentencing credits pursuant to a statutory system that—as applied to the plaintiff in particular[18]— is (allegedly) unconstitutionally vague in violation of the Due Process Clause of the Fourteenth Amendment; and (ii) a complaint ("Complaint Type 2") that the applicable TDOC official has not *re-calculated* these dates (and these credits) for the plaintiff at all as (allegedly) required by the Due Process Clause of the Fourteenth Amendment. The Court will address in turn whether the UAPA applies to each of these kinds of complaints.

As to Complaint Type 1, there is a distinction to be drawn between (i) a challenge to the sentence-termination calculations that is based specifically on the alleged *unconstitutionality* of the statutes used for such calculations; and (ii) any other kind of challenges to sentence-termination calculations (*e.g.*, claims of overlooking of applicable sentencing credit or of arithmetic error). The second such challenge would be subject to the UAPA because, as discussed above, challenges to sentence-termination calculations generally are subject to the UAPA. Whether the first such challenge—which is the kind of challenge made by Plaintiff here, who asserts the unconstitutionality of applicable sentencing statutes *as applied to him* —would be subject to the UAPA is a different question. The Court concludes, however, that the answer is the same.

In so concluding, the Court first notes that *as-applied* constitutional challenges to state statutes are subject to the UAPA to the same extent as other kinds of challenges to sentencing termination calculations. This is clear from *Davis v. Tennessee Dep't of Corr.*, No. M201702301COAR3CV, 2018 WL 5618116 (Tenn. Ct. App. Oct. 30, 2018). There, the plaintiff (Davis) challenged TDOC's interpretation of the statutes regarding release after a sentence of life,

---

[18] This vagueness challenge to the constitutionality of the statutes at issue is expressly identified as an as-applied rather than facial challenge. (Doc. No. 164 at 41, 42).

as well as the constitutionality of Tenn. Code Ann. § 40-35-501(i),[19] *id.* at *0,[20] which appears to

be one of the very statutes that Plaintiff alleges is unconstitutionally vague as applied to him. He

filed a petition for a declaratory order based on this challenge. *Id.* Then:

> Upon receiving an unsatisfactory response, Davis then filed a declaratory judgment action in the Davidson County Chancery Court against the TDOC and the Tennessee Attorney General (collectively, "the State") about the calculation of his sentence, including his eligibility for release and the constitutionality of Tenn. Code Ann. § 40-35-501. The chancery court ruled against him and he appealed.

*Id.* Rejecting Davis's challenge to the constitutionality of Tenn. Code Ann. § 40-35-501(i), the

Tennessee Court of Appeals affirmed the chancery court. To do so, the court had to address first

the State's argument that Davis's challenge "cannot be reviewed by the chancery court under the

UAPA." *Id.* at *7. The court rejected that argument, holding (for reasons the Court need not discuss

herein but are largely reflected in the footnote here)[21] that if "claims amount to a facial challenge,

---

[19] As with Plaintiff's challenges to the constitutionality of Tennessee's sentencing statutes in the instant case, Davis's constitutional challenge to this statute was based primarily on vagueness. *Davis*, 2018 WL 5618116, at *8.

[20] The Court here uses "*0" to refer to the part of the opinion that in *Davis*, for whatever reason, happens to appear before "*1."

[21] *Davis* relied on, among other cases, *Richardson v. Tennessee Bd. of Dentistry*, 913 S.W.2d 446 (Tenn. 1995), which explained in pertinent part:

> When the focus of an aggrieved party's claim is an "as applied" challenge to the constitutionality of a statute or any challenge to the constitutionality of an agency rule,[8] the agency may initially rule on the challenge. The policy behind this general rule is to allow the agency the opportunity to correct any error it has made in drafting an unconstitutional rule or in enforcing a constitutional mandate in an unconstitutional manner. Upon discovery, an agency may modify its rule to comport with constitutional requirements. *L.L. Bean, Inc. v. Bracey,* 817 S.W.2d 292 (Tenn.1991); *Crawford v. Tennessee Consolidated Retirement System,* 732 S.W.2d 293 (Tenn. App.), *perm. to appeal denied,* (Tenn.1987). This rule comports with the provision of the Administrative Procedures Act. Tenn. Code Ann. § 4–5–223 (1991 Repl.). Therefore, an administrative body in a contested case proceeding may resolve questions of the unconstitutional application of a statute to the specific circumstances of the case or the constitutionality of a rule that the agency has adopted.

*Id.* at 455.

[then] they cannot proceed through the UAPA [but, conversely, if] claims are 'as applied' challenges, then they must proceed through the UAPA." *Id.* at *8. Thus, an inmate's challenge to sentencing-termination calculations is not exempted from the scope of the UAPA merely because it is a challenge (including one based on vagueness) to the constitutionality of Tennessee statutes; rather, the UAPA is applicable to as-applied challenges (such as Plaintiff's challenge) to the same extent as it is applicable to any other kind of challenge (except for a *facial* constitutional challenge). So Plaintiff's claims are within the scope of the UAPA to the extent that they are of Complaint Type 1

As for Complaint Type 2, there is a distinction to be drawn between (i) a challenge to *calculations (*or in this case, *recalculations*) made concerning sentence-termination dates and (ii) a challenge to the failure to make such (re)calculations in the first place, due to the defendant's alleged refusal to comply with state law that allegedly creates in the plaintiff an interest (one at least potentially enforceable under the Fourteenth Amendment Due Process Clause) in the setting of such dates. The first such challenge would be subject to the UAPA, as discussed above. Whether the second such challenge—which is the kind of challenge that Plaintiff makes here—would be subject to the UAPA is a different question. The Court concludes, however, that the answer is the same.

In so concluding, the Court starts, naturally enough, with the text of the primary provision of the UAPA that governs the UAPA's scope: "Any affected person may petition an agency for a declaratory order as to the validity or applicability of a statute, rule or order within the primary jurisdiction of the agency." Tenn. Code Ann. § 4-5-223(a).[22] The Court concludes that this

---

[22] It is Tenn. Code Ann. § 4-5-225, which is cited above, that allows (subject essentially to two conditions) for the filing in chancery court of a suit for a declaratory judgment regarding the same kinds of matters— i.e., matters concerning "the legal validity or applicability of a statute, rule or order of an agency"—for which Tenn. Code Ann. § 4-5-223 allows the filing of a petition to an agency for a declaratory order. The

language on its face is not limited to petitions that challenge the substance (outcome) of a *prior decision* regarding the validity or applicability of a statute (or rule or order), but rather encompasses a petition for a declaratory order to the effect that the agency *must or will decide* the validity or applicability of a statute (or rule or order); in the Court's view, such a petition plainly is a petition for a declaratory order "as to" the validity or applicability of statute (or rule or order). Applying this statutory construction to Plaintiff's claim that Defendant is constitutionally obligated to make sentence-termination calculations (or, more precisely, re-calculations), the result is that the UAPA encompasses the claim; it is a claim that TDOC (via Defendant) *must* determine the applicability of statutes rules or orders to his situation so as to thereby complete new sentence-termination calculations, and—as construed by the Court—Tenn. Code Ann. § 4-5-223(a) authorizes the filing of a petition with the agency to assert that claim.

From the perspective of Tennessee case law, the most applicable principle, quoted above and reiterated here, is that "[a]n inmate dissatisfied with TDOC's calculation of a release eligibility date may challenge the calculation, but the challenge must comply with the procedures of the UAPA." *Stewart*, 368 S.W.3d at 464. It inexorably follows that the UAPA is applicable to any challenge to TDOC's sentence-termination calculations based on an inmate's "dissatisf[action] with TDOC's [sentence-termination] calculation." *Id.* That is precisely the kind of challenge involved where (as with Plaintiff here) an inmate asserts that his sentence-termination calculations must be redone because the prior ones are wrong (for whatever reason). So, the Court readily concludes from the principle from *Stewart* that the UAPA applies to Plaintiff's complaint that

---

aforementioned conditions are that: (i) the suit in chancery court must relate to the application of a statute, rule or order to "specified circumstances," a term that does not appear in Tenn. Code Ann. § 4-5-223; and (ii) the "complainant has petitioned the agency for a declaratory order and the agency has refused to issue a declaratory order." Tenn. Code Ann. § 4-5-225(a), (b).

Defendant has refused to recalculate his sentence-termination dates and, in (allegedly) so refusing, has violated the Due Process Clause of the Fourteenth Amendment.

In summary, the Court has conducted a *de novo* review of those portions of the R&R as to which Plaintiff has lodged an objection with respect to the recommendation to dismiss for failure to exhaust administrative remedies, meaning, the R&R's conclusion (or assumption) that the UAPA is applicable to Plaintiff's claims. Upon *de novo* review, the Court concludes (as did the Magistrate Judge) that the UAPA is applicable. Accordingly, the Court adopts the Magistrate Judge's recommendation to dismiss this action on the Second Grounds, i.e., for failure to exhaust administrative remedies.

CONCLUSION

For the reasons discussed herein, the Court declines to adopt the R&R with respect to its recommendation to dismiss this action based on the First Grounds (failure to state a claim upon which relief can be granted) but adopts the R&R with respect to its recommendation to dismiss this action on the Second Grounds (failure to exhaust administrative remedies). Accordingly, the Motion (Doc. No. 177) is **GRANTED**, and this action is dismissed in its entirety without prejudice.

In coming to its decision herein, above the Court has relied primarily on (i) its view of what aspects of the R&R it does and does not need to review (*de novo*), considering the nature and scope of Plaintiff's objections; and (ii) the Court's interpretation of the requirements for exhaustion under the PLRA and Tennessee law that helps define those requirements as they exist in this particular case. It has not relied on the undersigned's view of what outcome here would be desirable as a matter of policy. Having said that, the Court notes—for whatever that is worth—that the outcome it has announced herein strikes the undersigned as sound in terms of policy; specifically, where (as here) state law allows state courts to address in the first instance both the application and the

validity (as applied) of state law applicable to a party aggrieved by an agency's application of the law to him or her, it is desirable in terms of comity and federalism (not to mention efficiency and expertise in the application of state law) to require the party first to seek relief in state court.

The Clerk is **DIRECTED** to enter judgment under Fed. R. Civ. P. 58 and close the file.

IT IS SO ORDERED.


_Eli Richardson_

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE